1    Carl Warring
     Assistant Attorney General
2    1116 West Riverside Avenue, Suite 100
     Spokane, WA 99201-1106
3    (509) 456-3123

4
                                        Honorable Rosanna M. Peterson
5
              **UNITED STATES DISTRICT COURT**
6             **EASTERN DISTRICT OF WASHINGTON**

7    R.W., individually and on behalf          NO. 4:18-05089-RMP
     of his marital community,
8                                              DEFENDANTS'
                         Plaintiff,            STATEMENT OF
9                                              MATERIAL FACTS
     v.
10
     COLUMBIA BASIN COLLEGE,
11   a public institution of higher
     education, RALPH REAGAN, in
12   his official and individual
     capacities, LEE THORNTON, in
13   his official and individual
     capacities,
14
15                       Defendants.

16        Pursuant to LR 56.1, the Defendants Columbia Basin College, Ralph Reagan

17   and Lee Thornton submit the following Statement of Material Facts:

18        1.    On May 25, 2018 R.W. filed a Complaint For Damages. *See* ECF

19   No. 1.

20        2.    The Complaint pleads five causes of action: (1) a 42 U.S.C. § 1983 First

21   Amendment claim; (2) a 42 U.S.C. § 1983 Fourteenth Amendment Equal

22

DEFENDANTS' STATEMENT              1
OF MATERIAL FACTS

1    Protection claim; (3) a 42 U.S.C. § 12132 Disability Discrimination claim; (4) a 29

2    U.S.C. § 794 Disability Discrimination claim; and (5) a RCW 49.60 Disability

3    Discrimination claim.  ECF No. 1 at 7:1-9:11.  The Complaint names Columbia

4    Basin College, Ralph Reagan and Lee Thornton as the defendants.  ECF No. 1 at

5    2:4-14.

6         3.    The Defendants jointly filed the Defendants' Answer to Plaintiff's

7    Complaint for Damages and Jury Demand on August 1, 2018.  ECF No. 12 at 1.

8    In relevant part, the Answer pleaded both Eleventh Amendment Immunity and

9    Qualified Immunity as affirmative defenses.  ECF No. 12 at 8:6-11.

10   **A.    R.W.'s 2017 Enrollment in Columbia Basin College's Nursing Program**

12        4.    In January 2017, R.W. re-entered the nursing program at Columbia

13   Basin College.  R.W. Dep. at 54:20-55:24.[1]  He had previously withdrawn from the

14   program in 2016 due to a back condition.  R.W. Dep. at 54:20-55:24.

15        5.    Upon his return to the program in 2017, R.W. experienced difficulty

16   consistently meeting the demands of the program.  Cooke Dep. at 58:24-59:23,

17   60:23-61:11, 62:6-64:2.[2]

18   _____

19        [1] Excerpts of the transcript of the R.W. deposition is Exhibit 2 to the

20   Declaration of Carl P. Warring filed contemporaneously with this motion.

21        [2] Excerpts of the transcript of the Valerie Cooke deposition is Exhibit 3 to

22   the Declaration of Carl P. Warring filed contemporaneously with this motion.

DEFENDANTS' STATEMENT          2

6.     In February 2017, he received an academic progress alert after he fell behind in assignments.  R.W. Dep. at 57:22-59:17, 67:15-68:20, Ex. 5.  By mid-term, R.W. was below the minimum points required to successfully complete at least one of his courses.  R.W. Dep. at Ex. 4, 6-7.

7.     In March, Valerie Tucker, a faculty member in the nursing program, scheduled time to meet with R.W. on March 7th to review continuing faculty concerns about his academic performance.  Cooke Dep. at 63:14-64:16, 84:4-86:5, Ex. 8; Warring Dec. at Ex. 7.  R.W. participated in the scheduling the meeting, but he ultimately could not attend.  Cooke Dep. at 64:5-8; Warring Dec. at Ex. 7.

**B.     R.W.'s March 2017 Disclosure of Homicidal Ideation**

8.     On March 6, 2017, the day before the scheduled meeting, R.W. admitted himself to Lourdes Medical Center Transitions facility for evaluation and treatment of a mental health crisis.  ECF No. 1 at 3:16-4:4.

9.     On March 6, 2017, R.W. reported to his primary care provider that he had been having a lot of anger issues.  Cabasug Dep. at Ex. 3 (March 6, 2017 Progress Note).[3]

10.     He also reported that he had thoughts of hurting his instructors, including a specific plan for maiming and even killing them, for about a week.

_____

[3] Excerpts of the transcript of the Dr. Michael Cabasug deposition is Exhibit 6 to the Declaration of Carl P. Warring filed contemporaneously with this motion.

DEFENDANTS' STATEMENT          3
OF MATERIAL FACTS

1     Cabasug Dep. at Ex. 3 (March 6, 2017 Progress Note).  R.W. himself agrees that

2     the thoughts and imagery of the ideation haunted, scared, and disturbed him.  R.W.

3     Dep at 72:13-17, 77:16-78:13.

4         11. In response to R.W.'s disclosure, Dr. Cabasug contacted crisis

5     response to evaluate R.W.  Cabasug Dep. at Ex. 3 (March 6, 2017 Progress Note).

6     To this date, Dr. Cabasug continues to believe that it was medically appropriate

7     to have crisis response evaluate R.W.  Cabasug Dep. at 28:8-29:14.

8         12. Araceli Perez, a crisis responder, met with R.W. at Dr. Cabasug's office.

9     Perez Dep. at 16:3-15, 18:8-11.[4]  R.W. told Ms. Perez that he had just returned to

10     school after a year off, was experiencing sleep deprivation, eating poorly, and

11     feeling overwhelmed.  Perez Dep. at 25:24-27:12, Ex. 2.  R.W. also reported that

12     bad grades and feedback from his instructors had triggered his thoughts to harm

13     them.  Perez Dep. at 27:2-12, Ex. 2.

14         13. Specifically, R.W. identified Kim Tucker, Valerie Cook, and Alma

15     Martinez as the instructors he had thoughts of killing.  Perez Dep. at 37:11-19.

16     R.W. also disclosed he had thought of two different ways to kill his instructors – by

17     setting their offices on fire or by attacking them with a saw.  Perez Dep. at 51:3-12.

18         14. Based upon what she heard, Ms. Perez recognized that she had a duty

19     to warn the identified faculty members.  Perez Dep. at 51:13.  In her mind, the duty

20     _____

21        [4] Excerpts of the transcript of the Araceli Perez deposition is Exhibit 1 to

22     the Declaration of Carl P. Warring filed contemporaneously with this motion.

DEFENDANTS' STATEMENT      4
OF MATERIAL FACTS

to disclose was not a close call.  Perez Dep. at 51:13-18.

15.  Perez gave R.W. the option of voluntarily admitting himself to Transitions or being involuntarily committed.  Perez Dep. at 49:10-50-10; R.W. Dep. at 83:23-84:18.  R.W. elected to check himself into Transitions.  R.W. Dep. at 84:16-85:9.

16.  At his Transitions' intake, R.W. confirmed his earlier reported homicidal ideation towards his instructors and having an idea of how he would carry out the act, but that he had not taken any steps to carry out his plan.  Reagan Dep. at Ex. 17 (01150028).[5]

17.  Two days after entering Transitions, R.W. sought to leave the treatment facility against medical advice, but he eventually agreed to remain after a second evaluation by Ms. Perez.  Perez Dep. at 45:23-46:12, Ex. 5.  R.W. was discharged from Transitions on March 10, 2017.  R.W. Dep. at 97:16-18.

## C.  The College's Response to R.W.'s Disclosure of His Homicidal Ideations

18.  On March 7, 2017 Ralph Reagan, Assistant Dean for Student Conduct and Activities, learned of R.W.'s homicidal ideation.  Reagan Dep. at Ex. 2.

19.  Reagan issued a letter to R.W. establishing an interim restriction that precluded R.W. from coming on the College's campuses pending an investigation

_____

[5] Excerpts of the transcript of the Ralph Reagan deposition is Exhibit 4 to the Declaration of Carl P. Warring filed contemporaneously with this motion.

into the matter.  Reagan Dep. at Ex. 2.  Reagan based his decision to impose the interim restriction upon information that R.W. had expressed homicidal ideation relating to three specific instructors and that he identified two specific ways for killing the instructors.  Reagan Dep. at 26:12-23, Ex. 3 (Bates No. 01130012).

20.  Reagan considered the situation serious because the involved crisis responders had taken it seriously enough to initiate a duty to warn protocol.  Reagan Dep. at 30:21-31:2.

21.  On March 8, 2017, Reagan issued a second letter to R.W.  Reagan Dep. at Ex. 4.  The second letter set a meeting for March 16, 2017.  Reagan Dep. at Ex. 4.  Reagan wanted to discuss R.W.'s disclosure of homicidal ideation as part of Reagan's investigation into whether a student conduct violation had occurred.  Reagan Dep. at Ex. 4.

22.  R.W.'s reported homicidal ideations triggered two separate, but related, processes.  The first was the interim restriction process, which dealt with the temporary trespass of R.W. from the campus until the College could gather more information on the immediate threat he posed.  The second was the student conduct process, which dealt with R.W.'s potential violation of the student conduct code.

**D.    The Interim Restriction Process**

23.  On March 10, 2017, R.W. emailed Reagan requesting an appeal of the March 7, 2017 interim restriction.  Reagan Dep. at Ex. 5.  On March 14, 2017, the Student Appeals Board, chaired by Pat Campbell, upheld the interim restriction.

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA  99201-1106
(509) 456-3123

1   Reagan Dep. at Ex. 6.

2       24.  On March 22, 2017, R.W. appealed the decision of the Student Appeals

3   Board. Reagan Dep. at Ex. 7. On April 19, 2017 President Lee Thornton modified

4   the interim restriction, lifting R.W.'s restriction from being present on the Pasco

5   campus, but requiring R.W. to coordinate any need to be on the Richland campus

6   with Reagan. Reagan Dep. at Ex. 8.

7   **E.   The Student Conduct Process**

8       25.  The March 16, 2017 initial student conduct meeting between Reagan

9   and R.W. did not actually occur until March 22, 2017. Reagan Dep. at Ex. 9.

10       26.  Following that meeting, Reagan sought additional information. Reagan

11   Dep. at 62:24-63:14; 91:19-92:20. Specifically, Reagan (1) obtained and reviewed

12   health care records from Dr. Michael Cabasug, R.W.'s primary care physician; (2)

13   had a telephone conference with providers from Lourdes (Transitions) regarding

14   R.W.'s evaluation and treatment; and (3) obtained and reviewed health care records

15   from Lourdes—all as part of his information gathering process—before deciding

16   what, if any, sanction was appropriate. Reagan Dep. at 62:24-63:14; 91:19-92:20.

17       27.  Reagan received Dr. Cabasug's records on April 4, 2017. Reagan Dep.

18   at 118:22-119:6; 146:5-17. The records included a letter written by Dr. Cabasug.

19   Reagan Dep. at 118:22-119:6; 146:5-17. Dr. Cabasug's letter described that R.W.'s

20   homicidal ideation was out of character for R.W., Reagan Dep. at 120:15-121:11,

21   but Dr. Cabasug stopped short of offering any assurance that R.W.'s homicidal

22

DEFENDANTS' STATEMENT       7
OF MATERIAL FACTS

1    ideation would not return if R.W. resumed the nursing program.  Cabasug Dep. at

2    15:9-16:11.

3         28.   Dr. Cabasug has testified that he cannot predict if R.W. will return to

4    homicidal thinking or not if R.W. returns to the nursing program.  Cabasug Dep.

5    at 16:12-17:13, 45:13-46:10, 48:2-20.

6         29.   Reagan spoke with Lourdes providers on or around April 13, 2017 and

7    picked up Lourdes treatment records on April 14, 2017.  Reagan Dep. at 91:23-

8    92:15, 130:22-131:15, 147:20-25.

9         30.   Although R.W. expected the Lourdes providers to support his return to

10   the nursing program, Reagan remembers the providers expressing concerns about

11   R.W.'s return.  Reagan Dep. at 136:16-138:8.

12        31.   These concerns are consistent with the treatment recommendations by

13   Perez, who thought R.W. should be monitored closely in an outpatient program

14   upon his discharge from Lourdes.  Perez Dep. at 59:8-60:5.  Perez made this

15   recommendation because it is difficult to predict how a person will respond to

16   their return to the community.  Perez Dep. at 59:8-60:5.

17        32.   In addition to the information he learned from the involved health care

18   providers, Reagan was aware that R.W.'s homicidal ideation had already

19   disturbed the involved instructors.  Reagan Dep. at 104:1-105:13; 163:9-164:12,

20   169:12-170:11, 177:6-178:11, Ex. 25.  The instructors expressed fear of R.W.

21   and no longer wanted him in their program.  Reagan Dep. at 163:9-164:12.  One,

22

DEFENDANTS' STATEMENT                    8
OF MATERIAL FACTS

now former, instructor has explained that she cried, changed her schedule, changed the car she drove and was afraid everywhere she went.  Tucker Dep. at 76:9-19.

33.  On April 20, 2017 Reagan issued his decision to impose sanctions. Reagan Dep. at Ex. 9.  While Reagan found misconduct, he ultimately determined that R.W. could return to the nursing program in the Winter 2018 Quarter upon certain conditions.[6]  Reagan Dep. at Ex. 9.

34.  R.W. appealed Reagan's decision on May 4, 2017.  Reagan Dep. at Ex. 10.  The Student Appeals Board, chaired by Michael Lee, upheld the sanctions on May 24, 2017.  Reagan Dep. at Ex. 11.

35.  R.W. appealed the Student Appeals Board decision on June 7, 2017. Reagan Dep. at Ex. 12.  Ultimately, the President of the College, Lee Thornton, upheld the sanctions on June 12, 2017.  Reagan Dep. at Ex. 13.

36.  R.W. agrees that he was capable of complying with the conditions set

_____

[6] Winter 2018 would have been the first opportunity for R.W. to return to the nursing program.  *See* Hoerner Dec. at 2:11-20.  The nursing program is structured such that a student must successfully complete each quarter before moving on to the next quarter.  Hoerner Dec. at 1:20 – 2:6.  Here R.W. admits that as of March 9, 2017, while he was still at Transitions, it was already too late for him to successfully complete the 2017 Winter Quarter.  R.W. Dep. at 90:8-91:3, Ex. 12.

DEFENDANTS' STATEMENT OF MATERIAL FACTS

9

by Reagan, but he did not contact Reagan to resume his participation in the nursing program. R.W. Dep. at 105:24-106:18. To date, R.W. has not resumed the nursing program at Columbia Basin College, though that option still remains open to him.

DATED this 3rd day of June, 2019.

ROBERT W. FERGUSON
Attorney General

s/Carl P. Warring
CARL P. WARRING
WSBA No. 27164
Assistant Attorney General
Attorney for Defendants
1116 W Riverside, Suite 100
Spokane, WA 99201
(509) 456-3123
carlw@atg.wa.gov

DEFENDANTS' STATEMENT
OF MATERIAL FACTS

10

1

**PROOF OF SERVICE**

2

3    I certify that I electronically filed the above document with the Clerk of the

4    Court using the CM/ECF system which will send notification of such filing to the

5    following:

6    Eric Eisinger          eeisinger@walkerheye.com

7    Bret Uhrich            buhrich@walkerheye.com

8    I declare under penalty of perjury under the laws of the United States of

9    America that the foregoing is true and correct.

10   DATED this 3rd day of June, 2019, at Spokane, Washington.

11                                    ROBERT W. FERGUSON
                                      Attorney General
12

13                                     s/Carl P. Warring
                                      _____
14                                    CARL P. WARRING
                                      WSBA No. 27164
15                                    Assistant Attorney General
                                      Attorney for Defendants
16                                    1116 W Riverside, Suite 100
                                      Spokane, WA 99201
17                                    (509) 456-3123
                                      carlw@atg.wa.gov
18

19

20

21

22

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123