Eric B. Eisinger, WSBA #34293
Bret Uhrich, WSBA #45595
Walker Heye Meehan & Eisinger, PLLC
1333 Columbia Park Trail, Ste 220
Richland, WA 99352
Telephone: (509) 735-4444
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| R.W., individually and on behalf of his marital community,<br><br>                  Plaintiff,<br><br>v.<br><br>COLUMBIA BASIN COLLEGE, a public institution of higher education, RALPH REAGAN, in his official and individual capacities, LEE THORNTON, in his official and individual capacities.<br><br>                  Defendants. | Cause No. 4:18-cv-05089-RMP<br><br>PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT TO ESTABLISH DEFENDANTS' LIABILITY UNDER 42 U.S.C § 1983, THE AMERICANS WITH DISABILITIES ACT, THE REHABILITATION ACT AND THE WASHINGTON LAWS AGAINST DISCRIMINATION<br><br>ORAL ARGUMENT<br>August 29, 2019 – 10:00am<br><br>Thomas S. Foley United States Courthouse<br>920 W. Riverside Ave, Room 840<br>Spokane, WA 99201 |

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

**TABLE OF AUTHORITIES**

| Cases | Page(s) |
|---|---|
| *Bragdon v. Abbott*, 524 U.S. 624 (1998) | 29 |
| *Burge ex rel. Burge v. Colton Sch. Dist. 53*, 100 F. Supp. 3d 1057 (D. Or. 2015) | 18 |
| *Chappell v. Mandeville*, 706 F.3d 1052 (9th Cir. 2013) | 21 |
| *Coll. Republicans at San Francisco State Univ. v. Reed*, 523 F. Supp. 2d 1005 (N.D. Cal. 2007) | 18-20 |
| *Conant v. Walters*, 309 F.3d 629 (9th Cir. 2002) | 17 |
| *Dambrot v. Cent. Michigan Univ.*, 55 F.3d 1177 (6th Cir. 1995) | 18 |
| *Duvall v. Cty. of Kitsap*, 260 F.3d 1124 (9th Cir. 2001) | 26 |
| *Elder v. Holloway*, 510 U.S. 510 (1994) | 22 |
| *Gibson v. United States*, 781 F.2d 1334 (9th Cir. 1986) | 16 |
| *Griswold v. Connecticut*, 381 U.S. 479 (1965) | 17 |
| *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982) | 25 |
| *Healy v. James*, 408 U.S. 169 (1972) | 17 |
| *Hydrick v. Hunter*, 669 F.3d 937 (9th Cir. 2012) | 21 |
| *Johnson v. Duffy*, 588 F.2d 740 (9th Cir. 1978) | 16 |
| *LaVine v. Blaine Sch. Dist.*, 257 F.3d 981 (9th Cir. 2001) | 22-24 |
| *Morales v. Fry*, 873 F.3d 817 (9th Cir. 2017) | 21 |
| *Osolinski v. Kane*, 92 F.3d 934 (9th Cir. 1996) | 21 |
| *Pearson v. Callahan*, 555 U.S. 223 (2009) | 16 |
| *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755 (9th Cir. 2006) | 20 |
| *Preschooler II v. Clark Cty. Sch. Bd. of Trs.*, 479 F.3d 1175 (9th Cir. 2007) | 16 |
| *R.W. v. Bd. of Regents of the Univ. Sys. of Georgia*, 114 F. Supp. 3d 1260, 1267 (N.D. Ga. 2015) | 27-29 |
| *Saucier v. Katz*, 533 U.S. 194 (2001) | 16 |
| *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200 (3d Cir. 2001) | 18 |
| *Scott v. Cty. of San Bernardino*, 903 F.3d 943 (9th Cir. 2018) | 21 |
| *Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503 (1969) | 24 |
| *Trammel v. United States*, 445 U.S. 40 (1980) | 17 |
| *United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159 (9th Cir. 2016) | 15 |
| *Weinreich v. Los Angeles County Metropolitan Transp. Auth.*, 114 F.3d 976 (9th Cir. 1997) | 26 |
| *Zukle v. Regents of Univ. of California*, 166 F.3d 1041 (9th Cir. 1999) | 27 |

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT 2

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

| **Statutes** | **Page(s)** |
| --- | --- |
| 29 U.S.C. § 734 | 26 |
| 29 U.S.C. § 794 | 4-5 |
| 42 U.S.C. § 1983 | 4-5;15-16 |
| 42 U.S.C. § 12132 | 4-5; 26 |
| RCW 49.60.215 | 5 |
| RCW 71.05.020(14) | 7 |
| **Regulations** | **Page(s)** |
| 28 C.F.R. § 35.139(b) | 29 |
| WAC § 132S-100-415 | 11; 14 |
| WAC § 132S-100-205 | 13 |

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT 3

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140



COMES NOW Plaintiff R.W., by and through his attorneys of record, and moves the Court for an order granting summary judgment establishing liability of defendants for the claim brought under 42 U.S.C. § 1983 and establishing liability for the claims brought under 42 U.S.C. § 12132 and 29 U.S.C. § 794. This motion is brought pursuant to Fed R. Civ. P. 56 and is supported by the Declaration of Eric B. Eisinger and the file and records contained herein.

## I.    SUMMARY OF THE ARGUMENT

After suffering several sleepless nights in February of 2017, R.W. made an appointment with his primary care physician to receive treatment for insomnia and epileptic seizures that had worsened due to recent stress. While at the appointment, R.W. informed his physician that he was experiencing thoughts of physically harming his teachers. R.W. did the responsible thing by informing his physician of these thoughts. R.W. took no actions on these thoughts and did not disclose these thoughts to anyone other than his medical providers; R.W.'s physician did the responsible thing and referred his patient to Crisis Response where R.W. accepted voluntary evaluation and treatment. Crisis Response informed the Pasco Police who in-turn informed Columbia Basin College (CBC). Crisis Response quickly concluded that R.W. was not a threat to others.

Based on these communications to health care providers, CBC indefinitely trespassed R.W. from campus and found R.W. to be in violation of the Student

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

Code of Conduct for engaging in abusive conduct.  It is undisputed that CBC sanctioned R.W. for seeking treatment from mental health professionals.  The sanctions imposed by CBC violated R.W.'s right to free speech under the First Amendment.  Further, CBC intentionally violated his rights as a disabled individual under the Americans with Disabilities Act (ADA), the Rehabilitation Act (RHA), and the Washington Laws Against Discrimination (WLAD).  As a result, the Court should grant this motion for summary judgment establishing liability on the claim brought pursuant to 42 U.S.C. § 1983 as well as the claims brought under 42 U.S.C. § 12132, 29 U.S.C. § 794 and RCW 49.60.215.

## II.    FACTS

R.W. was a student enrolled at the nursing program at CBC.  In the Winter Quarter of 2017, R.W. was a student in good standing at CBC who had accumulated 177 credit hours towards a degree in nursing, with only 24 credit hours needed to achieve his degree.  *Eisinger Decl. at Exhibit AH, ECF No. 37-34, pgs. 5-6*; *Eisinger Decl. at Exhibit D, ECF No. 37-4, pg. 4*.  During his enrollment, R.W. was a disabled person suffering from chronic back pain, epilepsy, insomnia, anxiety and depression.  CBC knew R.W. was disabled and provided R.W. with services through the Student Resources Center.  *Eisinger Decl. at Exhibit X, ECF No. 37-24, pgs. 2; 5*; *Eisinger Decl. at Exhibit W, ECF No. 37-23, pg. 1*.

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

1    In February of 2017, R.W. saw an increase in the frequency of his epileptic

2 seizures which he attributed to stress.  *Eisinger Decl. at Exhibit X, ECF No. 37-24,*

3 *pg. 5*; *Eisinger Decl. at Exhibit L, ECF No. 37-12, pg. 1.*  These symptoms led to

4 R.W. experiencing trouble sleeping and insomnia.  *Id.*  On February 28, 2017,

5 R.W. contacted his primary care physician Dr. Michael Cabasug because R.W. was

6 having trouble with insomnia and was having violent thoughts regarding his

7

8 instructors at CBC.  *Eisinger Decl. at Exhibit L, ECF No. 37-12, pg. 1*; *Eisinger*

9 *Decl. at Exhibit V, ECF No. 37-22, pg. 10.*  R.W. was scheduled for an

10 appointment on March 6, 2017.  *Eisinger Decl. at Exhibit V, ECF No. 37-24, pg. 5.*

11

12 From February 28, 2017 to March 6, 2017, R.W. attended classes at CBC with no

13 issues and did not mention these thoughts to anyone at CBC or elsewhere.

14 *Eisinger Decl. at Exhibit L, ECF No. 37-12, pg. 1*; *Eisinger Decl. at Exhibit H,*

15

16 *ECF No. 37-8 (hereafter "Reagan Dep."), Reagan Dep. 39:3 to 39:14*; *Reagan*

17 *Dep. 156:7 to 156:16*; *Eisinger Decl. at Exhibit Y, ECF No. 37-25, pg. 1*; *Eisinger*

18 *Decl. at Exhibit Z, ECF No. 37-26, pg. 3.*  Before meeting with Dr. Cabasug, on

19 the morning of March 6, R.W. met with his instructor Kim Tucker who described

20

21 their interaction as follows:

22

23    3.6.17—asked Robert to stop by and see me to get his computer codes and access information for spring
       clinical. He stopped by after class and was in a good mood and said thank you.

24

25 *Eisinger Decl. at Exhibit Z, ECF No. 37-26, pg. 3.*

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

1
2
3
4
5
6
7
8
9
10
11
12
13
14

R.W. met with Dr. Cabasug on March 6, 2017 and informed his physician of his thoughts about hurting his instructors. *Eisinger Decl. at Exhibit L, ECF No. 37-12, pg. 1*; *Eisinger Decl. at Exhibit X, ECF No. 37-24, pg. 5*. Dr. Cabasug recommended a change in R.W.'s drug dosage and spoke with R.W. regarding techniques for managing stress. *Id*. Out of abundance of caution, Dr. Cabasug referred R.W. to Lourdes, the Designated Crisis Responder for Benton and Franklin Counties, for evaluation. *See* RCW 71.05.020(14); *Eisinger Decl., ECF No. 37-24, pg. 5*. While at Dr. Cabasug's office, R.W. met with a representative of Lourdes and thereafter voluntarily admitted himself to Lourdes Transition Center for inpatient mental health treatment. *Id*; *Eisinger Decl. at Exhibit AA, ECF No. 37-27, pgs. 3-4*.

15
16
17
18
19
20
21
22
23
24

Unbeknownst to R.W., Lourdes contacted the Richland and Pasco Police Departments regarding R.W.'s violent thoughts about his instructors at CBC. *Eisinger Decl. at Exhibit J, ECF No. 37-10, pgs. 2; 5-7*. On March 7, 2017, the Police Departments contacted CBC and informed them of the report. *Id*. This information was sent from Mike Hahn to security supervisor Levi Glatt and in-turn to Ralph Reagan, the Assistant Dean for Student Conduct and Activities. *Eisinger Decl., ECF No. 37-10, pgs. 9-12; Reagan Dep. 23:20 to 24:12*. The communication viewed by Mr. Reagan stated as follows:

25

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

1

2

Levi,

At approximately 0800 hours 3/7/17, I was contacted by Ofc. K. Erickson of PPD with the following information.

3

4

5

6

7

PPD was contacted earlier today by Crisis Response about CBC student [R.W.]. [R.W.] admitted to having homicidal ideations toward staff at CBC, talking about lighting offices on fire and attacking people with saws. The instructors specifically mentioned are Kim [T]ucker Valerie Topham and Alma Martinez.

[R.W.] is currently at Carondelet getting help and may not be an immediate threat.[1]

8

9

10

11

12

13

14

15

16

*Id*.  That same day, Reagan issued a letter to R.W. that he was trespassed from campus on the basis that R.W.'s communications to medical professionals constituted "Abusive Conduct" under the CBC Student Code of Conduct.  *Eisinger Decl.at Exhibit I, ECF No. 37-9, pg. 1.*  Reagan was aware that R.W. was receiving services from the Student Resource Center before issuing the trespass and was aware R.W. was a student with a disability.  *Eisinger Decl. at Exhibit W, ECF No. 37-23, pg. 1.*

17

18

19

20

21

At the same time, R.W.'s instructors began falsifying reasons for R.W.'s dismissal from the nursing program.  Instructor Valerie Topham, who had a self-described "complete meltdown," generated academic progress alerts stating that R.W. was showing a lack of effort, lack of progression/critical thinking and low

22

23

24

25

[1] "Carondelet" is a commonly known way to describe Crisis Response in the Tri-Cities as Lourdes Counseling Center is located at 1175 Carondelet Drive in Richland, Washington.

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT 8

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

examination scores even though R.W. was passing her classes. *Eisinger Decl. at Exhibit E, ECF No. 37-5, pgs. 1-2;  Eisinger Decl. at Exhibit C, ECF No. 37-3 (hereafter "Cooke Dep."), 85:13 to 85:16; 86:2 to 86:3*.  The day after the interim trespass, Kim Tucker filled out a "Nursing Student Discontinuation Form" stating R.W. was discontinuing the program based on "incomplete winter quarter trespassed from campus."

*Eisinger Decl. at Exhibit F, ECF No. 37-6, pg. 1*.  The same day, Ms. Tucker drafted a (ultimately unsent) letter stating R.W. was dismissed effective immediately based on his breach of "professionalism standards as a nursing student," citing R.W.'s communications with his medical providers.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT 9

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

1

2
    March 8, 2017

3
    R    W
    1241 Columbia Park Trail
4
    Richland, WA 99352

5
    Re: Dismissal from CBC Nursing Program

    Dear R
6
    This letter serves as notice that you have been dismissed from the CBC Nursing Program
7
    effectively immediately, based on your breach of professionalism standards as a nursing
    student. This breach included unprofessional and unethical communication as reported to
    the College by the Richland police department and Crisis Response Center dated
8
    3/6/2017. The decision to dimiss is based on the "Professionalism Standards" outlined in
    the Nursing Student Handbook pp. 30-31:
9
    *"Students will be regularly evaluated on their display of ethics and professionalism*
    *prescribed to by the nursing profession. A student may be dismissed from courses within*
10
    *the program or receive a failing grade soley based on ethics and professionalism."*

11
    You will not be eligible to apply for re-entry to the Nursing Program. I understand you
    are meeting with Ralph Reagan, Assistant Dean for Student Conduct, to address
    additional implications of your behavior.
12
    Sincerely,

13
*Eisinger Decl. at Exhibit AE, ECF No. 37-31, pg. 1; Eisinger Decl. at Exhibit AB,*
14
*ECF No. 37-29, pg. 1.* Mr. Reagan initially approved of this course of action.
15
*Eisinger Decl. at Exhibit AD, ECF No. 37-30, pg. 1.* At a CBC nursing faculty
16
meeting on March 13, 2017, the staff was told R.W. "has been trespassed from
17
CBC and will not return to the Nursing program."
18

19

20
R███W has been experiencing grand mall seizures regularly and had met with Kim, Val and Peggy regarding those implications. A few days after that he made death threats to Kim, Val, and Alma while with his counselor. He has been trespassed from CBC and will not
21
return to the Nursing program. R███ will meet with Ralph Reagan in Student Conduct to determine further decisions. Ralph asked Leslie and Laura to serve on an intervention team.
22

23
*Eisinger Decl. at Exhibit AF, ECF No. 37-32, pg. 1.* On March 10, 2017, R.W.
24
sent Reagan an e-mail asking for the interim trespass to be lifted so that R.W.
25
could resume classes.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT 10

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

1

**From:**                          R    W    <                    >
**Sent:**                          Friday, March 10, 2017 3:17 PM
2                                  **To:**                           Reagan, Ralph
**Subject:**                       Re: Student Appeals Board

3          Mr. Reagan,

4          I apologize for the delay, I was in a form of treatment where access to the internet was unavailable for a certain
           period of time.

5          You were originally notified of my condition, but only to the extent required by law. I would like to plead my
           case by filling in the blanks.

6          I originally had some violent thoughts over a week ago, but never acted on them, instead I sought out treatment.
7          After speaking with my primary care physician last Monday, I met with a crisis advisor, and spent every day
           since then in treatment at Lourdes. I was released today after it was determined by the staff at Lourdes and the
           crisis advisor that I was not a threat to myself or others. I have begun a medical regimen, including medication
8          and outpatient counseling. The nurse practitioner at Lourdes that cared for me has offered to advocate on my
           behalf, and so has my Primary Care Physician. Please let me know if any documentation would help my case,
           and I will attempt to get it Monday for you.
9
           I would very much like the opportunity to complete my degree with the nursing program, especially since I am
10         close to finishing. I have developed new coping strategies to help with the stress I experienced, and I also have
           developed a care plan with the team of medical professionals in the unfortunate case that these feelings are ever
           to arise again.
11
           Thank you very much,
12         R    W

13   *Eisinger Decl. at Exhibit L, ECF No. 37-12, pg. 1.*   On March 14, 2017, the

14   Student Appeal Board affirmed the interim trespass.  *Eisinger Decl. at Exhibit M,*

15   *ECF No. 37-13, pg. 1.*  On March 22, 2017, R.W. sought additional review of the

16
     interim trespass.  *Eisinger Decl. at Exhibit M, ECF No. 37-14, pgs. 1-2.*  On April
17
     19, 2017, CBC interim president Lee Thornton modified the trespass to exclude the
18
     Pasco CBC campus.  *Eisinger Decl. at Exhibit N, ECF No. 37-15, pg. 1.*  However,
19
     as the nursing classes take place at CBC's Richland campus, R.W. remained
20
21   unable to attend his courses. *Reagan Dep. 59:11 to 59:15.*  As the president,

22   Thornton had final authority in regard to violations of the Student Code of

23
     Conduct.  *WAC § 132S-100-415(5)(c)(iii).*
24
25

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

In conjunction with the interim trespass proceedings, Reagan began investigating the purported violation of the Student Code of Conduct. *Eisinger Decl. at Exhibit K, ECF No. 37-11, pg. 1.* On March 22, 2017, Reagan met with R.W. and counsel for R.W. regarding the alleged violation. *Eisinger Decl. at Exhibit V, ECF No. 37-22, pg. 7; Reagan Dep. 148:1 to 148:7.* As part of this meeting, Reagan requested full access to R.W.'s private medical records which were provided. *Id.* Reagan reviewed the medical records thoroughly, noting that the health care providers had determined that R.W. was not a threat to others before he was released from voluntary treatment and that he was continuing with outpatient mental health treatment. *Eisinger Decl. at Exhibit U, ECF No. 37-21, pgs. 1-4; Reagan Dep. 115:21 to 115:22.* Dr. Cabasug further wrote a letter assuring CBC that R.W. "[n]ever has shown any aggressive behavior or language" in the years Dr. Cabasug had acted as R.W.'s primary care physician. *Eisinger Decl. at Exhibit AF, ECF No. 37-32, pg. 1.* After concluding his review, Reagan explicitly attributed R.W.'s thoughts and violent ideations to R.W.'s disability as set forth in an April 17, 2017 e-mail to Patricia Campbell, the Vice President of Student Services:

> The student's behavior and ideations created a hostile or intimidating environment for our staff and faculty whether he intended to or not. Through my investigation, this seems to be an episode out of character for the student and was a result of a combination of stress, anxiety, sleep deprivation, depression and possibly medication issues. Those concerns are being treated and he has shown the medical professionals no serious concerns since those initial first days in treatment, but he has continued outpatient treatment through their mental health provider and has no current homicidal ideations. I am leaning towards dropping the trespass with the idea that he would have frequent follow ups with me and allow us to have open communication with his therapist through him to confirm he has been attending all his appointments and that no serious concerns have arisen.

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

*Eisinger Decl. at Exhibit AI, ECF No. 37-35, pg. 1.*    Reagan confirmed this attribution in his deposition testimony:

> Q: So in part, you attributed his ideations to depression and insomnia. Do I understand that from you?
>
> Reagan: <u>I mean, I guess yes.  But I -- not like I'm diagnosing him.  I just -- based on what I read through, what he's going through, and everything and what had led to it, stress and lack of sleep and things -- you know, those kind of things, obviously</u>.
>
> Q: Those attributed to his ideations?
>
> Reagan: <u>Factor into it, yeah</u>.

*Reagan Dep. 175:5 to 175:14.* Shortly thereafter on April 20, 2017, Reagan issued a finding R.W. responsible for violating CBC's policy on Abusive Conduct:

> **WAC 132S-100-205 Abusive conduct.**
> Physical and/or verbal abuse, threats, intimidation, harassment, online harassment, coercion, bullying, cyberbullying, retaliation, stalking, cyberstalking, and/or other conduct which threatens or endangers the health or safety of any person or which has the purpose or effect of creating a hostile or intimidating environment.

*Eisinger Decl. at Exhibit P, ECF No. 37-16, pgs. 1-2.* In making this finding, Reagan explained the violation as follows:

> As per our conversation at the meeting, you explained that you had homicidal thoughts due to stress and lack of sleep with the possibility of medication being a factor. When you had homicidal thoughts you immediately contacted your primary care doctor because you were concerned. Your doctor recommended that you go to Crisis Response and you were voluntarily admitted to Lourdes. I understand that the result of your behavior was not to create a hostile or intimidating environment, but it had the same effect. Therefore you are found responsible for violating our policy on Abusive Conduct.

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140


WALKER
HEYE
MEEHAN
EISINGER PLLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

*Id*.  Reagan identified the "conduct" at issue as the thoughts in R.W.'s mind. *Reagan Dep. 156:7 to 156:12*.

On May 4, 2017, R.W. appealed to the Student Appeal Board requesting review of the finding of misconduct.  *Eisinger Decl. at Exhibit Q, ECF No. 37-17, pgs. 1-3*.  On May 24, 2017, the Student Appeal Board affirmed the finding of misconduct.  *Eisinger Decl. at Exhibit R, ECF No. 37-18, pg. 1*.  On June 7, 2017, R.W. appealed to the President of CBC regarding the finding.  *Eisinger Decl. at Exhibit S, ECF No. 37-19, pgs. 1-3*.  On June 12, 2017, Thornton as the final decisionmaker upheld the finding of misconduct and the sanctions therein. *Eisinger Decl. at Exhibit T, ECF No. 37-20, pgs. 1-4; WAC § 132S-100-415(5)(c)(iii)*.

### III.  ARGUMENT

The Court should grant R.W.'s motion for partial summary judgment establishing liability against CBC under the ADA, RHA and WLAD based on CBC's intentional discrimination against R.W. on the basis of his disability. Further, the Court should conclude that Reagan and Thornton violated R.W.'s First Amendment rights under 42 U.S.C. § 1983 and that these rights were clearly established at the time of the violation.

No matter how CBC ultimately tries to characterize the facts, at the end of the day, it is undisputed that CBC sanctioned R.W. based on speech he made privately to his doctor while seeking medical treatment.  The CBC decisionmakers

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT 14

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

who found R.W. guilty of misconduct and levied discipline ("Sanctions") against R.W. explicitly attributed the "abusive conduct" to R.W.'s disabilities.   Even before considering the actions of CBC faculty to falsify reasons for R.W.'s expulsion, these undisputed facts alone are dispositive.   A State actor cannot sanction a person under a student code of conduct by categorizing protected speech as "abusive conduct."   Furthermore, a public accommodation, including a public college, cannot discipline an otherwise qualified student they know is disabled for seeking treatment for his disability.   As a result, the Court should grant this motion for partial summary judgment establishing liability in this action.

      **A.**     **Summary Judgment Standard.**

      Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact.   *See, e.g., United States v. JP Morgan Chase Bank Account No. Ending 8215*, 835 F.3d 1159, 1162 (9th Cir. 2016) (internal quotation marks omitted).

      **B.**     **The Court Should Grant R.W.'s Motion For Partial Summary Judgment Because CBC, Reagan and Thornton Violated R.W.'s First Amendment Rights Under 42 U.S.C § 1983.**

      The Court should grant R.W.'s motion for partial summary judgment because CBC violated R.W.'s rights under the First Amendment by finding R.W. guilty of "abusive conduct" for seeking treatment from his doctor for violent

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

ideations he was experiencing.  To establish liability under 42 U.S.C. § 1983, R.W. must establish that "(1) the defendants acting under color of state law (2) deprived plaintiffs of rights secured by the Constitution or federal statutes."  *Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).  A person deprives another of a constitutional right, "within the meaning of § 1983, 'if he does an affirmative act, participates in another's affirmative act, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made.'" *Preschooler II v. Clark Cty. Sch. Bd. of Trs.*, 479 F.3d 1175, 1183 (9th Cir. 2007) (*quoting Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978)).  Additionally, to establish liability for monetary damages, R.W. must establish that his constitutional rights were clearly established at the time of the violation.  *Saucier v. Katz*, 533 U.S. 194, 201 (2001) *receded from on other grounds, Pearson v. Callahan*, 555 U.S. 223 (2009).

### 1.    CBC, Reagan And Thornton Violated R.W.'s First Amendment Rights.

The Court should grant R.W. summary judgment because even in the light most favorable to the Defendants, CBC's sanctioning of R.W. under the Student Code of Conduct is a brazen violation of the First Amendment.  In categorizing R.W.'s speech to medical professionals as "abusive conduct," CBC as a State actor has infringed not only on the First Amendment rights of R.W. within the doctor-

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

patient relationship but has also sanctioned R.W. based on pure speech that does not fall within any recognized exception to the First Amendment.

In the context of seeking medical advice, "the State may not, consistently with the spirit of the First Amendment, contract the spectrum of available knowledge." *Griswold v. Connecticut*, 381 U.S. 479, 482 (1965).  Our courts have long recognized "the core First Amendment values of the doctor-patient relationship." *Conant v. Walters*, 309 F.3d 629, 637 (9th Cir. 2002).  The doctor-patient privilege reflects "the imperative need for confidence and trust" inherent in the doctor-patient relationship and recognizes that "a physician must know all that a patient can articulate in order to identify and to treat disease; barriers to full disclosure would impair diagnosis and treatment." *Id*. (*quoting Trammel v. United States*, 445 U.S. 40, 51 (1980)).

"[T]he precedents of [the Supreme Court] leave no room for the view that, because of the acknowledged need for order, First Amendment protections should apply with less force on college campuses than in the community at large." *Healy v. James*, 408 U.S. 169, 180 (1972).  There are no special exceptions to the First Amendment for college campuses and such cases merely require "the application of well-established First Amendment principles" and are "governed by existing precedent." *Id*. at 170.

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

Both on-campus or off-campus, "[t]here is no categorical 'harassment exception' to the First Amendment's free speech clause." *Saxe v. State Coll. Area Sch. Dist.*, 240 F.3d 200, 204 (3d Cir. 2001) (concluding that the school's Anti-Harassment Policy and definition of harassment was facially overbroad); *Dambrot v. Cent. Michigan Univ.*, 55 F.3d 1177, 1182 (6th Cir. 1995) (policy prohibiting "any intentional, unintentional, physical, verbal, or nonverbal behavior that subjects an individual to an intimidating, hostile or offensive educational, employment or living environment" based on race was facially unconstitutional); *see also Burge ex rel. Burge v. Colton Sch. Dist. 53*, 100 F. Supp. 3d 1057 (D. Or. 2015) (school district violated student's First Amendment rights by punishing him for saying online that his teacher "needs to be shot"; and the teacher becoming "scared," "nervous," and "upset" did not justify punishment or make the speech a true treat).

In *College Republicans at San Francisco State University v. Reed*, a student group held an anti-terrorism rally where demonstrators stomped on paper-versions of flags for Hamas, Palestinian Liberation Organization and Hezbollah. 523 F. Supp. 2d 1005, 1007 (N.D. Cal. 2007). A student made a formal complaint to the University alleging the actions violated the student code of conduct. *Id.* at 1008. The University formally notified the group that it was under investigation for violating the student code requiring students "to be civil to one another and to

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER HEYE MEEHAN EISINGER

others in the campus community, and contribute positively to student and university life." *Id.* at 1009. The University initiated formal disciplinary procedures and the matter went to hearing. *Id.* at 1010. The Student Organization Panel conducted a formal hearing and, after taking testimony and additional evidentiary submissions, found the College Republicans had not violated the code of conduct. *Id.* Nonetheless, the group brought an action against the University alleging the provisions of the code of conduct requiring (1) civility (2) prohibiting conduct that is "inconsistent with SF State goals, principles and policies"; and prohibiting "intimidation" and "harassment" violated the First Amendment. *See id.* at 1024-25.

The Court began by noting that only well-defined and narrowly limited classes of speech fall outside the First Amendment:

> These include the lewd and obscene, the profane, the libelous, and fighting words. Speech or expressive conduct that is directed to inciting or producing imminent lawless action and that is likely to incite or produce such action," also is subject to regulation. In addition, the Constitution permits government to proscribe "true threats." True threats' encompass those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. Thus, a law that regulated or proscribed only one of these categories of speech or expressive activity would not run afoul of the First Amendment. At least some of the prohibitions of the Student Code of Conduct and the Student Organization Handbook that plaintiffs challenge here, however, reach well beyond any of these narrow categories.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT 19

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

*Id.* at 1012 (internal citations and quotations omitted).  The court concluded that the code sections mandating civility and acting in accordance with the University's values did not fall within any exception to the First Amendment.  *Id.* at 1021; 1024.  In declining to enjoin the prohibitions on harassment and intimidation, the court emphasized that harassment and intimidation standing alone was insufficient to constitute a violation of the code of conduct.  *Id.* at 1022.  Instead, the harassing or intimidating conduct would have to threaten or endanger the health or safety of any person.  *Id.* at 1023.

As applied to the case at hand, the undisputed evidence shows that CBC, Reagan and Thornton violated R.W.'s rights under the First Amendment by sanctioning R.W. for disclosures made to his doctor.  As the case law establishes, a student can only be sanctioned for conduct which falls within the narrow exceptions to the First Amendment.  Further, such a code can only apply to conduct that is harassing or abusive, not speech.  *See Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 764 (9th Cir. 2006) ("pure speech" is distinct from conduct, even expressive conduct).  Here, it is undisputed that R.W. did not engage in any conduct whatsoever.  The only facts that Reagan identified as violating the Student Code of Conduct was: "When you had homicidal thoughts you immediately contacted your primary care doctor because you were concerned."  Unperturbed by the lack of conduct, Reagan "found [R.W.] responsible for violating our policy on

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

Abusive Conduct."  This finding and the accompanying sanctions were thereafter affirmed by CBC's president Thornton and remain in place to date.  These findings and the accompanying sanctions violate R.W.'s rights under the First Amendment.  As a result, the Court should grant this motion for partial summary judgment.

## 2.  No Qualified Immunity.

The Court should conclude that R.W.'s rights under the First Amendment were clearly established at the time of the violation, rendering Reagan and Thornton illegible for qualified immunity.  "[T]he 'clearly established' inquiry is a question of law that only a judge can decide."  *Morales v. Fry*, 873 F.3d 817, 821 (9th Cir. 2017).  To conclude that the right is clearly established, the court need not identify an identical prior action.  *Scott v. Cty. of San Bernardino*, 903 F.3d 943, 951 (9th Cir. 2018) (explaining that although the constitutional right must be clearly established, there need not be a case dealing with the particular facts to find the officer's conduct unreasonable).  Qualified immunity is only an immunity from suit for damages, it is not an immunity from suit for declaratory or injunctive relief.  *See Hydrick v. Hunter*, 669 F.3d 937, 940–41 (9th Cir. 2012).

To determine if a right is clearly established, the court should first "'look to … binding precedent.'"  *Chappell v. Mandeville*, 706 F.3d 1052, 1056 (9th Cir. 2013) (*quoting Osolinski v. Kane*, 92 F.3d 934, 936 (9th Cir. 1996)).  Absent binding precedent, the court should consider all relevant precedents, including

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

decisions from the Supreme Court, all federal circuits, federal district courts, and state courts; in addition, the court should consider the likelihood that the Supreme Court or the Ninth Circuit would decide the issue in favor of the person asserting the right. *See Elder v. Holloway*, 510 U.S. 510, 512; 516 (1994).

In *LaVine v. Blaine School District*, high school student James LaVine asked his English teacher to critique a poem he wrote which alluded to school shootings. 257 F.3d 981, 983-84 (9th Cir. 2001).  LaVine submitted the poem on Friday, October 2, 1998.  *Id*. at 984.  The teacher, who read the poem and was concerned by its content, brought the poem to the school's counselor/psychologist.  *Id*. at 984. The counselor had counseled LaVine regarding previous suicidal thoughts and had recently met with LaVine regarding a no-contact order between LaVine and his father.  *Id*.  The school had also recently been informed that LaVine had broken up with his girlfriend and the girl's mother had called the school complaining that LaVine was stalking her daughter.  *Id*.  Over the weekend, the teacher, counselor and vice principal met and tried to determine what course of action to take.  *Id*. at 985.  The vice principal contacted the police department for guidance which suggested they contact crisis response.  *Id*.  The police contacted LaVine who told the officers he was not a threat and declined to submit to voluntary psychological examination.  *Id*.  At 8:00am on October 5, the school issued an emergency expulsion under Washington Administrative Code § 180-40-295 which allowed for

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

expulsion if the "student's presence poses an immediate and continuing danger to the student, other students, or school personnel…"  *Id*. at 986, n. 3.  After meeting with a psychiatrist, LaVine was allowed to return to the school seventeen days later. *Id*. at 986.

Even though LaVine was allowed to return to school, he continued to appeal the expulsion because there was concern it would prevent him entering the military.  *Id*.  Months later, the school board affirmed the expulsion but agreed to re-write the expulsion letter to make it clear that LaVine was expelled for safety reasons and not disciplinary reasons.  *Id*.  Thereafter, LaVine brought an action against the school for violation of his rights by expelling him and maintaining "any letters in [LaVine's] file regarding his expulsion."  LaVine and the school district each moved for partial summary judgment on the First Amendment claim.  *Id*.  The trial court denied the school's motion and granted LaVine's motion and entered an "injunction preventing the school district from placing or maintaining any negative documentation in James LaVine's school file."  *Id*. at 987.  The school district appealed.  *Id*.

On appeal, the Ninth Circuit affirmed in part and reversed in part.  *Id*.  At the outset, the court recognized that "[a]lthough schools are being asked to do more to prevent violence, the Constitution sets limits as to how far they can go."  *Id*.  While recognizing that schools are afforded substantial deference in the administration of

PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT 23

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

public education, "deference does not mean abdication; there are situations where school officials overstep their bounds and violate the Constitution." *Id*. at 988. With this background, the court evaluated whether LaVine's actions could result in substantial disruption with school activities. *Id*. at 989 (*citing Tinker v. Des Moines Indep. Cmty. Sch. Dist.*, 393 U.S. 503, 506 (1969)). The court acknowledged that "[w]hen the school officials made their decision not to allow James to attend class on Monday morning, they were aware of a substantial number of facts that in isolation would probably not have warranted their response, but in combination gave them a reasonable basis for their actions." *Id*. at 989. Based on this, the court upheld the initial emergency expulsion as a non-disciplinary action despite the school's overreaction. *Id*. However, even though the court concluded that the "emergency expelling James did not violate the First Amendment, the same cannot be said for the school's placement and maintenance in James' file of what the district court characterized as 'negative documentation.'" After it was determined there was no actual safety threat, the school was required to eliminate all the harmful effects of the expulsion and the continued maintenance of the file violated LaVine's rights under the First Amendment. *Id*.

As applied to the case at hand, *LaVine*, along with decisions across the country on the applicability of the First Amendment to campus speech codes, discussed *supra*, demonstrate that R.W.'s rights under the First Amendment were

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT 24

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

clearly established at the time he was sanctioned and effectively expelled by CBC. In this case, it is undisputed that CBC's actions against R.W. were not based on student safety concerns, but instead were a punitive sanction for R.W.'s purported violation of the student code of conduct.  It is further undisputed that R.W. engaged in no disruptive activity at the school at any point whatsoever.  Indeed, CBC and Reagan knew that R.W. was not an imminent threat to the school based on the <u>very first communication it received</u> which stated: "[R.W.] is currently at Carondelet getting help and may not be an immediate threat."

Even though CBC knew R.W. did not pose a threat to the school immediately and never uncovered any evidence to the contrary despite demanding gross invasions of R.W's privacy as part of the investigation, CBC and Reagan nonetheless upheld its sanctions of R.W. for the "abusive conduct" of seeking help from his medical provider.  Indeed, those same sanctions set forth in Reagan's April 20, 2017 letter still remain in place to date.  Any "reasonably competent public official should [have known] the law governing" their conduct prohibited them from sanctioning R.W. for speaking with his doctor to obtain medical treatment. *See Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982).  As a result, the Court should conclude as a matter of law that qualified immunity is not available to Reagan and Thornton.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT 25

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

**C. The Court Should Grant R.W. Summary Judgment On His ADA, RHA And WLAD Claims Because The Undisputed Evidence Shows CBC Discriminated Against R.W. Based On His Disability.**

The Court should grant summary judgment to R.W. establishing liability because CBC discriminated against R.W. on the basis of his disability. The ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, under the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States… shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial…" 29 U.S.C. § 734(a).

To prove that a public program or service violated Title II of the ADA, a plaintiff must show: (1) he is a "qualified individual with a disability"; (2) he was either excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (3) such exclusion, denial of benefits, or discrimination was by reason of his disability. *Duvall v. Cty. of Kitsap*, 260 F.3d 1124, 1135 (9th Cir. 2001) (*citing Weinreich v. Los Angeles County Metropolitan Transp. Auth.*, 114 F.3d 976, 978 (9th Cir. 1997)). A claim under the Rehabilitation Act requires the

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140



same elements, except the entity must receive federal financial assistance. *Zukle v. Regents of Univ. of California*, 166 F.3d 1041, 1045 (9th Cir. 1999). The elements for a claim of disability discrimination under the Washington Laws Against Discrimination are the same, except the plaintiff does not need to prove deliberate indifference to seek monetary damages. *Duval*, 260 F.3d at 1135, n. 10. Under the RHA and ADA, the plaintiff must show the defendants acted with deliberate indifference in treating the plaintiff disparately from others. *Id*. at 1139.

In *R.W. v. Bd. of Regents of the Univ. Sys. of Georgia*, student Ryan Wilkes[2] was enrolled at Georgia State University. 114 F. Supp. 3d 1260, 1267 (N.D. Ga. 2015). Wilkes sought medical testing at the student health center, and disclosed that he had been diagnosed with schizophrenia. *Id*. The nurse contacted the school's psychologist because Wilkes was "exhibiting unusual behavior in his ability to communicate." *Id*. Wilkes told the psychologist that he had experienced visual and auditory hallucinations within the last two days, and the psychologist believed Wilkes was hallucinating at the meeting itself. *Id*. Wilkes left the meeting after being asked he had experienced "command hallucinations." *Id*. The university then removed Wilkes from student housing and compelled him to

---

[2] This is a pseudonym to avoid confusion with the R.W. who is the Plaintiff in the case before this Court. The R.W. in Georgia is not the same R.W. as plaintiff in this case.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT 27

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

undertake a risk assessment. *Id*. at 1268.  At the assessment, Wilkes disclosed he

had discontinued taking his medication for schizophrenia six months prior and his

healthcare records disclosed that Wilkes' family indicated he had "a history of

aggression, depression, anxiety, anger, language delays, poor social skills, temper

tantrums, and sexual abuse." *Id*. at 1268-69.  However, Wilkes had not engaged in

disruptive behaviors in class or at student housing, nor had he made any threats to

others. *Id*. at 1268.  After review, the university conditioned Wilkes' continued

enrollment on (1) taking medication and attending counseling; (2) the university

having full access to medical records; (3) monthly reports from providers to the

university; (4) mandatory risk screening if in noncompliance; and (5) exclusion

from student housing. *Id*. at 1269-70.  When the university told Wilkes he could

not enter the student housing the next semester, Wilkes brought a lawsuit against

the university alleging claims under the ADA and RHA. *Id*. at 1270.

The University moved for summary judgment on Wilkes' claims under the

ADA and RHA, arguing that Wilkes was not qualified and the actions taken by the

university were not based on Wilkes' disability but because he posed a direct threat

of harm to others at the university. *Id*. at 1283; 1285.

> In determining whether an individual poses a direct threat to the
> health or safety of others, a public entity must make an individualized
> assessment, based on reasonable judgment that relies on current
> medical knowledge or on the best available objective evidence, to
> ascertain: the nature, duration, and severity of the risk; the probability
> that the potential injury will actually occur; and whether reasonable

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT 28

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk.

*Id.* at 1284 (*quoting* 28 C.F.R. § 35.139(b)). "The existence, or nonexistence, of a significant risk must be determined from the standpoint of the person who [makes the decision], and the risk assessment must be based on medical or other objective evidence." *Id.* (*quoting Bragdon v. Abbott*, 524 U.S. 624, 649 (1998) (emphasis added)). "The belief that a significant risk existed, even if maintained in good faith, does not relieve a defendant of liability." *Id.* Plaintiff established that he had not engaged in any disruptive behavior and was cooperative with the risk assessment. *Id.* However the medical professionals at the university noticed behaviors that indicated Wilkes was experiencing psychosis and Wilkes' medical records indicated that Wilkes had engaged in past acts of aggression, anger and violence. *Id.* After reviewing the standard, the court concluded that there was a genuine issue of material fact as to whether Wilkes posed a direct threat. *Id.*

As applied to the case at hand, the matter before this Court and the case in *Wilkes* bear some similarity. Where this case departs from *Wilkes* is that CBC at no point uncovered evidence that R.W. was a threat to anyone. As noted in *Bragdon*, there must be objective medical evidence that R.W. posed a direct threat to the safety of others, a good-faith subjective belief is insufficient. 524 U.S. at 649. R.W. did not make any threats or engage in any conduct at CBC posing a risk to others. By the time CBC learned that R.W. had disclosed violent thoughts to his

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

doctor, he was in voluntary treatment and had already be evaluated as not posing a risk of harm to others.  Even Reagan belatedly came to the same conclusion (and nonetheless imposed discipline on R.W.).  To defeat this motion for summary judgment, CBC would have to produce objective, medical evidence that R.W. posed a significant risk of harm to others.  There is no such evidence.

In this matter, the undisputed evidence shows that each of the elements under the ADA, RHA and WLAD are met.  At the time R.W. was trespassed from campus and sanctioned under the Student Code of Conduct, he was a student in good standing at CBC.  There is no dispute that R.W. was a disabled person who suffered from epilepsy, insomnia, anxiety and depression.  Thus, R.W. was a qualified person with a disability.  Similarly, there is no dispute as to the second element of the claim: R.W. was excluded from participation at CBC by being sanctioned under the Student Code of Conduct, excluded from classes, and trespassed from campus.  Finally, CBC directly attributed the sanctionable "conduct" by R.W. to his disability and there is no evidence that R.W. posed a direct threat.  As a result, the Court should grant the motion for partial summary judgment establishing liability for intentional discrimination under the ADA and RHA, as well as liability under the Washington Laws Against Discrimination.

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT 30

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

# IV.    CONCLUSION

The actions of the Defendants in this matter demonstrate that discrimination against the disabled remains a systemic problem in our society.  R.W. did what we would want any person in his situation to do: disclose concerning thoughts to his doctor and seek treatment.  CBC then sanctioned and disciplined R.W. for this disclosure, trespassing him from campus and preventing him from taking his classes.  CBC showed R.W. and other disabled students that it is not okay to come forward and seek treatment for mental illness.  You will be punished.  You will be stigmatized.  We will treat you differently.  These actions, in addition to being morally repugnant, violated R.W.'s rights under the First Amendment, the ADA, the RHA, and the Washington Laws Against Discrimination.  As a result, the Court should grant the motion for partial summary judgment establishing liability under each of these causes of action and entitling R.W. to prospective injunctive relief against CBC, Reagan and Thornton in their official capacities, leaving the only unresolved issues as a trial on damages.

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

DATED this 3rd day of June, 2019.

*s/Bret Uhrich*
Eric B. Eisinger, WSBA #34293
Bret Uhrich, WSBA #45595
Attorneys for Plaintiffs
Walker Heye Meehan & Eisinger, PLLC
1333 Columbia Park Trail, Ste 220
Richland, WA 99352
Telephone: (509) 735-4444
Fax: (509) 735-7140
E-mail: eeisinger@walkerheye.com
        buhrich@walkerheye.com

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT 32

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of June 2019, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF System which will send

notification of such filing to the following:

Carl P. Warring: carlw@atg.wa.gov


*s/ Bret Uhrich*
Bret Uhrich

PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT 33

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC