Carl Warring
Assistant Attorney General
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

Honorable Rosanna M. Peterson

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| R.W., individually and on behalf of his marital community,<br><br>Plaintiff,<br><br>v.<br><br>COLUMBIA BASIN COLLEGE, a public institution of higher education, RALPH REAGAN, in his official and individual capacities, LEE THORNTON, in his official and individual capacities,<br><br>Defendants. | NO. 4:18-05089-RMP<br><br>DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

## I. INTRODUCTION

The Court should deny R.W.'s motion for summary judgment because he (1) fails to establish undisputed material facts and (2) fails to establish that he is entitled to judgment as a matter of law on any of his claims. In fact, as discussed below, the

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

1

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

material facts that are beyond dispute, coupled with existing legal precedent, actually require summary judgment in favor of the Defendants. *See generally* ECF No. 31.

## II. ARGUMENT

A party is entitled to summary judgment when the "pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine material issue of fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c). Here the record, when taken as a whole, disproves R.W.'s factual contentions. This alone makes summary judgment in favor of R.W. improper. Moreover, applicable legal precedents illustrates that R.W. is not entitled to a judgment as a matter of law on any of his legal theories, even if his factual contentions were accurate.

**A. The Complete Record Blatantly Contradicts R.W.'s Version Of The Facts.**

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380, 127 S.Ct. 1769 (2007). Such is the situation here. The College and R.W. tell different stories – but because the complete record blatantly contradicts R.W.'s story, the Court should

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

2

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

refuse to adopt his version. A few examples are particularly instructive.[1]

First, R.W.'s motion grossly understates the significance of R.W.'s disclosure that he thought of killing three of his instructors by setting fire to their offices or attacking them with a saw. *See* ECF No. 36 at 6:1-7:14. For example, R.W. describes his doctor's decision to contact crisis response as being "out of an abundance of caution," ECF No. 36 at 7:6-7, and his residential treatment as "voluntary." ECF No. 36 at 7:10-14. Nowhere in the cited material does Dr. Cabasug minimize his decision as arising from an "abundance of caution." *See* ECF No. 37-24 at 5. In contrast, Dr. Cabasug testified that his decision to call in crisis response was appropriate. ECF No. 35-6 at 9. Nor was R.W.'s residential treatment truly voluntary. Araceli Perez, the evaluating crisis responder, gave R.W. the option of being civilly committed or voluntarily checking himself into Transitions. ECF No. 35-1 at 36-37; ECF No. 35-2 at 49-51. These decisions by Cabasug and Perez followed disclosures of homicidal ideation that R.W. himself found disturbing and scary. ECF No. 35-2 at 43-44.

Second, R.W.'s motion misrepresents his academic progress in the 2017 Winter Quarter by casting unnecessary aspersions that faculty falsified

---

[1] The Defendants' Statement of Disputed Material Facts provides a more complete list of examples where the complete record fails to support R.W.'s allegations and those examples are incorporated herein by reference as if fully set forth.

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

3

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

documentation of his academic struggles. ECF No. 36 at 8:17-9:4. R.W. testified about academic struggles he was experiencing as early as February of the 2017 Winter Quarter. ECF No. 35-2 at 25-29 (R.W. Dep at 58:10-62:21). Valerie Tucker, a CBC faculty member, testified about the continuing academic struggles R.W. experienced during the 2017 Winter Quarter. ECF No. 35-3 at 20-25 (Cooke Dep. at 58:24-59:23, 60:23-61:11, 62:6-64:2). Just a few days before his March 6, 2017 in-patient admission, R.W. exchanged emails with Tucker to set a meeting to discuss his academic struggles (the second such meeting that quarter). ECF No. 35-7 at 1-2. Moreover, during his March 6, 2017 interview with crisis response, R.W. specifically identified his bad grades and feedback from faculty as the trigger of his homicidal thoughts. ECF No. 35-1 at 19, 53 (Perez Dep. at 27:2-12, Ex. 2). R.W.'s accusation that faculty falsified reports of his academic struggles is completely unwarranted.

Third, R.W. misrepresents specific events related to the Defendants' knowledge of his health care conditions. For example, R.W. claims that Reagan knew R.W. received accommodations *before* issuing the interim trespass. *See* ECF No. 36 at 8:12-16. R.W. cites to a March 7, 2017 email string as evidence. *See* ECF No. 36 at 8:12-16 (citing to ECF No. 37-23). However, the March 7, 2017 email string says nothing of the sort. *See* ECF No. 37-23 at 1. Reagan sent notice of the interim trespass decision at 11:40 a.m. on March 7, 2017. ECF No. 37-23 at 1. At 1:57 p.m. on March 17, 2017, in response to Reagan's earlier email,

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

4

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

the Resource Center notified Reagan that R.W. was a student who received their services. ECF No. 37-23 at 1. Another example of a misrepresentation is R.W.'s implied suggestion that CBC provided R.W. with an accommodation for his depression. *See* ECF No. 36 at 5:19-24. R.W. implies this by listing depression as one of his disabilities immediately before he writes that CBC knew he was disabled and provided him with accommodations. *See* ECF No. 36 at 5:19-24. However, R.W. did not disclose his depression to CBC before the interim trespass occurred. ECF No. 35-4 at 30 (R.W. Dep. at 63:13-20). The Resource Center could not have approved accommodations for a condition they did not know about.

Finally, R.W. incorrectly asserts that Reagan specifically attributed R.W.'s homicidal ideation to R.W.'s disabilities.[2] ECF No. 36 at 12:17-13:10. Reagan testified that he wasn't attempting to diagnose the source of R.W.'s homicidal ideation. ECF No. 37-8 at 15-16 (Reagan Dep. at 174:21-175:14). Reagan also testified that he thought the cause was potentially multi-faceted. ECF No. 37-8 at

---

[2] The cause of R.W.'s homicidal ideations are ultimately irrelevant because the College took action based upon concerns presented by R.W.' homicidal ideation, not any disability, and the College can certainly take action to protect against R.W.'s homicidal ideation, even if it is caused by a disability. *Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 366–71 (6th Cir.2007), abrogated on other grounds, *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir.2012).

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

5

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

15-16 (Reagan Dep. at 174:21-175:14) ("I mean, I guess yes. But I – not like I'm diagnosing him. I just – based on what I read through, what he's going through, and everything and what led to it, stress and lack of sleep and things – you know, those kind of things, obviously.") R.W. himself identified the trigger of his homicidal thoughts to bad grades and feedback from faculty when he was initially evaluated by crisis response. ECF No. 35-1 at 19, 53 (Perez Dep. at 27:2-12, Ex. 2).

For these reasons, along with the other corrections and clarifications offered in Defendant's Statement of Disputed Material Facts, the Court should reject R.W.'s version of the events as unsupported by the record and deny his motion for summary judgment.

**B. R.W. Is Not Entitled To Judgment As A Matter Of Law On His Various Claims Against The Defendants.**

**1. R.W.'s 42 U.S.C. § 1983 First Amendment Claim Fails As A Matter Of Law.**

R.W. argues that CBC violated his First Amendment rights by trespassing him from campus and imposing sanctions as a result of his homicidal ideation. ECF No. 36 at 15:20-21:5. R.W. also attempts a preemptive strike against qualified immunity by arguing that First Amendment case law was so clearly established, the Defendants should have known they were violating R.W.'s First Amendment rights. ECF No. 21:6-25:24. R.W. is grossly mistaken on both accounts.

R.W.'s analysis fails to cite, much less distinguish, the two most recent,

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

6

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

germane Ninth Circuit Court of Appeals cases regarding threats of school violence. *See McNeil v. Sherwood School Dist. 88J,* 918 F.3d 700 (9th Cir. 2019); *Wynar v. Douglas County School Dist.,* 728 F.3d 1062, 1069 (9th Cir. 2013). *See* ECF No. 36 at 2 (table of authorities). Instead, R.W. builds his arguments around cases and legal principles that fail to squarely address the question presented. For instance, *College Republicans at San Francisco State University v. Reed*, 523 F.Supp.2d 1005, 1007 (N.D. Cal. 2007), which R.W. relies heavily upon, did not involve threats of school violence. As R.W. describes it, that case only involved "an anti-terrorism rally where demonstrators stomped on paper-versions of flags" and alleged violations of the student code requiring students to be civil. ECF No. 36 at 18. This appears to be a strategic decision because the relevant, binding Ninth Circuit precedent disproves of his First Amendment arguments. *McNeil v. Sherwood School Dist. 88J*, 918 F.3d 700 (9th Cir. 2019) provides a keen illustration.

In *McNeil*, the Ninth Circuit addressed whether a school district could discipline a student based upon a 4 month old entry in the student's private journal that came to the school's attention only because the student's mother stumbled across the entry and then shared it with a mental health professional. *McNeil*, 918 F.3d at 703-04. Ultimately, the Ninth Circuit, in a unanimous decision, affirmed the District Court's summary dismissal of the student's First Amendment claim against the school district. *Id.* at 703-04. The *McNeil* Court

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

7

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

described the test for determining whether discipline violates the First Amendment as follows:

> . . . courts considering whether a school district may constitutionally regulate off-campus speech must determine, based on the totality of the circumstances, whether the speech bears a sufficient nexus to the school. This test is flexible and fact-specific, but the relevant considerations will include (1) the degree and likelihood of harm to the school caused or augured by the speech, (2) whether it was reasonably foreseeable that the speech would reach and impact the school, and (3) the relation between the content and context of the speech and the school. There is always a sufficient nexus between the speech and the school when the school district reasonably concludes that it faces a credible, identifiable threat of school violence.

*McNeil*, 918 F.3d at 707-08 (internal citations omitted) (emphasis added). The *McNeil* Court specifically rejected the idea that a student's intent to keep expressions of violence private can insulate the student from discipline:

> CLM attempts to distinguish *Wynar* on the ground that he had no intent to communicate the contents of his speech to anyone. That distinction cannot be dispositive. We have recognized repeatedly that the specter of school violence places a weighty social responsibility on school districts to ensure that "warning signs" do not turn to tragedy. This responsibility does not mean schools may "expel students just because they are 'loners,' wear black and play video games." It does mean, however, that a student's intent, although relevant, does not necessarily define the threat of violence. We reaffirm our holding in *Wynar* that regardless of the speaker's intent or how speech comes to a school district's attention, a school district may take disciplinary action in response to off-campus speech when it reasonably determines that it faces an identifiable and credible threat of school violence.

*Id.* at 708 (internal citation omitted) (emphasis added).

*McNeil* is dispositive of R.W.'s First Amendment claim because *McNeil*

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

8

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

expressly holds, "[t]here is always a sufficient nexus between the speech and the school when the school district reasonably concludes that it faces a credible, identifiable threat of school violence," *id*. at 707-08, and here the College reasonably concluded that R.W. presented a credible, identifiable threat of school violence. The College's conclusion was reasonable based upon the following undisputed facts. R.W. disclosed homicidal ideation. ECF No. 35-6 at 22 (Cabasug Dep. at Ex. 3 (March 6, 2017 Progress Note)). In doing so, he identified specific faculty members as targets. ECF No. 35-1 at 28 (Perez Dep. at 37:11-19). He identified specific ways in which he envisioned killing the faculty members. ECF No. 35-1 at 38 (Perez Dep. at 51:3-12). His ideation was significant enough that crisis response required R.W. to either check himself into a residential treatment program or be civilly committed. ECF No. 35-1 at 36 (Perez Dep. at 49:10-50-10) and ECF No. 35-2 at 49-50 (R.W. Dep. at 83:23-84:18). R.W's ideation was serious enough that crisis response initiated their duty to warn protocols. ECF No. 35-1 at 38 (Perez Dep. at 51:13). The College was aware that R.W. himself identified that bad grades and feedback from his instructors triggered his thought to harm them. ECF No. 35-1 at 19, 53 (Perez Dep. at 27:2-12, Ex. 2). Further, when the College investigated R.W.'s disclosure, involved health care providers stopped short of assuring the College that R.W. would not have any recurrence of his homicidal ideation upon returning to the school environment. ECF No. 35-4 at 110-12 (Reagan Dep. at 136:16-

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

9

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

138:8); ECF No. 35-6 at 5-6 (Cabasug Dep. at 15:9-16:11). Thus, there is no genuine issue of material fact that CBC reasonably concluded that it faced a credible, identifiable threat of school violence.[3]

*McNeil* also disposes of R.W.'s central argument – that he cannot be sanctioned when his only conduct was disclosing his homicidal ideation to his primary care physician.[4] ECF No. 36 at 20:11-21:5. As the *McNeil* Court said, ". . . <u>regardless of the speaker's intent or how speech comes to a school district's attention,</u> a school district may take disciplinary action in response to off-campus

---

[3] A more complete description of the application of *McNeil* to this matter is found at ECF No. 31 at 14:1-18:10 and incorporated herein by reference. Of particular consequence is that R.W.'s First Amendment rights were properly curtailed because they conflicted with another person's rights in the workplace and were reasonably expected to cause a substantial disruption. *See* ECF No. 31 at 17:3-18:10.

[4] R.W. seems to suggest that his disclosure of homicidal ideation is somehow protected speech because he made it to his primary care provider. *See* ECF No. 36 at 17:3-15. R.W.'s suggestion is erroneous. In *Petersen v. State*, 100 Wn.2d 421, 427-28, 671 P.2d 230 (1983) the Washington State Supreme Court recognized a specific duty to warn on the part of health care providers. Moreover, the Washington State Legislature has expressly excluded the duty to warn from the statutory immunities expressed in 71.05.120. *See* RCW 71.05.120(3).

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

10

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

speech when it reasonably determines that it faces an identifiable and credible threat of school violence." *Id.* at 708.

The closest R.W. gets to citing directly applicable precedent is *LaVine v. Blaine School District*, 257 F.3d 981, 983-84 (9th Cir. 2001). R.W. cites to *LaVine* for the proposition that First Amendment jurisprudence is so clearly established, the Defendants should have known their actions violated R.W.'s First Amendment rights. ECF No. 36 at 22:6-25:24. R.W.'s argument that the law was clearly established at the time under the *LaVine* opinion does not logically follow because the *LaVine* Court found that the emergency expulsion of the student did not violate his First Amendment rights due to school's perceived threats in his poem and its concerns for student safety. *LaVine*, 257 F.3d at 992. The *LaVine* court's finding of a First Amendment violation was limited to "the school's placement and maintenance in [LaVine's] file of 'negative documentation'" after the school had allowed Lavine had "to return to classes and had satisfied itself that [he] was not a threat to himself or others." *Id*. This is readily distinguishable from the First Amendment violation that R.W. posits in his motion for summary judgment.

Even if we assume for the sake of argument that R.W.'s interpretation of the 2001 *LaVine* decision is correct, *LaVine* still does not preclude granting the Defendants qualified immunity. The Ninth Circuit's 2013 and 2019 decisions in *Wynar v. Douglas County School Dist.,* 728 F.3d 1062, 1069 (9th Cir. 2013) and

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

11

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

*McNeil v. Sherwood School Dist. 88J,* 918 F.3d 700 (9th Cir. 2019) are still binding precedent. Both *Wynar* and *McNeil* support the proposition that the discipline imposed here did not offend the First Amendment, as discussed above. At best, R.W.'s interpretation of *LaVine* means that a conflict exists in Ninth Circuit case law. A conflict prevents a finding that the law was so clearly established that the Defendants knew their actions would violate R.W.'s First Amendment rights.

For these reasons, R.W.'s motion for summary judgment on his 42 U.S.C. § 1983 First Amendment claim must be denied.

### 2. R.W.'s ADA, Rehabilitation Act, And WLAD Claims Fail As A Matter Of Law.

R.W. seeks summary judgment on his Americans with Disabilities Act (ADA), Rehabilitation Act, and Washington Law Against Discrimination (WLAD) claims, arguing that the undisputed material facts support each element of each claim. ECF No. 36 at 26:1-30:23. R.W.'s position is wrong for a number of reasons.

First, R.W.'s position is wrong because R.W.'s analysis is incomplete. As explained in Defendants' Motion and Memorandum for Summary Judgment, R.W.'s disclosure that he thought of killing three of his instructors by setting fire to their offices or attacking them with a saw precludes him from being a qualified individual under any of the Acts because of the direct threat he posed. *See* ECF No. 31 at 21:10-23:2. Moreover, the College did not improperly exclude R.W. on the basis of a disability by responding to R.W.'s homicidal ideation, even if his

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

12

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

1 homicidal ideations arose from a disability. *See* ECF No. 31 at 23:3-24:2, 25:1-26:18; *see also Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 366–71 (6th Cir.2007), abrogated on other grounds, *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir.2012) ("this court has repeatedly stated that an employer may legitimately fire an employee for conduct, even conduct that occurs as a result of a disability, if that conduct disqualifies the employee from his or her job.").

Second, R.W.'s position is wrong because his reliance on *R.W. v. Bd. of Regents of the Univ. Sys. of Georgia* is misplaced. In his motion, R.W. relies heavily upon *R.W. v. Bd. of Regents of the Univ. Sys. of Georgia*, 114 F. Supp. 3d 1260, 1267 (N.D. Ga. 2015) to argue that he received disparate treatment due to his disability under the ADA, Rehabilitation Act, and WLAD. While that case also involves claims arising under the ADA and Rehabilitation Act against a college, it has little bearing on this case. The direct threat posed by Wilkes in *Bd. of Regents* is vastly different than the undisputed nature of the threat posed by R.W. here. In *Bd. of Regents*, the student had a history of schizophrenia and presented to the college's healthcare providers with signs of unusual behavior that indicated he was suffering from hallucinations, but Wilkes did not express any threats against any other students or faculty. In fact, the college administrator responsible for adjudicating his case could only describe Wilkes' risk of harm by stating "[a]ll I can say generally is a risk of disruption." *Id.* at 1289. While the school placed various conditions upon Wilkes, including removing eligibility for campus

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

13

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

1  housing, Wilkes did not comply with any of the imposed conditions and remained
2  enrolled in classes and remained in campus housing throughout the semester. *Id*. at
3  1270. Moreover, "the parties agree[d] that Plaintiff has never been disciplined for
4  any sort of threatening or disruptive behavior, has never written or said anything
5  suggesting violence or a desire to harm someone, has never been involved in any
6  altercations, and has never been arrested or charged with a crime." *Id*. 1285.

7  Here, R.W. expressed an actual, direct threat against three specific faculty
8  members – a fact not present in *Bd. of Regents*. Further, R.W. reported specific
9  ways in which he envisioned killing his professors – a fact not present in *Bd. Of
10 Regents*. Even further, R.W. self-identified that the stress of the academic quarter
11 triggered his homicidal ideation – a fact not present in *Bd. of Regents*. R.W.'s
12 homicidal ideation actually disrupted the nursing program by causing one faculty
13 member to have a complete meltdown after she learned she was a target of R.W.'s
14 homicidal ideation – a fact not present in *Bd. of Regents*. These key differences
15 leave *Bd. of Regents* unhelpful to R.W.

16 Outside of *R.W. v. Bd. of Regents of the Univ. Sys. of Georgia*, 114 F.Supp.3d
17 1260, discussed above, the only other case that R.W. cites in his discussion of the
18 "direct threat" analysis is *Bragdon v. Abbott*, 524 U.S. 624, 649 (1998) for the
19 narrow proposition that a risk assessment must be based on medical or other
20 objective evidence. ECF No. 36 at 29. Here there is no question that Reagan
21 "thoroughly" reviewed R.W.'s medical records and interviewed his medical

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

14

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

providers. ECF No. 38 at 9:5-12; ECF No. 31 at 7:10-8:16. Significantly, none of R.W.'s medical providers went so far as to tell Reagan that R.W. would not pose a threat once he resumed classes and again encountered the stressful environment that he attributes to causing his homicidal ideation. ECF No. 31 at 7:17-8:16. Thus, the objective medical evidence considered by Reagan supported his assessment that action was warranted.

Third, R.W.'s position is wrong because he fails to account for cases like *Mayo v. PCC Structural, Inc.*, 2013 WL 3333055 (D. Or. 2013) that exclude actual threats of violence from the ADA's protections. In *Mayo*, the plaintiff (Mayo) communicated threats to several co-workers that he was going to bring a gun to work and shoot three of his supervisors. His co-workers communicated the threats to their supervisor, and Mayo was hospitalized for six days under a Police Officer Mental Hold after admitting to the threats and suicidal thoughts. *Mayo*, 2013 WL 3333055 at *1. Mayo had been treated for Major Depressive Disorder at the time, but he had not communicated this to his employer. *Id*. Eventually, Mayo was terminated. *Id*. at *2. Mayo brought a claim for disability discrimination under Oregon's disability discrimination statute, which is meant to be construed to the greatest extent possible in a manner consistent with the ADA, and the court "rel[ied] greatly on the ADA case law" due to the lack of cases analyzing Oregon's statute. *Id*. at *3. The *Mayo* court noted that there was not any Ninth Circuit case law "discussing situations in which an employee threatened violence against another

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

15

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

employee." *Id*. The court noted two lines of cases, wherein "[s]ome courts have simply said an employer can terminate an employee for making violent threats, even if the threats are caused by a disability, because the termination is for misconduct and not a pretext for discrimination," while other courts "rely on the text of the ADA to hold that unacceptable behavior threatening the safety of others makes the employee unqualified under the ADA, even if the behavior stems from a mental disability." *Id*. (internal citations omitted). Ultimately, the court held that it was "persuaded by the analysis that ADA protection is provided to qualified individuals with a disability, and violent threats disqualify an employee" and found that Mayo was not entitled to protection under the ADA. *Id*. at *4.

Ultimately, the Defendants in this case did not act because of R.W.'s claimed disabilities. Rather, the Defendants acted because R.W.'s expressions of homicidal ideation represented a threat to the College and actually created a hostile and intimidating environment for the involved faculty members. Therefore, his disability discrimination claims fail as a matter of law.

### III. CONCLUSION

For the reasons discussed above, the Court should deny R.W.'s motion for

/////

/////

/////

/////

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

16

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

summary judgement in its entirety.

DATED this 24th day of June, 2019.

ROBERT W. FERGUSON
Attorney General

s/Carl P. Warring
CARL P. WARRING
WSBA No. 27164
Assistant Attorney General
Attorney for Defendants
1116 W Riverside, Suite 100
Spokane, WA 99201
(509) 456-3123
carlw@atg.wa.gov

DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

17

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

**PROOF OF SERVICE**

I certify that I electronically filed the above document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

 Eric Eisinger    eeisinger@walkerheye.com

 Bret Uhrich    buhrich@walkerheye.com

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 24th day of June, 2019, at Spokane, Washington.

    ROBERT W. FERGUSON
    Attorney General

     s/Carl P. Warring
    CARL P. WARRING
    WSBA No. 27164
    Assistant Attorney General
    Attorney for Defendants
    1116 W Riverside, Suite 100
    Spokane, WA 99201
    (509) 456-3123
    carlw@atg.wa.gov