1  Eric B. Eisinger, WSBA #34293
2  Bret Uhrich, WSBA #45595
   Walker Heye Meehan & Eisinger, PLLC
3  1333 Columbia Park Trail, Ste 220
   Richland, WA 99352
4  Telephone: (509) 735-4444
5  Attorneys for Plaintiff

6

7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF WASHINGTON

10

11  R.W., individually and on behalf of his       Cause No. 4:18-cv-05089-RMP
    marital community,
12                                                 PLAINTIFF'S MEMORANDUM IN
                                                   OPPOSITION TO DEFENDANTS'
13                         Plaintiff,              MOTION FOR SUMMARY
                                                   JUDGMENT
14  v.

15  COLUMBIA BASIN COLLEGE, a
16  public institution of higher education,        Thomas S. Foley United States
    RALPH REAGAN, in his official and              Courthouse
17  individual capacities, LEE THORNTON,           920 W. Riverside Ave, Room 840
    in his official and individual capacities.     Spokane, WA 99201
18
19                         Defendants.

20

21

22

23

24

25

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC
ATTORNEYS

Nowhere in Defendants' 29-page, 6,451-word memorandum will the Court find the words "Abusive Conduct." R.W. was trespassed and sanctioned by Columbia Basin College ("CBC") not because he posed an imminent risk of harm to himself or others, but because he purportedly engaged in "Abusive Conduct." This is apparent from the very first letter sent by CBC on March 7, 2017:

> According to the Student Code of Conduct:
>
> > Any student will be subject to disciplinary action who, either as a principal or participator or by aiding or abetting, commits or attempts to commit any of the following which are hereby prohibited:
>
> > **WAC 132S-100-205, Abusive conduct.**
> > Physical and/or verbal abuse, threats, intimidation, harassment, online harassment, coercion, bullying, cyberbullying, retaliation, stalking, cyberstalking, and/or other conduct which threatens or endangers the health or safety of any person or which has the purpose or effect of creating a hostile or intimidating environment.
>
> It is the College's responsibility to provide a safe and secure environment in which individuals may learn and work; it is our expectation that students will conduct themselves in a responsible manner and respect the rights, privileges, and property of other members of the academic community including students and CBC employees. Based upon the information I have received thus far, it is reasonable that you be trespassed from both the Richland and Pasco CBC campuses, pending an investigation.

From the March 7, 2017 interim sanction letter to the June 12, 2017 final affirmance of misconduct and imposition of sanctions by President Lee Thornton, the basis for CBC's actions were that R.W. engaged in "Abusive Conduct" -- the "Abusive Conduct" of having concerning thoughts and disclosing those thoughts solely to his medical providers in seeking treatment.

In attempting to construct a narrative of justification, CBC cites to discrete comments and notations by R.W.'s medical providers which were interspersed among voluminous records from those same providers indicating that R.W. was

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

not a threat to others. CBC did not have these records when it first took action against R.W., nor did CBC ever obtain medical or other objective evidence that R.W. was a threat to anyone.

In 1972, the Supreme Court in *Healy v. James* announced that the First Amendment applies with equal force on college campuses as it does in the community at large. CBC, Ralph Reagan and Lee Thornton have not identified any exception to the First Amendment which would allow CBC to sanction R.W. for the "Abusive Conduct" of seeking help from his medical provider. Further, both Reagan and Thornton acknowledged that R.W. did not pose a direct threat to others, and yet still imposed sanctions against him as a disabled individual. As a result, the Court should deny the Defendants' motion for summary judgment and grant R.W.'s motion for summary judgment establishing liability on all claims.

## I. FACTS

**Background Facts.**

In February of 2017, R.W. was experiencing substantial stress after returning to the nursing program at CBC. *Eisinger Decl. at Exhibit AH, ECF No. 37-34, pgs. 5-6*; *Eisinger Decl. at Exhibit D, ECF No. 37-4, pg. 4.* This included an inability to sleep and an increase in seizure activity arising from R.W.'s epilepsy. *Eisinger Decl. at Exhibit X, ECF No. 37-24, pg. 5*; *Eisinger Decl. at Exhibit L, ECF No. 37-12, pg. 1.* During his enrollment, R.W. was a disabled person suffering from

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 3

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC
ATTORNEYS

chronic back pain, epilepsy, insomnia, anxiety and depression. *Eisinger Decl. at Exhibit X, ECF No. 37-24, pgs. 2; 5*; *Eisinger Decl. at Exhibit W, ECF No. 37-23, pg. 1*.

While experiencing some difficulty in his classes, R.W. was passing three of his four classes in the quarter and had received permission to turn in make-up assignments in the one credit, pass/fail class that he was not passing as of March 7, 2017. *Decl. Bret Uhrich, Exhibit C, ECF No. 40-3*; *Cooke Dep 65:8 to 66:1*.

On February 28, 2017, R.W. contacted his primary care physician, Dr. Michael Cabasug, because R.W. was having trouble with insomnia and was having violent thoughts regarding his instructors at CBC. *Eisinger Decl. at Exhibit L, ECF No. 37-12, pg. 1*; *Eisinger Decl. at Exhibit V, ECF No. 37-22, pg.* 10. From February 28, 2017 to March 6, 2017, R.W. attended classes at CBC with no issues and did not mention these thoughts to anyone at CBC or elsewhere. *Eisinger Decl. at Exhibit L, ECF No. 37-12, pg. 1*; *Eisinger Decl. at Exhibit H, ECF No. 37-8, Reagan Dep. 39:3 to 39:14*; *Reagan Dep. 156:7 to 156:16*; *Eisinger Decl. at Exhibit Y, ECF No. 37-25, pg. 1*; *Eisinger Decl. at Exhibit Z, ECF No. 37-26, pg. 3*.

On March 6, 2017, R.W. met with Dr. Cabasug, who recommended that R.W. meet with Lourdes as the Designated Crisis Responder for Benton and Franklin Counties. *Eisinger Decl., ECF No. 37-24, pg.* 5. Araceli Perez, a social

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 4

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC
ATTORNEYS

worker from Lourdes, met with R.W. at Dr. Cabasug's office. *Eisinger Supp. Decl., ECF No. 47-1, (hereafter Perez Dep. 6:4 to 7:1)*. Ms. Perez is not a physician, nurse, or similar health care provider. *Id.* After meeting with R.W., Ms. Perez requested that R.W. consider voluntarily admitting himself for evaluation. R.W. accepted the invitation and voluntarily admitted himself to Lourdes. *Perez Dep. at 49:10-50-10*; *R.W. Dep. at 83:23-84:18*.

At 5:55 p.m. on March 6, 2017, Ms. Perez contacted law enforcement for Franklin County to inform them of the R.W.'s comments. *Eisinger Supp. Decl. at Exhibit B, ECF No. 47-2, pg. 1*. According to Ms. Perez, it is Lourdes' policy to contact law enforcement when a person mentions homicidal ideations for the first time, regardless of the circumstances. *Perez Dep. 41:3 to 41:19; 50:11 to 50:*19. While this policy is illegal, *see* 45 CFR § 164.512(c)(i)(iii); 42 U.S.C. § 1320d-6(a)(3), recent Washington case law has incentivized medical providers to violate federal law to limit tort exposure. *See Volk v. DeMeerleer*, 187 Wn.2d 241, 263, 386 P.3d 254, 266 (2016).

At 5:30 a.m. on the morning of March 7, 2017, R.W. met with Lourdes counselor Jia Wang after sleeping for approximately seven hours the night before. *Eisinger Supp. Decl. at Exhibit C, ECF No. 47-3, pg. 1*. By this time, R.W. was no longer reporting any homicidal ideations and was not exhibiting any aggressive behaviors. *Id.* Even after learning that afternoon that he was no longer allowed on

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 5

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

campus and believed he was being dismissed from the nursing program, R.W. remained calm and did not experience any ideations. *Id. at pgs. 3-4.* On March 8, 2017, R.W. contacted Ralph Reagan, the Assistant Dean for Student Conduct and Activities, asking to appeal the trespass notification that he had received the previous day. *Eisinger Supp. Decl. at Exhibit D, ECF No. 47-4, pg. 1.*

On March 9, 2017, R.W. requested that he be discharged from Lourdes because he had slept poorly the two previous nights. *Eisinger Supp. Decl. at Exhibit C, ECF No. 47-3, pg. 7.* At this time, R.W. had been evaluated by Lourdes nursing staff which had concluded that he did not present a threat of harm to others. *Eisinger Supp. Decl at Exhibit B, ECF No. 47-2, pgs. 6-7.* However, the Transitions unit wanted R.W. to stay another night for the purpose of monitoring his sleep. *Eisinger Supp. Decl. at Exhibit C, ECF No. 47-3, pg. 9.* R.W. agreed and was evaluated again on March 10, 2017 as part of his discharge, which once again concluded that R.W. was not a threat to others and did not meet even the base criteria for initial detention. *Eisinger Supp. Decl. at Exhibit B, ECF No. 47-2, pg. 8-9*; *Eisinger Supp. Decl. at Exhibit C, ECF No. 47-3, pg. 12.* The criteria for initial detention requires only probable cause that a person presents a likelihood of serious harm to others. RCW 71.05.150(1);(2)(a)(i).

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC
ATTORNEYS

**What Information CBC Knew Regarding R.W. And When It Knew It.**

On March 7, 2017, Reagan issued a letter trespassing R.W. from CBC because R.W. engaged in "Abusive Conduct." *Eisinger Decl.at Exhibit I, ECF No. 37-9, pg. 1.* "Abusive Conduct" is defined in WAC § 132S-100-205 as follows:

> Abusive conduct. Physical and/or verbal abuse, threats, intimidation, harassment, online harassment, coercion, bullying, cyberbullying, retaliation, stalking, cyberstalking, and/or other conduct which threatens or endangers the health or safety of any person or which has the purpose or effect of creating a hostile or intimidating environment.

*Id*; *WAC § 132S-100-205.* According to Reagan, the only information he had at the time he issued the trespass was an e-mail forwarded by CBC's security advisor, Levi Glatt, and a phone call from Glatt telling Reagan to expel R.W. from school. *Eisinger Decl., ECF No. 37-10, pgs. 9-12; Reagan Dep., ECF No. 37-8, 23:20 to 24:12.* The e-mail forwarded from Glatt stated as follows:

> Levi,
> At approximately 0800 hours 3/7/17, I was contacted by Ofc. K. Erickson of PPD with the following information.
> PPD was contacted earlier today by Crisis Response about CBC student [R.W.]. [R.W.] admitted to having homicidal ideations toward staff at CBC, talking about lighting offices on fire and attacking people with saws. The instructors specifically mentioned are Kim [T]ucker Valerie Topham and Alma Martinez.
>
> [R.W.] is currently at Carondelet getting help and may not be an immediate threat.

*Id*. Reagan apparently (and incorrectly) believed that Lourdes had made an evaluation of the seriousness of these ideations in contacting law enforcement.

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

*Eisinger Supp. Decl. at Exhibit F, ECF No. 47-6, (hereafter Reagan Dep.) 30:12 to 31:2; Perez Dep. 41:3 to 41:19; 50:11 to 50:19.*

After March 7, 2017, Reagan began accumulating additional information showing that R.W. was not a threat to others. On March 10, 2017, R.W. provided a further statement to Reagan describing the situation:

From:          R    W    <              >
Sent:          Friday, March 10, 2017 3:17 PM
To:            Reagan, Ralph
Subject:       Re: Student Appeals Board

Mr. Reagan,

I apologize for the delay, I was in a form of treatment where access to the internet was unavailable for a certain period of time.

You were originally notified of my condition, but only to the extent required by law. I would like to plead my case by filling in the blanks.

I originally had some violent thoughts over a week ago, but never acted on them, instead I sought out treatment. After speaking with my primary care physician last Monday, I met with a crisis advisor, and spent every day since then in treatment at Lourdes. I was released today after it was determined by the staff at Lourdes and the crisis advisor that I was not a threat to myself or others. I have begun a medical regimen, including medication and outpatient counseling. The nurse practitioner at Lourdes that cared for me has offered to advocate on my behalf, and so has my Primary Care Physician. Please let me know if any documentation would help my case, and I will attempt to get it Monday for you.

I would very much like the opportunity to complete my degree with the nursing program, especially since I am close to finishing. I have developed new coping strategies to help with the stress I experienced, and I also have developed a care plan with the team of medical professionals in the unfortunate case that these feelings are ever to arise again.

Thank you very much,
R    W

Reagan learned that the information set forth in R.W.'s letter was true during the course of his investigation. *Reagan Dep. 39:3 to 42:5.* More importantly, Reagan did not have any evidence contrary to these statements which would establish that R.W. was a threat of harm to others. *Id; Reagan Dep., ECF No. 37-8, 175:15 to 175:19.*

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 8

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC
ATTORNEYS

On March 22, 2017, Reagan met with R.W. and requested that R.W. grant Reagan access to his medical records from Lourdes and Dr. Cabasug and allow Reagan to speak with the providers. *Eisinger Supp. Decl at Exhibit G., ECF No. 47-7, pg. 2*. R.W. provided his medical records from Dr. Cabasug on April 4, 2017 and the Lourdes documents on April 14, 2017. *Id. at pgs. 2-3*. This was the first time anyone from CBC was able to review the documents from Lourdes. *Id*; *Reagan Dep., ECF No. 35-4, 62:24-63:14*.

**Finding of Misconduct and Imposition of Sanctions.**

On April 19, 2017, CBC affirmed its interim decision to trespass R.W. from campus for Abusive Conduct with the modification that R.W. would be allowed on the Pasco campus, but not on the Richland campus where the nursing program classes take place. *Eisinger Decl. at Exhibit N, ECF No. 37-15, pg. 1*; *Reagan Dep., ECF No. 37-8, 59:11 to 59:15*. On April 20, 2017, CBC found R.W. responsible for engaging in "Abusive Conduct" in violation of the Student Code of Conduct. *Eisinger Decl. at Exhibit P, ECF No. 37-16, pgs. 1-2*.

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC
ATTORNEYS

Thank you for meeting with me on March 22nd, 2017 to discuss your alleged violations of the policies outlined in Columbia Basin College's (CBC) *Student Code of Conduct.* After meeting with you, I have found you responsible for violating our policy on Abusive Conduct (WAC 132S-100-205).

> **WAC 132S-100-205 Abusive conduct.**
> Physical and/or verbal abuse, threats, intimidation, harassment, online harassment, coercion, bullying, cyberbullying, retaliation, stalking, cyberstalking, and/or other conduct which threatens or endangers the health or safety of any person or which has the purpose or effect of creating a hostile or intimidating environment.

As per our conversation at the meeting, you explained that you had homicidal thoughts due to stress and lack of sleep with the possibility of medication being a factor. When you had homicidal thoughts you immediately contacted your primary care doctor because you were concerned. Your doctor recommended that you go to Crisis Response and you were voluntarily admitted to Lourdes. I understand that the result of your behavior was not to create a hostile or intimidating environment, but it had the same effect. Therefore you are found responsible for violating our policy on Abusive Conduct. I reviewed the materials you provided and after my investigation and thoughtful consideration of everything that occurred, the sanctions are as follows:

*Id.* Based on the finding of misconduct, CBC imposed sanctions against R.W., including the continuing imposition of his trespass, conditioning his future re-enrollment at the discretion of CBC, and granting CBC continuing access to his medical records. *Id.* As a result of the sanctions and trespass, R.W. was disenrolled from CBC. *Eisinger Decl. at Exhibit F, ECF No. 37-6, pg. 1.* R.W.'s financial aid was cancelled, and he was rendered ineligible to obtain further financial aid until he completed an additional quarter. *Eisinger Decl. at Exhibit B, ECF No. 37-2, pgs. 1-2.* Additionally, the disenrollment permanently rendered R.W. ineligible to rejoin the nursing program at CBC absent special dispensation from the University's President. *Decl. Mary Hoerner, ECF No. 34, pg. 2.*

When asked to describe how R.W.'s disclosure of violent thoughts to his physician constituted Abusive Conduct, Reagan identified the following:

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

Abusive conduct. Physical and/or verbal abuse, threats, intimidation, harassment, online harassment, coercion, bullying, cyberbullying, retaliation, stalking, cyberstalking, and/or ==other conduct== ~~which threatens or endangers the health or safety of any person or~~ ==which has the~~ ~~purpose or~~ ==effect of creating a hostile or intimidating environment==.

*Eisinger Supp. Decl. at Exhibit H, ECF No. 47-8; Reagan Dep. 152:15 to 152:20.*

According to Reagan, the "conduct" at issue were the thoughts in R.W.'s head. *Reagan Dep. 153:25 to 154:10.* Both Reagan and President Lee Thornton affirmed that R.W. was not a direct threat to the health and safety of others at the time the sanctions were issued. *Reagan Dep., ECF No. 37-8, 175:15 to 175:21; Eisinger Supp. Decl. at Exhibit I, ECF No. 47-9 (hereafter Thornton Dep.) 40:17 to 41:19; 42:3 to 42:15.*

# I.     ARGUMENT

The Court should deny the Defendants' motion for summary judgment and grant R.W.'s motion for partial summary judgment. In seeking summary judgment in this matter, the Defendants simply cannot face the fact that they punished a disabled student for his private conversation with his physician in seeking medical treatment. It is difficult to see how the Defendants can reconcile their position with the expansive case law preventing colleges from attempting to punish students for speech protected by the First Amendment. It is also difficult to determine how CBC could even subjectively believe R.W. posed a direct threat to the student body when both the decision makers at CBC, together with R.W.'s medical providers,

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 11

Abusive conduct. Physical and/or verbal abuse, threats, intimidation, harassment, online harassment, coercion, bullying, cyberbullying, retaliation, stalking, cyberstalking, and/or ==other conduct== ~~which threatens or endangers the health or safety of any person or~~ ==which has the~~ ~~purpose or~~ ==effect of creating a hostile or intimidating environment==.

*Eisinger Supp. Decl. at Exhibit H, ECF No. 47-8; Reagan Dep. 152:15 to 152:20.*

According to Reagan, the "conduct" at issue were the thoughts in R.W.'s head. *Reagan Dep. 153:25 to 154:10.* Both Reagan and President Lee Thornton affirmed that R.W. was not a direct threat to the health and safety of others at the time the sanctions were issued. *Reagan Dep., ECF No. 37-8, 175:15 to 175:21; Eisinger Supp. Decl. at Exhibit I, ECF No. 47-9 (hereafter Thornton Dep.) 40:17 to 41:19; 42:3 to 42:15.*

# I.     ARGUMENT

The Court should deny the Defendants' motion for summary judgment and grant R.W.'s motion for partial summary judgment. In seeking summary judgment in this matter, the Defendants simply cannot face the fact that they punished a disabled student for his private conversation with his physician in seeking medical treatment. It is difficult to see how the Defendants can reconcile their position with the expansive case law preventing colleges from attempting to punish students for speech protected by the First Amendment. It is also difficult to determine how CBC could even subjectively believe R.W. posed a direct threat to the student body when both the decision makers at CBC, together with R.W.'s medical providers,

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 11

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

ATTORNEYS

concluded that R.W. does not pose a threat of harm to others. As a result, the Court should deny Defendants' motion for summary judgment and grant R.W.'s motion for summary judgment.

## A. *Tinker*'s "Substantial Disruption" Test Does Not Apply To Colleges.

The Court should deny the Defendants' motion for summary judgment because the undisputed facts show that Reagan and Thornton violated R.W.'s rights in violation of 42 U.S.C. § 1983. In moving for summary judgment in this matter, the Defendants assert that *Tinker v. Des Moines County School District* is the controlling framework for CBC's decision to sanction R.W. for "Abusive Conduct." 393 U.S. 503, 506 (1969). In doing so, the Defendants ignore the repeated refusal of the Ninth Circuit and the Supreme Court itself to extend the "Student Speech Doctrine" to the university setting. *Oyama v. Univ. of Hawaii*, 813 F.3d 850, 863 (9th Cir. 2015); *Hazelwood Sch. Dist. v. Kuhlmeier*, 484 U.S. 260, 273 n. 7 (1988). This reluctance is unsurprising considering that *Tinker* was decided in 1969 and a mere three years later in *Healy v. James*, the Court stated "the precedents of [the Supreme Court] leave no room for the view that, because of the acknowledged need for order, First Amendment protections should apply with less force on college campuses than in the community at large." *Healy*, 408 U.S. at 180.

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 12

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

The first attempt to extend *Tinker* to the university setting was *Brown v. Li*, 308 F.3d 939, 941 (9th Cir. 2002). In *Brown*, student Christopher Brown presented a master's thesis, The Morphology of Calcium Carbonate: Factors Affecting Crystal Shape, which was approved by the thesis committee. *Id*. at 943. After approval, Brown added a "disacknowledgements" section in which he offered a "special [expletive] you to the following degenerates for being an ever-present hindrance during my graduate career," listing several school officials. *Id*. Brown then attempted to file the thesis with the library as a prerequisite to earning his degree. *Id*. Brown refused to remove the disacknowledgements section and instead brought an action under 42 U.S.C. § 1983 for violation of his First Amendment Rights and Due Process Rights. *Id*. at 946.

On appeal, the Ninth Circuit affirmed the dismissal of Brown's claims. While Judge Susan Graber concluded that curricular speech in a university is subject to the student speech doctrine, none of the other panel members agreed with this approach. *Id*. at 949; 955. Judge Warren Ferguson concurred in judgment, rejecting Judge Graber's approach and concluded that the university's conduct was appropriate in light of Brown's attempt to deceive the university by appending the "disacknowledgements" section after he received approval, which did not implicate the First Amendment. *Id*. at 955 (J. Ferguson, concurring). Judge Stephen Reinhardt issued a decision concurring in part and dissenting in part

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 13

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

ATTORNEYS

due to the "erroneous legal rule advocated by one of my colleagues." *Id*. at 956 (J. Reinhardt, concurring in part and dissenting in part). Judge Reinhardt was particularly concerned that applying the student speech doctrine "would import into the college and graduate academic world the limitations on speech that the Supreme Court has held appropriate for use in the case of emotionally less mature high school students." *Id*. at 957.

The application of *Tinker* and the Student Speech Doctrine was recently revisited in *Oyama v. University of Hawaii*, and the Court once again declined to apply the doctrine in the university setting. 813 F.3d 850, 861 (9th Cir. 2015). In *Oyama*, student Mark Oyama was pursuing his post-degree teaching certification through the University of Hawaii. *Id*. at 855. As part of the certification program, Oyama met with his instructor after he submitted a strange response to an assignment in regard to online child predation and said it would be fine for a 12 year old student to have a consensual relationship with a teacher. *Id*. at 856. Oyama further indicated that he did not believe teachers should be required to teach students on a wide-range of performance, particularly disabled students who might require accommodations. *Id*. at 857. The University denied Oyama's application to be placed as a student teacher citing, among other things, Oyama's understanding of sexual relationships between adults and minors, as well as between teachers and students, as contrary to the "legal and ethical guidelines

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

imposed by the State." *Id*. at 858. After the internal appeals were concluded, Oyama brought suit alleging violations of his rights under 42 U.S.C. § 1983. *Id*. at 859.

On appeal, the Court began by reviewing the First Amendment claim to determine if the Student Speech Doctrine was applicable. *Id*. at 861. The Court reviewed the evolution from *Tinker* to *Hazelwood* and *Morse v. Frederick*, 551 U.S. 393 (2007). However, after reviewing the cases, the Court noted that "[w]hile aspects of Student Speech Doctrine are relevant here, the Supreme Court has yet to extend this doctrine to the public university setting." *Id*. at 862 (*citing Hazelwood*, 484 U.S. at 273). "In the twenty-seven years since *Hazelwood*, we too have declined to apply its deferential standard in the university setting." *Oyama*, 813 F.3d at 862. The Court recognized that the rationales for limiting speech in secondary education are simply inapplicable to universities where the students are adults. *Id*. at 863. As a result, the Court declined to apply the Student Speech Doctrine to Oyama's claims. *Id*. at 864.

In light of the *Healy*'s command that there are no special exceptions to the First Amendment for colleges and universities, it is easy to understand why the Ninth Circuit has refused to apply the "substantial disruption" test to the college campus, especially outside of the classroom. Indeed, *Healy* itself was a case where the university wished to bar the Students for a Democratic Society because the

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 15

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

ATTORNEYS

university feared it would be a "disruptive force on campus." *Healy*, 408 U.S. at 191. Without a special exception to the First Amendment, CBC would have to justify its conduct under the traditional limits to speech: defamation, fighting words, true threats, etc. There is no serious dispute that R.W. seeking medical advice and treatment from his physician does not fall into any of these exceptions. As a result, the Court should deny the Defendants' motion for summary judgment.

**B.** **Even If The Court Were To Conclude The Tinker "Substantial Disruption" Test Applies, CBC, Reagan And Thornton Still Violated R.W.'s Rights Under The First Amendment.**

Even if the Court concludes that *Tinker* applies, R.W. is still entitled to summary judgment because CBC violated his rights by concluding his "conduct" of disclosing violent thoughts to his doctor was "abusive" and sanctionable. In support of its position, CBC relies primarily on *McNeil v. Sherwood School District* and *Wynar v. Douglas County School District*. In *McNeil*[1], a minor

_____

[1] Additionally, the Court's decision in *McNeil* post-dates the conduct of CBC in this case. The Defendants cannot rely on *McNeil* as basis for creating ambiguity on whether the rights of R.W. were clearly established in March and April of 2017. *See Bryan v. United States*, 913 F.3d 356, 363 (3d Cir. 2019) (decision made two days prior to conduct did not put officers on notice of the unlawfulness of their actions).

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

student's mother found a "hit list" surreptitiously in her son's personal journal. 918 F.3d 700, 703 (9th Cir. 2019). The journal contained other indications that the child was experiencing serious mental health issues, such as writing "I am God" and illustrating graphic depictions of violence. *Id*. at 704. The student's mother brought the journal to her therapist who informed the police. *Id*. The police then went to the home and confiscated the minor's rifle and ammunition and informed the school. *Id*. The school told the other parents in the school which set off a wave of panic, with parents removing their children from the school. *Id*. at 705. The student did not undergo any medical or psychological evaluation to determine if he was a threat of harm to others. *Id*. The school expelled the student following his initial suspension. *Id*. at 706.

In determining whether the student could be punished for this speech, the Court adopted a three-part test based on the totality of the circumstances:

> We now clarify that courts considering whether a school district may constitutionally regulate off-campus speech must determine, based on the totality of the circumstances, whether the speech bears a sufficient nexus to the school. This test is flexible and fact-specific, but the relevant considerations will include (1) the degree and likelihood of harm to the school caused or augured by the speech, (2) whether it was reasonably foreseeable that the speech would reach and impact the school, and (3) the relation between the content and context of the speech and the school…

*Id*. at 707-08 (internal citations omitted). In applying the test, the court concluded that the "hit list," in light of the other information contained therein along with the

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 17

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

student's access to guns and lack of evaluation from medical professionals, created a plausible likelihood of harm. *Id.* at 709. Next, because of an Oregon statute requiring parental notifications of such events, there was strong likelihood the speech would impact the school and result in substantial disruptions in-fact. *Id.* Finally, the Court concluded that the speech had a significant nexus to the school.

As applied to the case at hand, *McNeil* is wholly inapposite in the present matter. First and foremost, CBC did not purport to expel R.W. on the basis that he presented a likelihood of disruption to campus. *Eisinger Decl. at Exhibit P, ECF No. 37-16, pgs. 1*-2. CBC found R.W. responsible for committing "Abusive Conduct" which had the effect of creating a hostile environment. *Id.* However, R.W. did not engage in anything that could be considered conduct, let alone conduct that was harassing to the staff or other students at CBC. *Reagan Dep. 153:25 to 154:10*. The sole action at issue was R.W. disclosing violent thoughts to his doctor and his doctor alone. There is no evidence that this was likely to be transmitted to CBC. Indeed, the policy of Lourdes which led to the disclosure is unlawful. *See* 45 CFR § 164.512(c)(i)(iii).

Further, there was no basis for CBC to conclude that R.W. posed a threat of harm to the school at any time. By the time CBC became aware of the R.W.'s conversation with Dr. Cabasug, they knew he was in treatment and "may not be an immediate threat." *Eisinger Decl., ECF No. 37-10, pgs. 9-12; Reagan Dep., ECF*

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

*No. 37-8, 23:20 to 24:12.*  More importantly, CBC never uncovered any evidence to establish that R.W. was a direct threat, and the decision makers at CBC belatedly came to this same conclusion.  *Reagan Dep. 39:3 to 42:5; 175:15 to 175:19; Thornton Dep. 40:17 to 41:19; 42:3 to 42:15.*  Yet, those same decision makers chose to sanction R.W. regardless.  *Eisinger Decl. at Exhibit P, ECF No. 37-16, pgs. 1-2; Eisinger Decl. at Exhibit T, ECF No. 37-20, pgs. 1-4.*  The only thing CBC had to support its conduct was the unfounded fears and overreaction of the college's administrators.  This is not a basis for violating R.W.'s First Amendment rights.  As a result, the Court should deny the Defendants' motion for summary judgment and conclude that CBC, Reagan and Thornton violated R.W.'s rights under the First Amendment.

## C.   Defendants Are Not Entitled To Qualified Immunity.

The Court should further conclude that the rights of R.W. were clearly established at the time CBC sanctioned him for the "Abusive Conduct" of disclosing violent thoughts to his physician.  Nothing mandates that district courts construe the constitutional right before them as narrowly as possible, as the Defendants invite the Court to do here.  "It is not necessary, of course, that 'the action in question has previously been held unlawful.'"  *Ziglar v. Abassi*, 137 S. Ct. 1843, 1867 (2017) (*quoting Anderson v. Creighton*, 483 U.S. 635, 640 (1987));

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 19

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

*see also Hope v. Pelzer*, 536 U.S. 730, 741 (2002) ("officials can still be on notice that their conduct violates established law even in novel factual circumstances.").

> Qualified immunity analysis involves more than "a scavenger hunt for prior cases with precisely the same facts. The more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation."

*Perea v. Baca*, 817 F.3d 1198, 1204 (10th Cir. 2016) (internal citations omitted) (*quoting Casey v. City of Fed. Heights*, 509 F.3d 1278, 1284 (10th Cir. 2007)) *accord Sharp v. Cty. of Orange*, 871 F.3d 901, 911 (9th Cir. 2017)).

In this case, the Defendants are on clear notice that their conduct was illegal, regardless of whether the Court concludes that the *Tinker* substantial disruption test applies. First, if the Court looks at what CBC actually did: applied a Student Code of Conduct to student speech by attempting to characterize the speech as abusive, the decisions finding such actions unconstitutional are legion. *See McCauley v. Univ. of the V.I.*, 618 F.3d 232 (3d Cir. 2010); *DeJohn v. Temple Univ.*, 537 F.3d 301 (3d Cir. 2008); *Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177 (6th Cir. 1995); *Smith v. Tarrant Cty. Coll. Dist.*, 694 F. Supp. 2d 610 (N.D. Tex. 2010); *Coll. Republicans at S.F. St. Univ. v. Reed*, 523 F. Supp. 2d 1005 (N.D. Cal. 2007); *Roberts v. Haraga*n, 346 F. Supp. 2d 853 (N.D. Tex. 2004); *Bair v. Shippensburg Univ.*, 280 F. Supp. 2d 357 (M.D. Pa. 2003); *UWM Post, Inc. v. Bd. of Regents of the Univ. of Wis.*, 774 F. Supp. 1163 (E.D. Wisc. 1991); *Doe v. Univ. of Mich.*, 721

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

ATTORNEYS

F. Supp. 852 (E.D. Mich. 1989). There is a reason that the Defendants seek to avoid the proper framing of their conduct in this matter -- there is simply no case law that they could point to which supports their position.

Second, even if the Court concluded that *Tinker* and the Student Speech Doctrine was applicable, *LaVine v. Blaine School District*, 257 F.3d 981, 983-84 (9th Cir. 2001) put the Defendants on notice that R.W. had a clearly established right under the First Amendment not to be subject to adverse actions, let alone actual punishment, unless CBC had substantially more information indicating that R.W. posed a direct threat to campus. Moreover, the admissions of Reagan and Thornton give lie to the substantial disruption argument. Both Reagan and Thornton admitted that they subjectively did not believe R.W. constituted a direct threat to the students or teachers and yet they proceeded to sanction him regardless. *Reagan Dep. 175:15 to 175:19; Thornton Dep. 40:17 to 41:19; 42:3 to 42:15.* What CBC could have done, had it reasonably concluded a student posed a threat, is wholly irrelevant when dealing with the Defendants here who concluded R.W. did not pose a threat but decided to punish him anyway. In light of the clearly established case law, the Court should conclude as a matter of law that the Defendants are not entitled to qualified immunity.

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC
ATTORNEYS

**D.    R.W. Is Entitled To Prospective Injunctive Relief Against The Defendants Removing The Restrictions Imposed Against Him In Violation Of The First Amendment.**

The Court should further deny the Defendants' motion for summary judgment because R.W. is entitled to injunctive relief based on the Defendants' violation of his First Amendment rights.  Claims under § 1983 are limited by the scope of the Eleventh Amendment.  In *Will v. Michigan Dep't of State Police*, the Supreme Court held that "States or governmental entities that are considered 'arms of the State' for Eleventh Amendment purposes" are not "persons" under § 1983.  *Will*, 491 U.S. 58 (1989).  Moreover, *Will* clarified that a suit against a state official in his official capacity is no different from a suit against the State itself. *Id.* at 71.  Therefore, state officials sued in their official capacities are not "persons" within the meaning of § 1983.  However, there is one exception to this general rule: When sued for prospective injunctive relief, a state official in his official capacity is considered a "person" for § 1983 purposes. *Id.* at 71 n. 10.  In what has become known as part of the *Ex parte Young* doctrine, *see Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), a suit for prospective injunctive relief provides a narrow, but well-established, exception to Eleventh Amendment immunity.  *Doe v. Lawrence Livermore Nat. Lab.*, 131 F.3d 836, 839 (9th Cir. 1997).

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC
ATTORNEYS

As discussed *supra*, CBC, Reagan and Thornton violated R.W.'s First Amendment rights by sanctioning R.W. for speech directed to his treating physician in the context of seeking treatment. R.W. has and continues to suffer from the sanctions imposed by the Defendants: trespass from campus, *Eisinger Decl. at Exhibit P, ECF No. 37-16, pgs. 1-2*; 0.00 GPA for 12 credits in the Winter 2017 Quarter which prevents him from procuring financial aid, *Eisinger Decl. at Exhibit D, ECF No. 37-4, pg. 4 and Eisinger Decl. at Exhibit B, ECF No. 37-2, pgs. 1-2*; permanent ineligibility for re-entry into the nursing program without special dispensation from CBC's president, *Decl. Mary Hoerner, ECF No. 34, pg. 2*; and required disclosure and access to his medical providers as a condition of future re-enrollment at the school in any fashion. *Eisinger Decl. at Exhibit P, ECF No. 37-16, pgs. 1-2*. As each of these sanctions remain ongoing and are limited to prospective injunctive relief, the Court should deny the Defendants' motion for summary judgment.

**E.    The Could Should Deny Defendants' Motion For Summary Judgment On The ADA, RHA And WLAD Claims Because There Was No Objective Medical Evidence R.W. Posed A Direct Threat And The Defendants Agreed Subjectively That R.W. Did Not Pose A Direct Threat.**

The Court should deny the motion for summary judgment because the evidence establishes that the Defendants violated R.W.'s rights under the ADA, RHA and WLAD. As set forth in R.W.'s motion for partial summary judgment

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

and as is effectively acknowledged in the Defendants' motion, there is no serious dispute that the Defendants have treated R.W. differently based on his disability. Other students are not trespassed from campus. Other students are not required to grant the school access to their medical records. Other students are allowed to complete their course assignments. The decision makers attributed R.W.'s actions to his disability. *Reagan Dep. 175:5 to 175:14*. Taking an action against a disabled person for symptoms of their disabilities is the same as taking action against them based on their disabilities. *See Humphrey v. Memorial Hospitals Ass'n*, 239 F.3d 1128, 1139–40 (9th Cir. 2001); *see also Gambini v. Total Renal Care, Inc.*, 486 F.3d 1087, 1093 (9th Cir. 2007)

The only possible defense available to CBC is to argue that R.W. constituted (and as the sanctions are ongoing, continues to constitute) a direct threat to the school. 28 C.F.R. § 35.139(b). The "belief that a significant risk existed, even if maintained in good faith, does not relieve [a defendant] of liability." *Bragdon v. Abbott*, 524 U.S. 624, 649 (1998). In this matter, there is no medical or otherwise objective evidence which would allow CBC to have concluded on April 20, 2017 that R.W. posed or continues to pose a direct threat. R.W. had been evaluated by Lourdes and his treating physician as not constituting a threat of harm to others. Not only has CBC failed to present any evidence that R.W. constitutes a direct threat, even Reagan and Thornton, as the decision makers for CBC, acknowledged

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 24

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER

that they _subjectively_ believed he was not a direct threat. Without the safe harbor of the direct threat exception, CBC's liability under the ADA, RHA and WLAD is conclusively established. As a result, the Court should deny the Defendants' motion for summary judgment and grant R.W.'s motion for summary judgment.

## II. CONCLUSION

The Court should deny the Defendants' motion for summary judgment and grant R.W.'s motion for partial summary judgment. There is no better illustration of the appropriateness of this outcome than the Defendants' refusal to address or defend the actual conduct by CBC, Reagan and Thornton. Summary judgment is appropriate when the facts are taken in the light most favorable to the non-moving party. Instead, the Defendants seek to avoid the undisputed fact that CBC sanctioned R.W. for what it identified as the "Abusive Conduct" of R.W. seeking help from medical professionals. If the Defendants were confident in the legality of those actions, they would proudly display these actions and would not feel the need to rely on a post-hoc justifications divorced from the facts and the actual findings made by CBC and discipline imposed by CBC on R.W. CBC is not willing to do so because the undisputed facts conclusively establish that CBC violated R.W.'s rights under the First Amendment and discriminated against him as a disabled individual. As a result, the Court should deny the Defendants'

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 25

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC

motion for summary judgment and grant R.W.'s motion for partial summary judgment establishing liability.

DATED this 24th day of June, 2019.

s/Bret Uhrich
Eric B. Eisinger, WSBA #34293
Bret Uhrich, WSBA #45595
Attorneys for Plaintiffs
Walker Heye Meehan & Eisinger, PLLC
1333 Columbia Park Trail, Ste 220
Richland, WA 99352
Telephone: (509) 735-4444
Fax: (509) 735-7140
E-mail: eeisinger@walkerheye.com
        buhrich@walkerheye.com

PLAINTIFF'S MEMORANDUM IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT - 26

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

WALKER
HEYE
MEEHAN
EISINGER PLLC
ATTORNEYS

CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of June 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Carl P. Warring: carlw@atg.wa.gov


*s/ Bret Uhrich*
Bret Uhrich

1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P (509) 735-4444
F (509) 735-7140

