Carl Warring
Assistant Attorney General
1116 West Riverside Avenue, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

Honorable Rosanna M. Peterson

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| R.W., individually and on behalf of his marital community,<br><br>Plaintiff,<br><br>v.<br><br>COLUMBIA BASIN COLLEGE, a public institution of higher education, RALPH REAGAN, in his official and individual capacities, LEE THORNTON, in his official and individual capacities,<br><br>Defendants. | NO. 4:18-05089-RMP<br><br>DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |

## I.   INTRODUCTION

Plaintiff R.W. has consistently attempted to minimize his actions in an effort to convince the Court that the College violated his rights. At various points in his response to the Defendants' motion for summary judgment, R.W. dissembles that he was sanctioned for "seeking help from his medical provider" (ECF No. 45 at 3), that the "conduct" R.W. was sanctioned for "were the thoughts in R.W.'s head" (ECF No. 45 at 11), and that the Defendants "punished a disabled

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

1

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

student for his private conversation with his physician in seeking medical treatment." (ECF No. 45 at 11). However, the unvarnished truth is the College sanctioned R.W. because it received a report from the Pasco Police Department that R.W. expressed he intended to kill three specific instructors by attacking them with saws and lighting their offices on fire.

The College was not concerned with the mechanism by which it received the report, nor was the College concerned about R.W.'s claimed disabilities (in fact, the College was not even aware that R.W. suffered from depression at the time). The College's only concern was the safety of its faculty and students, and it took action solely based upon R.W.'s homicidal ideations. The law and common sense mandate that the College was entitled to take action in response to R.W.'s homicidal ideations.

## II. ARGUMENT

### A. The Complete Record Blatantly Contradicts R.W.'s Version of the Facts.

R.W.'s version of events laid out in his response blatantly contradicts the factual record and the Court must reject his telling of events. *Scott v. Harris*, 550 U.S. 372, 380 (2007). A few examples are instructive of R.W.'s efforts to minimize his involvement and make unsupported claims.

For instance, R.W. makes the obviously false assertion that "CBC has not offered to allow R.W. to return to the nursing program at CBC." ECF No. 46 at

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

2

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

15, ¶ 36. R.W. then cites to a letter sent from Ralph Reagan to R.W., wherein Reagan specifically mentions that he has the ability to re-enroll in classes. ECF No. 37-16 at 1. R.W. then concedes that the College has "only offered him the option to apply for re-enrollment." ECF No. 46 at 15, ¶ 36. As Reagan explained in his deposition, R.W. had not signed up for any classes after the winter quarter, so he would need to "re-enroll" by signing up for classes in the nursing program and could do so without needing any further approval from the nursing program. ECF No. 35-4 at 112:9 – 113:9. R.W. remained a student at the College. ECF No. 35-4 at 112:16 – 19. In fact, Reagan specifically rebuffed the notion that R.W. could only re-enroll in the college generally but not the nursing program specifically. ECF No. 35-4 at 112:23 – 113:6. R.W. also acknowledged that he never reached out to Reagan to discuss re-enrolling in classes. ECF No. 35-2 at 111:11 – 15. Ultimately, the evidence clearly shows that R.W.'s version of his status with the College is not correct.

At multiple points within R.W.'s response, he asserts that Ralph Reagan and CBC President Lee Thornton did not view R.W. as a threat to others. *See e.g.*, ECF No. 45 at 11; 18; 21. This is a mischaracterization of Reagan and Thornton's conclusions about R.W. First, Reagan unequivocally testified that when he made the initial decision to trespass R.W. from campus, he found R.W. to be a threat to others. ECF No. 35-4 at 186:2 – 6. Second, Thornton has already submitted a declaration clarifying that when he testified that he did not consider

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

3

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

R.W. to be a direct threat at specific points, he meant that he did not think acts of violence were directly imminent at that specific point in time. ECF No. 33 at ¶ 4. However, Thornton "did continue to consider R.W. to present a potential risk of harm if he were to return to the College's nursing program," which is why he "found the conditions imposed for him to return to the nursing program to be appropriate." *Id*. at ¶ 5. When R.W. claims that Reagan and Thornton did not view R.W. as a threat, he is deliberately presenting only a sliver of the truth. Reagan and Thornton viewed R.W. as no longer being a threat *if* he complied with the reasonable conditions imposed upon him when he returned to the College—the same college environment that he viewed as stressful and contributing to his homicidal ideations. ECF No. 35-2 at 68:15 – 20; 69:25 – 70:4; 71:9 – 15.

**B. The Reasoning Applied in *Tinker* Applies for Threats of Violence Made in the College Setting.**

Despite the Ninth Circuit's repeated holdings that have applied the standard described in *Tinker v. Des Moines Independent Community School Dist.*, 393 U.S. 503 (1969) to cases involving threats of school violence, R.W. argues in his response that *Tinker* is inapplicable to his 42 U.S.C. § 1983 First Amendment claim. ECF No. 45 at 12 – 16. He does not dispute that *Tinker* is applicable to cases involving threats of school violence—nor could he, given the Ninth Circuit's holdings—rather, he argues that *Tinker* cannot be extended to the

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

4

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

college setting. However, the reasoning of the cases that he cites for this proposition has little relevance to cases involving threats of school violence.

R.W. has overlooked the Ninth Circuit's warning in *Wynar v. Douglas County School Dist.*, 728 F.3d 1062, 1069 (9th Cir. 2013):

> One of the difficulties with the student speech cases is an effort to divine and impose a global standard for a myriad of circumstances involving off-campus speech. A student's profanity-laced parody of a principal is hardly the same as a threat of a school shooting, and we are reluctant to try and craft a one-size fits all approach.

Here, R.W. cites to First Amendment cases that have little relevance to his speech.

R.W. first argues that *Tinker* should not be applied to colleges due to the Ninth Circuit's opinion in *Brown v. Li*, 308 F.3d 939 (9th Cir. 2002). This is a misguided argument for two reasons: first, the *Brown* opinion does not cite *Tinker* at any point in the opinion; second, the *Brown* court was explicitly discussing the application of the First Amendment to curricular speech, while R.W.'s case clearly does not involve speech related to the school curriculum. Moreover, Judge Graber's opinion actually extended the restrictions on curricular speech in primary or secondary-school settings to the university level, while Judge Ferguson's concurrence did not address curricular speech at all because the concurrence concluded that the speech was not protected by the First Amendment in the first place. *Id*. at 951.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

5

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

The second case that R.W. cites, *Oyama v. University of Hawaii*, 813 F.3d 850 (9th Cir. 2015), cites *Tinker*, but that case similarly has little bearing on R.W.'s arguments. *Oyama* dealt with a "hybrid" of curricular speech and public employee speech. *Id*. at 860. The student was expressing views on consensual sexual relationships between adults and minors in the context of his coursework, which also doubled as certification for his teacher licensing. *Id*. at 856. Ultimately, the Ninth Circuit did not extend the student speech doctrine to the university setting because it concluded that "the key rationales for restricting students' speech are to ensure that students are not exposed to material that may be inappropriate for their level of maturity and [to] learn whatever lessons the activity is designed to teach," and that "[n]either of these rationales is relevant here." *Id*. at 863 (internal citation omitted). The court concluded by specifically noting that it was not deciding whether the student speech doctrine as outlined in *Hazelwood School Dist. V. Kuhlmeier*, 484 U.S. 260 (1988) can ever apply in the context of student speech at the college and university level. *Oyama*, 813 F.3d at 864, n. 10.

Neither *Brown* nor *Oyama* have any relevance to R.W.'s First Amendment arguments. First, the speech that R.W. claims is protected by the First Amendment is vastly different than the curricular speech of *Brown* and *Oyama*. Second, contrary to R.W.'s misrepresentations, the Ninth Circuit has never said that *Tinker* cannot apply in the college and university context. Third, the Ninth

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

6

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

Circuit's analysis in *McNeil* and *Wynar* are relevant here because the threat of school violence presents a wholly different scenario than a student saying or writing something that a college might find distasteful or unprofessional. Therefore, the analysis of *Tinker*, as applied in *McNeil* and *Wynar*, is the relevant analysis for the Court.

C. **R.W.'s Threats Undoubtedly Caused a "Substantial Disruption."**

R.W. fails to distinguish his case from the Ninth Circuit's application of the *Tinker* analysis in *McNeil v. Sherwood School District 88J*, 918 F.3d 700 (9th Cir. 2019). Moreover, R.W. does not even address the Ninth Circuit's application of the *Tinker* analysis in *Wynar v. Douglas County School Dist.*, 728 F.3d 1062 (9th Cir. 2013). Ultimately, the Ninth Circuit's analysis in both *McNeil* and *Wynar* lead to the inexorable conclusion that the College did not violate R.W.'s First Amendment rights.

First, R.W. argues that "CBC did not purport to expel R.W. on the basis that he presented a likelihood of disruption to campus," yet in the very next sentence, he acknowledges that the College sanctioned him for "creating a hostile environment." ECF No. 45 at 18. It is clear that R.W. is merely quibbling over semantics. Moreover, R.W. acknowledges that one of his instructors, Valerie Cooke, had a "complete meltdown" as a direct result of his conduct. ECF No. 38 at ¶ 18. The evidence does not support R.W.'s assertion about his conduct.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

7

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

Second, R.W.'s argument that his disclosure of homicidal ideations did not constitute conduct is incorrect. The *McNeil* case involved a student's threatening writings in a journal that was "not intended to be communicated to anyone." *McNeil*, 918 F.3d at 706 – 710. R.W.'s intent is largely irrelevant—the fact remains that the College received reports of his homicidal threats.

Third, R.W.'s contention that the College's decision makers came to the conclusion that he did not pose a threat is addressed above, and that assertion wholly misstates the evidence presented in this case. *See supra* at pp. 3:15 – 4:12.

Ultimately, R.W. does not address the three-factor test of *McNeil* that he cites in his response. ECF No. 45 at 17. The Ninth Circuit's analysis in *McNeil* and *Wynar* is dispositive here, and R.W. cannot establish a violation of his First Amendment rights.

**D.  The Defendants are Entitled to Qualified Immunity.**

Both Defendants Reagan and Thornton are entitled to qualified immunity. R.W. offers a string citation to nine cases for the proposition that "appl[ying] a Student Code of Conduct to speech by attempting to characterize the speech as abusive" is unconstitutional and, therefore "Defendants are on clear notice that their conduct was illegal." ECF No. 45 at 20 – 21. However, none of these cases have any bearing on this case. All nine cases involved facial challenges to the language of the relevant student conduct code—which R.W. is not challenging here—and all nine cases did not involve threats of violence.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

8

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

R.W. repeats the misstatement of the evidence that the College did not view R.W. as a threat after he threatened to attack and kill three of his instructors with a saw and then set their offices on fire. ECF No. 45 at 21. Again, the evidence does not support this claim. *See supra* at pp. 3:15 – 4:12.

E. **R.W. Cannot Establish Discrimination under the ADA, Rehabilitation Act, or WLAD.**

The College has thoroughly addressed why R.W.'s disparate treatment claims under the Americans with Disabilities Act, the Rehabilitation Act, and the Washington Law Against Discrimination must fail (ECF No. 31 at 20 – 27; ECF No. 43 at 12 – 16), and those same reasons apply here and are incorporated by reference herein. However, two misstatements by R.W. in his response must be corrected here.

First, R.W. claims that the College did not find him to be a threat, and again, this statement grossly mischaracterizes the evidence. *See supra* at pp. 3:15 – 4:12. Second, R.W. claims "there is no serious dispute that the Defendants have treated R.W. differently based on his disability." ECF No. 45 at 24. That is wrong. The College took action in response to R.W.'s conduct—specifically, his homicidal ideations. *See Macy v. Hopkins Cnty. Sch. Bd. of Educ.*, 484 F.3d 357, 366–71 (6th Cir.2007), abrogated on other grounds, *Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312 (6th Cir.2012) ("this court has repeatedly stated that an employer may legitimately fire an employee for conduct, even

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

9

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

conduct that occurs as a result of a disability, if that conduct disqualifies the employee from his or her job."). The Court can focus its analysis of this claim by asking a simple question: what disability is R.W. claiming as the basis of discrimination? R.W.'s homicidal ideations are not a disability. If R.W. is claiming that his depression is the disability, then he has not presented any evidence that shows his homicidal ideations are a symptom of his depression. Moreover, he does not attribute his homicidal ideations to his depression.[1] Even if his homicidal ideations could be attributed to his depression, the College is entitled to take action against his disqualifying behavior of conveying threats to attack and kill his instructors. Not only does the law dictate this result, but common sense does, as well. It is untenable to allow a person to threaten violence or even commit acts of violence because they claim that the threats or acts of violence are a protected disability.

### III. CONCLUSION

For the foregoing reasons, the Court should grant Defendants' motion for summary judgment.

DATED this 8th day of July, 2019.

---

[1] In response to a question asking what his origin of his homicidal ideations were, R.W. testified that his nurse practitioner, his primary physician, and "a whole host of people" "all came to the conclusion together that it was a combination of stress and lack of sleep." ECF No. 35-2 at 69:23 – 70:4.

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

10

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

ROBERT W. FERGUSON
Attorney General

  s/Carl P. Warring
CARL P. WARRING
WSBA No. 27164
Assistant Attorney General
Attorney for Defendants
1116 W Riverside, Suite 100
Spokane, WA 99201
(509) 456-3123
carlw@atg.wa.gov

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

11

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123

# PROOF OF SERVICE

I certify that I electronically filed the above document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Eric Eisinger | eeisinger@walkerheye.com |
| Bret Uhrich | buhrich@walkerheye.com |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

DATED this 8th day of July, 2019, at Spokane, Washington.

ROBERT W. FERGUSON
Attorney General

  s/Carl P. Warring
CARL P. WARRING
WSBA No. 27164
Assistant Attorney General
Attorney for Defendants
1116 W Riverside, Suite 100
Spokane, WA 99201
(509) 456-3123
carlw@atg.wa.gov

DEFENDANTS' REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

12

ATTORNEY GENERAL OF WASHINGTON
Torts Division
1116 West Riverside, Suite 100
Spokane, WA 99201-1106
(509) 456-3123