FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Nov 19, 2021

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| R.W., individually and on behalf of his marital community,<br><br>                  Plaintiff,<br><br>    v.<br><br>COLUMBIA BASIN COLLEGE, a public institution of higher education; LEE THORNTON, in his individual capacity; REBEKAH WOODS, in her official capacity; and RALPH REAGAN, in his official and individual capacities,<br><br>                  Defendants. | NO:  4:18-CV-5089-RMP<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT |

BEFORE THE COURT is Defendants' Motion for Partial Summary Judgment, ECF No. 128.  The Court heard oral argument by video conference on October 14, 2021.  Plaintiff R.W. was represented by Bret J. Uhrich and Eric B. Eisinger.  Defendants Columbia Basin College, Lee Thornton, and Ralph Reagan were represented by Jacob E. Brooks and Carl P. Warring from the Attorney General

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 1

of Washington's Office.  The Court has considered the parties' arguments, briefing and the record, and is fully informed.

## BACKGROUND

### Relevant Facts[1]

R.W. was enrolled in Columbia Basin College's ("CBC") nursing program, completing 177 credit hours between 2011 and 2017, and needing to complete only one more quarter of classes to graduate.  ECF No. 37-4.  He previously was diagnosed with a seizure disorder, chronic back pain, and depression.  ECF No. 37-24 at 5.  In February of 2017, R.W. experienced more frequent seizures, depression, and anger issues.  *Id.*; *see also* ECF No. 37-12.  During this time, R.W. had homicidal ideations about three of his instructors at CBC, in which he imagined killing them by lighting their offices on fire and attacking them with saws.  ECF Nos. 47-5, 35-2 at 48.

R.W. reported his medical issues to Dr. Michael Cabasug, his primary care physician, on February 28, 2017, and scheduled an appointment for March 6.  ECF No. 37-22 at 10.  Between February 28 and March 6, R.W. continued to attend his nursing classes at CBC without incident.  *Id.*  At the March 6 appointment, R.W.

---

[1] Given that the relevant facts for the present motion largely overlap with those considered in prior motions for this case, the Court adopts many of the same background facts from its previous order resolving the parties' cross-motions for summary judgment.  *See* ECF No. 83 at 2–7.

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 2

told Dr. Cabasug that he had been feeling overwhelmed, helpless, and anxious because he was extremely stressed from school.  ECF No. 37-24 at 5.  R.W. stated that he was having trouble sleeping because of his stress from school, which Dr. Cabasug noted was likely the cause of an increase in epileptic episodes that R.W. had been experiencing over the previous several weeks.  *Id.*  R.W. also shared with Dr. Cabasug his concerns about his violent ideations.  ECF No. 37-27.

Dr. Cabasug referred R.W. to Lourdes Hospital's Crisis Response Counseling Center for a mental health evaluation.  *Id.*  Araceli Perez, a crisis responder for Lourdes, met with R.W. at Dr. Cabasug's office.  ECF No. 35-1 at 9–10.  R.W. reported his homicidal thoughts to Ms. Perez, identified the specific professors about whom he had homicidal thoughts, and told her that his thoughts were triggered by the bad grades and feedback that they gave him.  *Id.* at 19.  He also stated the ways that he imagined killing his professors.  *Id.* at 38.

Following this evaluation, R.W. agreed to voluntarily admit himself for inpatient counseling. ECF No. 37-27 at 2.  R.W. initially wanted to leave inpatient treatment on March 9 but was convinced to stay an extra day and was discharged on March 10.  ECF No. 35-1 at 33; ECF No. 37-12 at 1.  Around this time, R.W. admitted that he began to realize he would not be able to complete Winter Quarter

2017, which ended on March 23, 2017.[2]  ECF Nos. 34 at 2, 130-2 at 9–10.  He could not re-enroll in the nursing program until the following Winter Quarter because of the nursing program's progressive schedule, which requires the completion of certain classes offered only once a year before moving on to the following courses.  ECF No. 34 at 1–2.

Defendants allege that crisis responder Ms. Perez has a duty to warn people if her patients express homicidal ideations about them.  ECF No. 35-1 at 37.  After R.W. told Ms. Perez about his homicidal thoughts, she contacted the Richland Police Department, which then notified CBC's campus security on the morning of March 7.  ECF No. 37-10 at 2.  CBC's campus security warned the professors identified by R.W. about R.W.'s thoughts.  *Id.*  Defendant Ralph Reagan, Assistant Dean of Student Conduct for CBC, also was informed about R.W.'s thoughts.

---

[2] The parties dispute the circumstances surrounding R.W.'s decision not to complete Winter Quarter 2017.  Defendants assert that R.W. admitted in his deposition testimony that he realized on March 9, 2017, that the "additional time" he had missed from classes, due to being admitted at Lourdes, meant that he would not be able to finish the semester.  ECF No. 142 at 6; *see also* ECF No. 130-2 at 9–10.  Plaintiff argues that Defendants mischaracterize his deposition testimony and denies that he ever made such a concession.  Rather, Plaintiff contends that his decision not to complete Winter Quarter 2017 was premised on his conclusion that CBC's Student Conduct process would take too long for him to be able to catch up on the classes that he was missing due to the trespass order.  *See* ECF No. 136 at 10–11; *see also* ECF No. 138 at 1–2.

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 4

ECF No. 37-8 at 5.  Mr. Reagan was told that R.W. "admitted to having homicidal

ideations toward staff at CBC, talking about lighting offices on fire and attacking

people with saws." ECF Nos. 37-10 at 10, 37-8 at 5.  Additionally, Mr. Reagan

was told that R.W. was at Lourdes "getting help and may not be an immediate

threat." ECF No. 37-10 at 10.

The same day that Mr. Reagan learned of R.W.'s homicidal ideations, Mr.

Reagan issued R.W. an interim trespass letter pending an investigation.  ECF No.

37-9 at 1.  According to Mr. Reagan, R.W.'s thoughts violated the school's Student

Code of Conduct.  The Student Code of Conduct prohibits "Abusive Conduct,"

which is defined under the Washington Administrative Code as:

> Physical and/or verbal abuse, threats, intimidation,
> harassment, online harassment, coercion, bullying,
> cyberbullying, retaliation, stalking, cyberstalking, and/or
> other conduct which threatens or endangers the health or
> safety of any person or which has the purpose or effect of
> creating a hostile or intimidating environment.

*Id.*; *see also* Wash. Admin. Code § 132S-100-205.  Mr. Reagan trespassed R.W.

from CBC's Richland and Pasco campuses stating that R.W.'s actions had the

"effect of creating a hostile or intimidating environment." ECF No. 37-19 at 1.

Mr. Reagan sent R.W. a follow up letter on March 8, 2017, which scheduled a

March 16 meeting between R.W. and Mr. Reagan to discuss the trespass and to

give R.W. a chance to respond to the allegations.  ECF No. 37-11.

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 5

1     Meanwhile, R.W. appealed his interim trespass from campus to the Student

2  Appeals Board ("Board") at CBC.  ECF No. 35-4 at 166.  On March 14, the Board

3  affirmed Mr. Reagan's decision and upheld the interim trespass, barring R.W. from

4  attending his classes.  ECF No. 37-13.  R.W. appealed the Board's decision to the

5  Interim President of CBC, Defendant Lee Thornton, on March 22.  ECF No. 37-14.

6  On April 19, Mr. Thornton lifted the restriction as to CBC's Pasco campus but left

7  the restriction in place for the Richland campus.  ECF No. 37-15.  Mr. Thornton's

8  modifications did not allow R.W. to attend his nursing classes because the nursing

9  program is conducted at the Richland campus.  ECF No. 37-8 at 7.

10     As the interim trespass was being appealed, CBC and R.W. also participated

11  in the student conduct process to review the allegations made against R.W.  ECF

12  No. 37-16.  On March 22, CBC held a meeting at which Mr. Reagan and R.W.

13  discussed the allegations.  *Id.*  At the meeting, Mr. Reagan requested access to

14  R.W.'s medical records to assess whether R.W. committed any abusive conduct, as

15  defined by the Washington Administrative Code, which is incorporated into CBC's

16  Student Code of Conduct.  ECF No. 37-22 at 7.  Mr. Reagan received R.W.'s

17  medical records from Dr. Cabasug as well as a letter written by Dr. Cabasug

18  explaining that R.W.'s homicidal thoughts were out of character for him.  ECF

19  Nos. 35-4 at 53–54, 72; 37-21; 37-33.  Mr. Reagan also talked to the professors

20  identified in R.W.'s homicidal thoughts, who all expressed that R.W.'s thoughts

21

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 6

made them afraid of R.W.'s presence in classes.  ECF Nos. 35-4 at 130, 137–38; 37-7.

On April 20, 2017, Mr. Reagan issued R.W. a letter stating that he found R.W. responsible for violating CBC's Student Code of Conduct.  ECF No. 37-16.  The letter stated that, even though R.W. did not intend to intimidate anybody through his actions, his actions had that effect and therefore violated the school's regulations.  *Id.*  Mr. Reagan later clarified that R.W.'s violent thoughts were the conduct that violated the school's code.  ECF No. 35-4 at 123.

The sanctions imposed by Mr. Reagan for R.W.'s conduct included the continuation of the trespass order until R.W. (1) successfully re-enrolled in the nursing program, (2) participated in mental health counseling, and (3) completed a mental health evaluation in October of 2017.  ECF No. 37-16 at 1.[3]  Through counsel, R.W. appealed Mr. Reagan's decision and imposition of sanctions to the Student Appeals Board on May 4, 2017.  ECF No. 37-17.  The Board unanimously upheld Mr. Reagan's imposition of sanctions on May 24, 2017.  ECF No. 37-18.  R.W. appealed the Board's decision to Mr. Thornton on June 7, 2017.  ECF No.

---

[3] According to Mr. Reagan, CBC's "process for determining violations of the student code of conduct and sanctions has [since] been altered."  ECF No. 131 at 1–2.  Specifically, the Student Conduct Board is now responsible for making violation determinations "where expulsions or suspensions for ten or more days is a possible out[come]."  *Id.* at 2.

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 7

37-19.  Mr. Thornton affirmed the Board's decision on June 12, 2017.  ECF No. 37-20.

On July 8, 2021, approximately three years after the event in question, Mr. Reagan issued R.W. a follow-up letter, stating that the sanctions imposed on April 20, 2017, became null and void when R.W. did not enroll in Winter Quarter 2018. ECF Nos. 131 at 137–38, 129 at 8.  R.W. disputes this fact, arguing that the sanctions were not withdrawn until the issuance of Mr. Reagan's letter on July 8, 2021.  ECF No. 136 at 12–13.  R.W. further argues that Mr. Reagan lacks authority to determine whether he can return to the nursing program.  *Id.*  Defendants argue that R.W. no longer has any sanctions imposed upon him and is free to apply for reenrollment at CBC.  ECF No. 129 at 8.  In response, R.W. notes that he was failed in all of his classes in Winter Quarter 2017, "rendering him ineligible to return pursuant to the requirements of the nursing student handbook."  ECF No. 136 at 12–13 (citing ECF Nos. 37-4, 139).

***Procedural History***

R.W. filed a complaint against CBC, Mr. Reagan, and Mr. Thornton on May 25, 2018.  ECF No. 1.  R.W. asserts a 42 U.S.C. § 1983 claim, arguing that all Defendants violated his free speech rights under the First Amendment and the

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 8

Equal Protection Clause of the Fourteenth Amendment.  *Id.* at 7.[4]  R.W. asks for an injunction lifting the trespass order, enjoining Defendants from requiring R.W. to retake all of his nursing classes, and preventing Defendants from requiring R.W. to provide regular reports of his medical treatment as a condition of re-enrollment. *Id.* at 9.  He also asks for compensatory, punitive, and nominal damages, attorneys' fees, as well as "all other relief the [C]ourt deems just and equitable."  *Id.* at 9–10.

On October 4, 2019, this Court issued an Order Granting in Part Plaintiff's Motion for Summary Judgment with respect to liability on his claim under 42 U.S.C. § 1983, finding that the sanctions CBC imposed violated R.W.'s First Amendment free speech rights.  ECF No. 83 at 22, 29.  This Court denied in part Plaintiff's motion with respect to liability on his claims under the Americans with Disabilities Act, the Rehabilitation Act, and the Washington Law Against Discrimination.  *Id.* at 29–30.  The Court also denied Defendants' Motion for Summary Judgment in its entirety, including claims for qualified immunity by Defendants Ralph Reagan and Lee Thornton.  *Id.* at 22, 29.  Mr. Reagan and Mr. Thornton appealed the portion of the Court's order denying them qualified immunity.  ECF No. 90.

---

[4] R.W. also claims that CBC violated his rights under the Americans with Disabilities Act and the Rehabilitation Act, and he claims that all Defendants violated his rights under the Washington Law Against Discrimination.  ECF No. 1 at 8.

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 9

On March 31, 2021, the Ninth Circuit reversed the denial of qualified

immunity, holding that R.W.'s First Amendment right "was not clearly

established."  ECF No. 121 at 2.  The Ninth Circuit did not reach the issue of

whether CBC's actions amounted to a constitutional violation of R.W.'s First

Amendment rights.  Defendants now seek partial summary judgment on R.W.'s

claim for injunctive relief under §1983.

## LEGAL STANDARD

A court may grant summary judgment where "there is no genuine dispute as

to any material fact" of a party's prima facie case, and the moving party is entitled

to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *see also Celotex Corp. v.*

*Catrett*, 477 U.S. 317, 322–23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).  A

genuine issue of material fact exists if sufficient evidence supports the claimed

factual dispute, requiring "a jury or judge to resolve the parties' differing versions

of the truth at trial."  *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809

F.2d 626, 630 (9th Cir. 1987).  A key purpose of summary judgment "is to isolate

and dispose of factually unsupported claims." *Celotex*, 477 U.S. at 324.

The moving party bears the burden of showing the absence of a genuine

issue of material fact, or, in the alternative, the moving party may discharge this

burden by showing that there is an absence of evidence to support the nonmoving

party's prima facie case.  *Id.* at 325.  The burden then shifts to the nonmoving party

to set forth specific facts showing a genuine issue for trial.  *Id.* at 324.  The

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 10

nonmoving party "'may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided . . . must set forth specific facts showing that there is a genuine issue for trial.'" *Id.* at 322 n.3 (quoting Fed. R. Civ. P. 56(e)).

The Court will not infer evidence that does not exist in the record. *See Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888–89, 110 S. Ct. 3177, 111 L. Ed. 2d 695 (1990). The Court will "view the evidence in the light most favorable" to the nonmoving party. *Newmaker v. City of Fortuna*, 842 F.3d 1108, 1111 (9th Cir. 2016). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

## DISCUSSION

Defendants move for partial summary judgment on R.W.'s request for prospective injunctive relief regarding his First Amendment claim under 42 U.S.C. § 1983. ECF No. 128. Specifically, Defendants argue that (1) Eleventh Amendment immunity bars suit against Defendants; (2) the *Ex parte Young*[5] doctrine does not apply because Plaintiff's claim for injunctive relief is moot and no longer redressable; and (3) the Court should reconsider its previous liability

---

[5] *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 11

finding in light of *Mahanoy Area School Dist. v. B.L. by and through Levy*, ___

U.S. ___, 141 S. Ct. 2308, 210 L. Ed. 2d 403 (2021).

**I.    Eleventh Amendment Immunity**

Defendants first argue that they are immune from suit under the Eleventh

Amendment of the United States Constitution, which provides the following:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend XI.  The Eleventh Amendment has been interpreted to

immunize states from lawsuits for private damages or other retrospective relief

brought in federal court by its own citizens or citizens of other states.  *See*

*generally Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437, 124 S. Ct. 899, 157 L.

Ed. 2d 855 (2004); *Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 267–68,

117 S. Ct. 2028, 138 L. Ed. 2d 438 (1997); *Milliken v. Bradley*, 433 U.S. 267, 288–

90, 97 S. Ct. 2749, 53 L. Ed. 2d 745 (1977).  An entity invoking Eleventh

Amendment immunity bears the burden of proving it is entitled to the defense.

*Sato v. Orange Cnty. Dep't of Educ.*, 861 F.3d 923, 928 (9th Cir. 2017).

There are two exceptions to state sovereign immunity under the Eleventh

Amendment: (1) a state may consent to being sued and (2) Congress may abrogate

state sovereign immunity by appropriate legislation.  *Virginia Off. for Prot. and*

*Advoc. v. Stewart*, 563 U.S. 247, 253–54, 131 S. Ct. 1632, 179 L. Ed. 2d 675

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 12

(2011).  Defendants assert, and Plaintiff does not appear to challenge, that Washington State has neither waived, nor has Congress abrogated, state sovereign immunity pursuant to specific statutes for purposes of Plaintiff's § 1983 claim. ECF No. 128 at 10.[6]

It is widely recognized that the Eleventh Amendment precludes private damages or suits for injunctive relief against state agencies.  *Sato*, 861 F.3d at 928. In its reply, Defendants argue that R.W. "does not attempt to rebut that CBC is entitled to Eleventh Amendment immunity" as a state agency and that R.W. has therefore "abandon[ed] the uncontested issue."  ECF No. 142 at 7 (citing *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005)).  In line with *Sato*, the burden of asserting Eleventh Amendment immunity rests with Defendant CBC so this Court must analyze its alleged status as a "state agency."  The following five factors help guide the determination of whether a government entity is an arm of the state:

> (1) Whether a money judgment would be satisfied out of state funds, (2) whether the entity performs central government functions, (3) whether the entity may sue or be sued, (4) whether the entity has the power to take property in its own name or only the name of the state, and (5) the corporate status of the entity.

---

[6] 42 U.S.C. § 1983 does not override a state's immunity from suit in federal court, as guaranteed by the Eleventh Amendment.  *Quern v. Jordan*, 440 U.S. 332, 345, 99 S. Ct. 1139, 59 L. Ed. 2d 358 (1979).

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 13

1    *Belanger v. Madera Unified Sch. Dist.*, 963 F.2d 248, 250–51 (9th Cir. 1992)

2    (quoting *Mitchell v. Los Angeles Community Coll. Dist.*, 861 F.2d 198, 201 (9th

3    Cir. 1988), *cert denied*, 490 U.S. 1081, 109 S. Ct. 2102, 104 L. Ed. 2d 663 (1989)).

4          CBC highlights two sources of authority to support its argument that it is a

5    state agency.  First, CBC cites a Washington statute providing that "community

6    colleges are . . . an independent, unique, and vital section of our state's higher

7    education system, separate from both the common school system and other

8    institutions of higher learning."  RCW 28B.50.020(7).  Second, CBC cites

9    Plaintiff's complaint, which describes CBC as "a Washington public institution of

10   higher education under the Revised Code of Washington (RCW) 28B."  ECF No. 1

11   at 2.

12         Additionally, the Washington State Supreme Court has concluded that "the

13   legislature intended community colleges, and the operation thereof, to be a state

14   function."  *Centralia Coll. Educ. Ass'n v. Board of Trustees of Community Coll.*

15   *Dist. No. 12*, 82 Wash. 2d 128, 133, 508 P.2d 1357 (1973).  Moreover, two

16   separate decisions in this district, albeit unpublished, have concluded that CBC

17   qualifies as a state agency for purposes of the Eleventh Amendment.  *See Cepeda*

18   *v. Columbia Basin Community Coll.*, No. 12-cv-5026-TOR, 2012 WL 6042339, at

19   *2 (E.D. Wash. Dec. 4, 2012); *see also Arshad v. Columbia Basin Community*

20   *Coll.*, No. cv-05-5019-LRS, 2006 WL 1455656, at *1–2 (E.D. Wash. May 25,

21   2006).

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 14

In its statement of supplemental authority, Defendants note that a monetary judgment against CBC "would be satisfied out of state funds[,]" although Defendants fail to cite any authority for this assertion.  ECF No. 144 at 3. Defendants also contend that CBC "performs a central government function of education as determined by the legislature" and "has the corporate status of a state agency as created by statute."  *Id.* (citing RCW 28B.50.0002 [*sic*])[7]; *see also Centralia Coll. Educ. Ass'n*, 82 Wash. 2d at 135 ("Without question, the legislature intended community college districts to be state agencies.").  The Court concludes that Defendants have met the requisite showing that CBC is a state agency entitled to Eleventh Amendment immunity from suit for Plaintiff's § 1983 claim.  Accordingly, Plaintiff's claim for injunctive relief under § 1983 against Defendant Columbia Basin College is dismissed with prejudice.  In the instant motion, Defendants do not move for summary judgment of Plaintiff's claims against CBC based on the Americans with Disabilities Act and the Rehabilitation Act or the Washington Law Against Discrimination.  Accordingly, CBC remains a party to this action for those separate claims.

## II.    Applicability of the *Ex parte Young* Doctrine to Individual Defendants

---

[7] Defendants appear to have made an error in citing to RCW 28B.50.0002.  *See* ECF No. 144 at 3.  The Court presumes that Defendants meant to cite to RCW 28B.50.020 which sets out the purpose of Washington State's Community and Technical College Act of 1991.

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 15

1      In line with CBC's Eleventh Amendment immunity, Defendants Ralph

2  Reagan and Lee Thornton argue that they are equally entitled to immunity as state

3  officials sued in their official capacity.  ECF No. 128 at 10 (citing *Lund v. Cowan*,

4  5 F.4th 964, 969 (9th Cir. 2021)).  However, the Eleventh Amendment does not

5  preclude a lawsuit challenging the constitutionality of a state official's actions.  *Ex*

6  *parte Young*, 209 U.S. 123, 167–68, 28 S. Ct. 441, 52 L. Ed. 714 (1908).  The *Ex*

7  *parte Young* doctrine "has been accepted as necessary to permit the federal courts

8  to vindicate federal rights and hold state officials responsible to 'the supreme

9  authority of the United States.'"  *Pennhurst State Sch. & Hosp. v. Halderman*, 465

10 U.S. 89, 105, 104 S. Ct. 900, 79 L. Ed. 2d 67 (1984) (quoting *Ex parte Young*, 209

11 U.S. at 160).

12     In determining whether the *Ex parte Young* doctrine applies, the relevant

13 inquiry is whether the complaint "'alleges an ongoing violation of federal law and

14 seeks relief properly characterized as prospective.'"  *Koala v. Khosla*, 931 F.3d

15 887 (9th Cir. 2019) (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535

16 U.S. 635, 645, 122 S. Ct. 1753, 152 L. Ed. 2d 871 (2002)).  Here, Defendants

17 assert that the sanctions against R.W. have been withdrawn so there is no ongoing

18 violation of federal law.  ECF No. 128 at 11.  In response, Plaintiff counters that

19 "Defendants fail to remedy the previously identified consequences of their

20 unlawful conduct including expulsion from the program, failing R.W. in his

21 classes, and suspending his financial aid."  ECF No. 135 at 2.  Separately, Plaintiff

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 16

1    argues that, despite Defendants' "voluntary cessation" of the sanctions originally at

2    issue, the unlawful conduct may rise again "absent the imposition of an

3    injunction." *Id.* at 11.  Therefore, the relevant inquiry for the injunctive relief

4    Plaintiff seeks concerns mootness, voluntary cessation, and redressability.

5    **A. Mootness**

6    "Article III of the Constitution limits federal-court jurisdiction to 'Cases'

7    and 'Controversies.'" *Massachusetts v. EPA*, 549 U.S. 497, 516, 127 S. Ct. 1438,

8    167 L. Ed. 2d 248 (2007).  A case becomes moot where there are no longer any

9    live issues to resolve or where the parties lose a "legally cognizable interest in the

10   outcome." *Flint v. Dennison*, 488 F.3d 816, 823 (9th Cir. 2007).  However,

11   mootness "is a flexible justiciability doctrine" and does not apply so long as the

12   court "retains the ability to 'fashion some form of meaningful relief.'" *Id.* (quoting

13   *Dream Palace v. County of Maricopa*, 384 F.3d 990, 1000 (9th Cir. 2004)).

14   Based on his complaint, R.W. broadly seeks prospective injunctive relief

15   against CBC, and against Mr. Reagan and Mr. Thornton in their official capacities,

16   "to enjoin their violations of R.W.'s rights under the First Amendment and the

17   Equal Protection Clause of the [Fourteenth] Amendment."  ECF No. 1 at 8.

18   Plaintiff's prayer for relief includes an injunction "lifting the trespass order related

19   to R.W., enjoining CBC from requiring R.W. to retake all courses to complete his

20   degree, and preventing CBC from requiring Plaintiff to obtain medical care and

21   make regular reports of his medical treatment as a condition of re-enrollment." *Id.*

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 17

at 9.  He also asks for "all other relief the court deems just and equitable."  *Id.* at

10.

In a letter to R.W. dated July 8, 2021, Defendant Reagan stated that the

sanctions imposed on R.W.'s re-enrollment are no longer in effect.  ECF No. 131

at 137–38.[8]  Defendants contend that the trespass order against R.W. is no longer

in place, he is not required to retake all courses already taken to re-enroll in the

nursing program, and the condition requiring him to see a mental health counselor

is null and void.  ECF No. 128 at 15 (citing ECF No. 132 at 3).  Defendants

therefore argue that R.W.'s claim for prospective injunctive relief is moot.  ECF

No. 128 at 13–14 (citing *Mutter v. Rodriguez*, 700 Fed. App'x 528 (7th Cir.

2017)).  In *Mutter*, the plaintiff's § 1983 claim, stemming from his expulsion from

college for brandishing a firearm, was rendered moot once he became "eligible to

reinstate without court involvement."  700 Fed. App'x at 531.  The court also

dismissed the plaintiff's separate claim that his expulsion left him "on the hook" to

the Air Force for a tuition scholarship because he sued individual defendants in

their official capacities, thus rendering damages unavailable to him.  *Id.*

R.W. does not expressly contest that the sanctions against him have been

removed.  Instead, he argues that the "purported withdrawal of sanctions . . . does

---

[8] The parties dispute whether the sanctions were removed when R.W. did not
enroll in Winter Quarter 2018 or when Ralph Reagan sent the follow-up letter three
years later on July 8, 2021.  *See* ECF Nos. 128 at 8–9, 135 at 5–6.

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 18

1   not remotely remedy the injuries arising from Defendants' unlawful conduct."

2   ECF No. 135 at 6.  Separate from the removal of sanctions, R.W. alleges that he

3   also is seeking (1) reinstatement to the nursing program and (2) removal of

4   negative information on his academic records preventing his qualification for

5   financial aid.  ECF No. 135 at 7–10 (citing *Flint v. Dennison*, 488 F.3d 816, 824

6   (9th Cir. 2017) (declining to dismiss the action as moot where former student's

7   records still contained evidence of disciplinary sanctions); *Constantine v. Rectors*

8   *and Visitors of Geo. Mason Univ.*, 411 F.3d 474, 496 n.15 (4th Cir. 2005) (ruling

9   that student who graduated could still pursue request that the school expunge a

10  failing grade from her record); *Ashokkumar v. Elbaum*, 932 F. Supp. 2d 996, 1007

11  (D. Neb. 2013) (finding that plaintiff had alleged a colorable § 1983 claim for

12  injunctive relief directing state officials to meaningfully restore her academic

13  standing)).

14      1.  Reinstatement

15      CBC counters that R.W.'s request for reinstatement is not an available

16  remedy because the sanctions imposed by Mr. Reagan did not result in R.W.'s

17  suspension or expulsion.  In reversing this Court's finding on qualified immunity,

18  the Ninth Circuit determined CBC's response to R.W.'s violent ideations "was not

19  suspension or expulsion from the College, but rather a process for re-enrollment in

20  a manner the College deemed safe."  ECF No. 56 at 3.  Defendants argue that this

21

1  statement by the Ninth Circuit is the "law of the case" and "because R.W. was not

2  expelled, reinstatement is not a proper remedy."  ECF No. 142 at 2–3.

3      The "law of the case" doctrine ordinarily precludes a court "from

4  reexamining an issue previously decided by the same court, or a higher court, in

5  the same case." *Richardson v. United States*, 841 F.2d 993, 995 (9th Cir. 1988),

6  *amended by* 860 F.2d 357 (9th Cir. 1988).  Here, the Ninth Circuit granted appeal

7  on the narrow issue of whether Defendants Reagan and Thornton were entitled to

8  qualified immunity.  Accordingly, the court's characterization of the sanctions at

9  issue is dicta, not binding authority.  In other words, the nature of R.W.'s

10  disenrollment was not "decided explicitly or by necessary implication in [the]

11  previous disposition" for purposes of the law of the case doctrine.  *Liberty Mutual*

12  *Ins. Co. v. E.E.O.C.*, 691 F.2d 438, 441 (9th Cir. 1982).  Accordingly, the "law of

13  the case" doctrine does not apply here, and the Court considers the appropriateness

14  of Plaintiff's request for reinstatement.

15      The Ninth Circuit recognizes that "reinstatement constitutes prospective

16  injunctive relief" and is an appropriate remedy for suits against individual

17  defendants in their official capacity.  *Doe v. Lawrence Livermore Nat. Laboratory*,

18  131 F.3d 836, 840, 842 (9th Cir. 1997).  While R.W. was not officially suspended

19  from CBC's nursing program, the nature of the trespass order, combined with the

20  strict, progressive schedule for the nursing program and the impact on his ability to

21  obtain financial aid, arguably constituted a de facto suspension.  *See* ECF Nos. 37-

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 20

19 at 1, 34 at 1–2.  Defendants may have removed the sanctions against R.W., but his path to reenrollment in the nursing program remains uncertain.  *See e.g.*, ECF Nos. 131 at 36 (CBC Nursing Student Handbook notes that "[t]o remain in the nursing program a 2.0 grade or higher must be attained in all major courses"), 133 at 3 (current CBC President Woods indicates that she would "seek the advice and consent of the Board of Trustees" before waiving the requirements of the Nursing Program Student Handbook as to R.W., specifically).  Therefore, the Court finds that reinstatement is an appropriate remedy that falls under the other forms of just and equitable relief that Plaintiff seeks.

   2.   Removal of Failing Grades from R.W.'s Transcript

   R.W. separately requests that Defendants remove negative information from his academic records.  ECF No. 135 at 8–9.  Before the trespass order was issued against R.W., he was "a student in good standing enrolled in the nursing program." *Id.* at 10.  Following the disciplinary conduct at issue here, CBC "issued R.W. zeroes in each of his classes," rendering him "ineligible for federal financial aid . . . at any college program."  *Id.* (citing ECF Nos. 37-4 at 4, 139 at 2).  In *Flint*, the Ninth Circuit determined a former student's claims were not moot so long as his record still contained evidence of disciplinary sanctions and the student was seeking the expungement of any mention of the sanctions from his records.  488 F.3d at 824.  Similarly, the Fourth Circuit determined that while the plaintiff's graduation from law school mooted most her claims for injunctive relief, her

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 21

request to expunge a failing grade from her record was not moot.  *Constantine*, 411

F.3d at 496 n.15.

Here, R.W.'s complaint did not specifically request that Defendants remove

the zeroes from his academic transcript for Winter Quarter 2017.  Nevertheless,

this remedy falls under his request for "all other relief the court deems just and

equitable."  ECF No. 1 at 10.  This remedy is distinguishable from the plaintiff in

*Mutter* who was "on the hook" to the U.S. Air Force "for tuition it paid on his

behalf."  700 Fed. App'x at 531.  There, plaintiff's economic injury was essentially

a request for damages that were unavailable to him under *Ex parte Young*.  *Id.*

Here, the removal of failing grades from R.W.'s transcript is a permissible form of

relief that removes the Defendants' imposed barrier that rendered him eligible for

prospective financial aid as opposed to an award for damages based on aid

previously denied to him.  Current CBC President Rebekah Woods notes that R.W.

can seek reenrollment "without reference to the findings and sanctions imposed in

2017."  ECF No. 133 at 3–4.  However, Ms. Woods does not state that R.W.'s

failing grades for Winter Quarter 2017 will be removed so that he may qualify for

financial aid going forward.

R.W.'s request for the removal of sanctions against him are not moot at this

point, regardless of whether the sanctions were removed this year or when he

failed to reenroll in 2018.  R.W.'s request for reinstatement remains an appropriate

remedy because the Ninth Circuit's characterization of R.W.'s disenrollment is dicta and is not controlling in this case.

Furthermore, R.W.'s request to remove his negative academic information is a meaningful form of relief that is not moot.  Although R.W. did not specifically request expungement of the failing grades in his complaint, this remedy is a form of just and equitable relief that the Court can provide.  *See Bayer v. Neiman Marcus Group, Inc.*, 861 F.3d 853 (9th Cir. 2017) (for purposes of mootness, "'[t]he question is not whether the precise relief sought at the time the case was filed is still available,' but 'whether there can be any effective relief.'" (quoting *McCormack v. Herzog*, 788 F.3d 1017, 1024 (9th Cir. 2015))).  While R.W.'s failing grades may have arisen from his voluntary decision to seek treatment, a material question of fact remains as to whether R.W.'s disenrollment from Winter Quarter 2017 (and subsequent failing grades) equally stemmed from the imposition of the trespass order and, with it, the inability to attend his classes.

Genuine issues of material fact remain regarding whether R.W.'s failing grades were the result of his seeking treatment or the result of CBC's trespass of him.  Accordingly summary judgment is not appropriate.

**B. Voluntary Cessation**

Plaintiff also argues that the facts surrounding Defendants' voluntary cessation of the sanctions at issue raises the strong possibility that the alleged unlawful conduct will "arise again absent the imposition of an injunction."  ECF

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 23

No. 135 at 11.  The voluntary cessation of challenged conduct moots a case "only if it is '*absolutely* clear that the allegedly wrongful behavior could not reasonably be expected to recur.'"  *Adarand Constructors, Inc. v. Slater*, 528 U.S. 216, 222, 120 S. Ct. 722, 145 L. Ed. 2d 650 (2000) (quoting *United States v. Concentrated Phosphate Export Assn., Inc.*, 393 U.S. 199, 203, 89 S. Ct. 361, 21 L. Ed. 2d 344 (1968)).  The burden for the party alleging mootness is heavy, if not formidable. *Rosebrock v. Mathis*, 745 F.3d 963, 971 (9th Cir. 2014) ("The party asserting mootness bears a 'heavy burden.'"); *see also DeJohn v. Temple University*, 537 F.3d 301, 309 (3d Cir. 2008) (describing the burden of showing mootness as heavy and formidable).

In *DeJohn*, the plaintiff challenged the university's sexual harassment policy as having "a chilling effect on his ability to exercise his constitutionally protected rights."  *Id.* at 305.  Temple University changed its policy "more than a year after the commencement of litigation and then only near the end of discovery."  *Id.* at 309.  The Third Circuit determined that the voluntary cessation of the original policy did not moot plaintiff's claim because the university's decision to defend the need for an unconstitutional policy raised a "'reasonable expectation'" that it would "reimplement its previous sexual harassment policy."  *Id.* (quoting *Los Angeles County v. Davis*, 440 U.S. 625, 631, 99 S. Ct. 1379, 59 L. Ed. 2d 642 (1979)).

1        Similar to *DeJohn*, Plaintiff argues that the removal of sanctions in this case

2   "occurred more than three years after this litigation commenced and almost two

3   years after this Court determined that Defendants violated R.W.'s First

4   Amendment rights as a matter of law."  ECF No. 135 at 13.  Defendants counter

5   that R.W.'s sanctions "became defunct" when he did not reenroll in Winter Quarter

6   2018.  ECF No. 131 at 4.  However, in the letter addressed to R.W. on April 20,

7   2017, Mr. Reagan simply states that R.W.'s "sanctions are as follows: [(1)

8   successful re-enrollment in the nursing program, (2) participation in mental health

9   counseling, and (3) completion  of a mental health evaluation in October of 2017]."

10  ECF No. 131 at 134.  The letter does not state that the sanctions are contingent on a

11  particular reenrollment date.  *Id.*  It appears from the record that the sanctions were

12  not removed until July 2021, approximately three years after the events at issue,

13  after the Ninth Circuit's decision was issued, and one month before Defendants

14  filed the instant motion.

15       The next issue is whether Defendants Ralph Reagan and Lee Thornton

16  reasonably could be expected to engage in the same allegedly wrongful behavior.

17  *See Adarand Constructors, Inc.*, 528 U.S. at 222 (requiring the party asserting

18  mootness to meet the heavy burden of demonstrating that the challenged conduct

19  cannot reasonably be expected to recur).  Mr. Reagan and Mr. Thornton contend

20  that they are incapable of engaging in the same behavior because Mr. Reagan lacks

21  the same sanction authority that he once had and Mr. Thornton no longer works at

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 25

CBC.  ECF No. 142  at 8–9.  Defendants cite no authority for the argument that the

relevant inquiry for voluntary cessation is on the individual actors' subsequent

authority rather than on the allegedly unlawful conduct.  Moreover, CBC's new

process for issuing sanctions,[9] seemingly instituted years after this litigation

commenced, leaves open the possibility that Mr. Reagan may regain his original

sanction authority.

The Court finds that Defendants have not met the high standard to establish

mootness.  *Rosebrock*, 745 F.3d at 971; *DeJohn*, 537 F.3d at 309 (3d Cir. 2008).

## C.  Redressability

In addition to mootness, Defendants argue that they cannot provide

redressability for the prospective relief sought because Lee Thornton no longer

works at CBC and Ralph Reagan lacks the authority to abrogate nursing program

requirements.  ECF No. 128 at 15.  The Court separately analyzes the current roles

and authority of Defendants Lee Thornton and Ralph Reagan.

1.  Former President Thornton and Possible Substitution

Beginning in November 2017, approximately six months before Plaintiff

filed his complaint, Rebekah Woods became CBC's President.  ECF No. 133 at 1.

Lee Thornton served as the Interim President before her, but he "is now retired and

is no longer employed" by CBC.  *Id.*  Therefore, Defendants argue that Lee

---

[9] *See supra* n.3 (citing ECF No. 131 at 1–2).

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 26

Thornton is incapable of providing the relief R.W. seeks.  ECF No. 128 at 15.  For support, Defendants point to one case within the Ninth Circuit where the official's connection to the challenged action was too attenuated to sufficiently redress the plaintiff's injuries.  *See id.* at 16 (citing *S.B. by & through Kristina B. v. Cal Dep't of Educ.*, 327 F. Supp. 3d 1218, 1235 (E.D. Cal. 2018)).  But in *S.B.*, the defendant in question lacked "any direct connection to the enforcement of the California Education Code such that any relief ordered against Brown would not redress Plaintiff's injuries."  327 F. Supp. 3d at 1235–36.  In this case, Lee Thornton was directly involved in the conduct at issue by (1) upholding Ralph Reagan's trespass order against R.W. on the Richland campus and (2) affirming the Student Conduct Board's decision to uphold the sanctions imposed.

Outside of the Ninth Circuit, Defendants note that courts have barred injunctive relief against parties who lost a connection to the plaintiff's claims.  *See* ECF No. 128 at 16 (citing *Randolph v. Rodgers*, 253 F.3d 342, 346 (8th Cir. 2001) (injunctive relief not available against four individually named defendants employed at a prison because plaintiff was transferred to a new prison); *Ashokkuma v. Elbaum*, 932 F. Supp. 2d 996, 1010 (D. Neb. 2013) (individual defendant who was no longer employed at university could not implement plaintiff's requested injunctive relief)).

In response, Plaintiff argues that he is entitled to automatically substitute current-President Rebekah Woods "in regard to the claims against Lee Thornton in

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 27

1    his official capacity." ECF No. 135 at 14. The Federal Rules of Civil Procedure

2    allow the automatic substitution of a public officer sued in an official capacity who

3    "dies, resigns, or otherwise ceases to hold office while the action is pending." Fed.

4    R. Civ. P. 25(d). "The court may order substitution at any time, but the absence of

5    such an order does not affect the substitution." *Id.* The decision to grant

6    substitution under Rule 25 is within the trial court's sound discretion. *In re Bernal*,

7    207 F.3d 595, 598 (9th Cir. 2000).

8          Defendants counter that Lee Thornton "was no longer a 'public officer' at

9    the time the lawsuit was initiated" so Rule 25 does not allow for the substitution of

10    Rebekah Woods into the lawsuit now. ECF No. 142 at 7 (citing *Schlumpberger v.*

11    *Osborne*, No. 0:16-cv-78-SRN-TNL, 2019 WL 927322, *3 (D. Minn. Feb. 26,

12    2019)). The *Schlumpberger* court denied substitution in line with other

13    jurisprudence suggesting a Rule 25(a)(1) substitution "cannot be ordered 'where

14    the person for whom substitution is sought died prior to being named a party.'"

15    2019 WL 927322, at *3 (citing *Lacy v. Tyson*, No. 1:07-cv-00381-LJO-GSA-PC,

16    2012 WL 4343837, at *2 (E.D. Cal. Sept. 20, 2012)). But the reason for denying

17    substitution in *Schlumpberger* and other cases like it can be distinguished from the

18    instant case, because "a dead man obviously cannot be named party defendant in

19    an action." *Chorney v. Callahan*, 135 F. Supp. 35, 36 (D. Mass. 1955); *see also*

20    *Laney v. South Carolina Dep't of Corrections*, No. CA 4:11-3287-JMC-TER, 2012

21

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 28

1  WL 4069680 (D.S.C. May 8, 2012) ("Obviously, a deceased person cannot be

2  served and respond to a lawsuit.").

3      Unlike defendants who died prior to the filing of a lawsuit, Mr. Thornton

4  was not only served, but he also answered the complaint against him.  Nowhere in

5  that answer does he dispute Plaintiff's ability to sue him in his official capacity for

6  "claims seeking prospective, injunctive relief."  ECF No. 12 at 2.  Therefore, this

7  Court is well within its discretion to allow for the substitution of Defendant

8  Rebekah Woods in her official capacity under Rule 25(d), which the Court does

9  allow.

10      2.  *Assistant Dean Reagan's Authority*

11      Separately, Defendants argue that Mr. Reagan "does not have the authority

12  to abrogate the nursing program requirements for R.W." or to reinstate him "into

13  the nursing program."  ECF No. 128 at 15 (citing ECF No. 133 at 2–3); *see also*

14  *Boglin v. Board of Trustees of Alabama Agricultural & Mechanical University*,

15  290 F. Supp. 3d 1257, 1265 (N.D. Ala. 2018) (*Ex parte Young* exception did not

16  apply to board of trustees' members who lacked authority to reinstate plaintiff's

17  employment).  In line with their mootness arguments, Defendants note that Mr.

18  Reagan "is no longer involved in issuing sanctions in cases where suspension

19  longer than ten days or expulsion is a possible outcome."  ECF No. 142 at 9 (citing

20  ECF No. 131 at 1).  This contention is inconsistent with Defendants' earlier

21  argument that R.W. was not suspended or expelled by Mr. Reagan in the first

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 29

1    place.  Regardless, Defendants do not indicate whether Mr. Reagan could provide

2    R.W.'s other requested relief, such as removing the failing grades from R.W.'s

3    transcript. Additionally, Defendants contend that R.W. abandoned his claim

4    against Mr. Reagan by not rebutting Defendants' assertion that Mr. Reagan lacks

5    authority to provide the requested relief.  ECF No. 142 at 7 (citing *Jenkins*, 398

6    F.3d at 1095 n.4).  Despite Plaintiff's lack of argument on the issue, material

7    questions of fact remain as to (1) the current scope of Mr. Reagan's sanction

8    authority should the Defendants' unlawful conduct recur, (2) the likelihood that

9    CBC's prior sanction process will be reinstated to restore Mr. Reagan's full

10    sanction authority, and (3) whether Mr. Reagan has the ability to expunge negative

11    information from R.W.'s academic records.

12        To summarize, Defendants fail to demonstrate that Plaintiff's § 1983 claims

13    against Mr. Thornton and Mr. Reagan are moot.  Multiple remedies remain for

14    Defendants' unlawful conduct, including reinstatement and expungement of

15    negative academic information.  Defendants' assertion that the sanctions became

16    defunct years ago is not supported by the record.  Moreover, the eleventh-hour

17    changes to CBC's sanction policies do not convince the Court that the unlawful

18    conduct cannot reasonably be expected to recur.  By her own admission, CBC

19    President Rebekah Woods may be capable of redressing Plaintiff's injuries, and

20    she can be substituted as a party-defendant in her official capacity for Lee

21    Thornton in his official capacity.  As to Mr. Reagan, material questions of fact

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 30

1  regarding the scope and changing nature of his authority render summary judgment

2  inappropriate.

3  **III.    Free Speech in the Higher Education Setting**

4          This Court already granted R.W.'s motion for summary judgment regarding

5  his First Amendment claim brought under § 1983.  *See* ECF No. 83.  After the

6  Court's order issued, the United States Supreme Court decided *Mahanoy*.  141 S.

7  Ct. 2038 (2021).  The *Mahanoy* decision notes that certain special characteristics

8  of public schools give "schools additional license to regulate speech . . . that takes

9  place off campus."  141 S. Ct. at 2045.  In reaching this conclusion, the Court

10  noted its prior reasoning that "schools have a special interest in regulating speech

11  that 'materially disrupts classwork or involves substantial disorder or invasion of

12  the rights of others.'"  *Id.* (quoting *Tinker v. Des Moines Independent Community*

13  *School Dist.*, 393 U.S. 503, 89 S. Ct. 733, 21 L. Ed. 2d 731 (1969)).  In light of

14  *Mahanoy*, Defendants ask this Court to reconsider its prior ruling that *Tinker* does

15  not apply in this case.  ECF No. 128 at 17–18.

16          At the outset, CBC concedes that the *Mahanoy* decision "did not explicitly

17  address the question of whether *Tinker* applied in the collegiate setting."  *Id.* at 18.

18  Nevertheless, Defendants argue that Justice Alito's concurrence "leaves open that

19  possibility," by recognizing the following:

20                  This case does not involve speech by a student at a public
                college or university.  For several reasons, including the
21                  age,  independence,  and  living  arrangements  of  such

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 31

students, regulation of their speech may raise very different questions from those presented here. I do not understand the decision in this case to apply to such students.

141 S. Ct. at 2049, n.2 (Alito, J., concurring).

As R.W. points out, Justice Alito's concurrence "strongly implies the opposite" of Defendants' contention. ECF No. 135 at 16. The recognition that "age" and "independence" are different in a university setting suggests that university students enjoy more First Amendment protections than school-age children. This is especially true given the *Mahanoy* majority's conclusion that the special characteristics of the school environment includes "the fact that schools at times stand *in loco parentis*, *i.e.*, in the place of parents." *Id.* at 2045 (citing *Bethel School Dist. No. 403 v. Fraser*, 478 U.S. 675, 684, 106 S. Ct. 3159, 92 L. Ed. 2d 549 (1986)). The doctrine of *in loco parentis* does not apply in the university setting for independent, young adults. Moreover, the applicability of the *in loco parentis* doctrine to a public high school setting in *Mahanoy* did not prevent the Court from ultimately concluding that the school violated the plaintiff-student's First Amendment rights regarding her speech off campus. *See id.* at 2047 (noting that the student's speech, though vulgar, "did not amount to fighting words" and was transmitted "through a personal cellphone, to an audience consisting of her private circle of Snapchat friends").

Not to be dissuaded, Defendants cite to other opinions that do apply the *Tinker* analysis in a collegiate setting.  ECF No. 128 at 18–20 (citing *Healy v. James*, 408 U.S. 169, 180, 189–91, 92 S. Ct. 2338, 33 L. Ed. 2d 266 (1972); *Doe v. Valencia Coll.*, 903 F.3d 1220, 1227 (11th Cir. 2018); *Keefe v. Adams*, 840 F.3d 523, 531 n.6 (8th Cir. 2016); *Castle v. Marquardt*, 632 F. Supp. 2d 1317, 1335–36 (N.D. Ga. 2009); *Murakowski v. Univ. of Delaware*, 575 F. Supp. 2d 571, 591 (D. Del. 2008)).  However, these cases do not align with the facts in this case.

In *Healy,* the Court made clear that, unlike K-12 schools, "the precedents of this Court leave no room for the view that . . . First Amendment protections should apply with less force on college campuses than in the community at large," especially given that the "college classroom . . . is peculiarly the 'marketplace of ideas.'"  408 U.S. at 180 (quoting *Keyishian v. Board of Regents*, 385 U.S. 589, 603, 87 S. Ct. 675, 17 L. Ed. 2d 629 (1967)).  The Court did conclude that student associations "need not be tolerated where they infringe reasonable campus rules, interrupt classes, or substantially interfere with the opportunity of other students to obtain an education."  *Id.* at 189.  However, the associational conduct at issue in *Healy* was occurring on campus, which is distinguishable from this case where R.W. made statements privately to his doctor while seeking medical treatment.

The circuit opinions that Defendants cite also contain important distinctions from the facts of this case.  In *Doe*, the plaintiff's alleged stalking behavior invaded the victim's rights "to be secure and to be let alone . . . from persistent

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 33

unwanted advances and related insults from another student." 903 F.3d at 1229–
30. R.W., in contrast, did not physically invade anyone else's rights. He made the
comments while seeking medical treatment.

In *Keefe*, the plaintiff was removed from a nursing program after receiving
complaints from fellow students about unprofessional posts on his personal
Facebook page. 840 F.3d at 525. Relevant there, the court found that plaintiff's
"threatening statements toward his colleagues had a direct impact on the students'
educational experience." *Id.* at 532. Even after the plaintiff was confronted by
administrators, "he evidenced no remorse for his actions." *Id.* at 533. Here, there
is no evidence that R.W.'s statements had any impact on his fellow students'
education experience, and R.W. expressed concern about his violent thoughts,
which this Court already found did not constitute true threats, to his private
healthcare provider, not on a public forum such as Facebook or Snapchat. He also
voluntarily submitted himself to inpatient treatment to address the problem and the
Lourdes crisis responder, Araceli Perez, noted that R.W. "seemed to be very
remorseful for his thoughts." ECF No. 137-1 at 4.

The district court decisions cited by Defendants also reveal notable
differences from the conduct at issue here. First, the *Castle* case involved a
student's retaliation claim based on her allegedly unlawful suspension for filing a
complaint about her instructors. 632 F. Supp. 2d at 1322. Applying *Tinker*, the
court concluded that the speech did not cause a "substantial disruption or material

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 34

interference with school activities." *Id.* at 1336 (quoting *Tinker*, 393 U.S. at 514). Here, the substantial disruption on CBC's campus stemmed from CBC's own decision to directly inform the instructors who were the subjects of R.W.'s troubling thoughts. ECF No. 37-10 at 2. R.W.'s private remarks to his doctor differ greatly from the student's direct interaction with university personnel in *Castle* or the posts made on a public website in *Keefe*.

Similarly, the location where the speech originated in *Murakowski* is distinguishable from this case. *See* 575 F. Supp. 2d at 574 (challenging the University of Delaware's disciplinary action after plaintiff posted allegedly threatening comments on a website maintained on the University's server). There, the court, in analyzing whether the message constituted a "true threat," noted that the recent events unfolding with the Virginia Tech shooting likely "factored into the University's response." *Id.* at 592. Nevertheless, the court ruled in favor of the student because the university failed to show that the student's articles "created disruption or significantly and adversely impacted the college community." *Id.*

Neither the Ninth Circuit nor the Supreme Court has signaled that *Tinker*'s "substantial disruption" test applies in university settings. In *Oyama v University of Hawaii*, 813 F.3d 850 (9th Cir. 2015), the court's ruling suggests the opposite. *See id.* at 863 (noting that (1) the university's "institutional responsibility," and not the pedagogical concerns of the student speech doctrine, is the reason the University regulated plaintiff's speech and (2) the "student speech doctrine fails to

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 35

1   account for the vital importance of academic freedom at public colleges and

2   universities").  Defendants counter that the speech in *Oyama*, "while perhaps

3   distasteful or controversial, is a far cry from the threats of violence made by R.W.

4   to attack three of his instructors."  ECF No. 142 at 10–11.  This Court already

5   decided that there "is no evidence supporting that R.W. ever intended or ever

6   expected that the statements that he made to his doctor for the purposes of medical

7   treatment would reach his instructors and intimidate them."  ECF No. 83 at 15.

8   The cases cited by Defendants do nothing to disrupt that finding.

9                                    **CONCLUSION**

10          The Court finds that Defendant CBC is entitled to immunity under the

11  Eleventh Amendment for R.W.'s §1983 claim.  However, Defendants Ralph

12  Reagan and Lee Thornton are not entitled to the same immunity because the *Ex*

13  *parte Young* doctrine applies.  Defendants' assertion that there is no "ongoing

14  violation" is inaccurate given that R.W. has not been reinstated and his transcript

15  still reflects negative information stemming from his disenrollment.  The

16  circumstances surrounding Defendants' "voluntary cessation" of the unlawful

17  sanctions suggests that the challenged conduct may recur.  Defendant Lee

18  Thornton's retirement does not preclude redressability because Rebekah Woods is

19  substituted as defendant under Federal Rule of Civil Procedure 25.  As to Ralph

20  Reagan, material questions of fact exist surrounding (1) his ability to provide

21  redressability in the form of removing R.W.'s negative academic information and

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY
JUDGMENT ~ 36

(2) the reach of his sanction authority if the unlawful conduct recurs.  Lastly, the Supreme Court's decision in *Mahanoy* does not provide a basis for reexamining the Court's previous finding on liability.

Accordingly, **IT IS HEREBY ORDERED**:

1.  Defendants' Motion for Partial Summary Judgment, **ECF No. 128**, is **GRANTED IN PART** with respect to Defendant Columbia Basin College only. Plaintiff's claim for injunctive relief under § 1983 against Defendant Columbia Basin College is **DISMISSED WITH PREJUDICE**.

2.  The remainder of Defendants' Motion for Partial Summary Judgment, **ECF No. 128**, is **DENIED**.

3.  Rebekah Woods is hereby substituted as party defendant in her official capacity for Defendant Lee Thornton in his official capacity.  Mr. Thornton remains a party defendant in his individual capacity in regard to Plaintiff's disability discrimination claim under Washington State law.

**IT IS SO ORDERED**.  The District Court Clerk is directed to enter this Order, enter judgment for Defendant Columbia Basin College only regarding Plaintiff's § 1983 claim for injunctive relief, amend the caption as noted above, and provide copies to counsel.

**DATED** November 19, 2021.

_s/ Rosanna Malouf Peterson_
ROSANNA MALOUF PETERSON
United States District Judge

ORDER RESOLVING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ~ 37