1  Bret Uhrich, WSBA #45595
2  Abigail Cybula, WSBA #59063
   Walker Heye Meehan & Eisinger, PLLC
3  1333 Columbia Park Trail, Ste 220
   Richland, WA  99352
4  Telephone: (509) 735-4444
5  Attorneys for Plaintiff

6

7

8

9              UNITED STATES DISTRICT COURT

10             EASTERN DISTRICT OF WASHINGTON

11

| | |
|---|---|
| 12  R.W., individually and on behalf of his marital community, | Cause No.  4:18-cv-05089-MKD |
| 14                               Plaintiff, | MOTION FOR PARTIAL SUMMARY JUDGMENT |
| 15  v. | |
| 16  COLUMBIA BASIN COLLEGE, a public institution of higher education,; REBEKAH WOODS, in her official capacity; and RALPH REAGAN, in his individual and official capacities, | |
| 20                             Defendants. | |

21

22        COMES NOW, R.W., by and through his attorneys, and moves the Court to

23  determine that Defendants are liable for violation of R.W.'s First Amendment rights

24  as a matter of law. This motion is brought pursuant to Fed. R. Civ. P. 56 and is

25  supported by the record herein.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## I.   SUMMARY OF THE ARGUMENT AND REQUESTED DETERMINATION ON SUMMARY JUDGMENT

There has been a substantial amount of argument before this Court in prior motion practice in the past six years. *See e.g. ECF No. 31; ECF No. 36; ECF No. 128; ECF No. 135; ECF No. 285; ECF No. 293*. The matter has twice been argued before the Ninth Circuit. Counsel for R.W. does not intend through the content of this motion to unnecessarily repeat arguments that the Court is familiar with. The framework of liability in this matter is straightforward. It is undisputed that R.W. only engaged in speech and did not engage in any conduct in furtherance of his violent ideations. It is also undisputed that Defendants sanctioned R.W. based on this speech to his medical providers. To avoid liability for violation of R.W.'s First Amendment rights, Defendants would need to be able to demonstrate one of two things:

1. That R.W.'s speech is not protected under the First Amendment; or

2. Defendants' finding of misconduct by R.W. and imposition of sanctions upon R.W. does not constitute adverse action.

A conclusion as to the second prong would require the Court to ignore the finding of misconduct by the Student Conduct Officer and the regulatory framework

WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P:  509.735.4444
F:  509.735.7140

under Wash. Admin. Code § 132S-100 (2016).[1] Such a conclusion would further require the Court to upend innumerable cases in the fields of student speech, employment discrimination, public employee speech, and prisoner speech to reach the conclusion that the finding of misconduct and imposition of sanctions does not constitute adverse action. A conclusion that R.W.'s speech to his medical providers is unprotected is no less worrisome.

To the extent that the Court does not conclude liability as a matter of law on both elements, R.W. requests the Court at least conclude that Defendants' finding that R.W. violated the student code of conduct and imposition of sanctions constitutes adverse action for the purposes of the First Amendment analysis.

## II.    FACTS

R.W. was a student enrolled at the nursing program at Columbia Basin College (CBC) in the Winter Quarter of 2017 and was in good standing. *ECF No. 37-34, pgs. 5-6.* In February of 2017, R.W. saw an increase in the frequency of his

---

[1] In preparing this motion, counsel for R.W. discovered that Wash. Admin. Code § 132S-100 was substantially revised effective January 9, 2020, after the incidents giving rise to this case occurred. Wash. St. Reg. 20-03-046. As the incident giving rise to this matter occurred in March of 2017, the prior code provisions are controlling.

WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

epileptic seizures which he attributed to stress.  *ECF No. 37-24, pg. 5*; *ECF No. 37-12, pg. 1.*  These symptoms led to R.W. experiencing trouble sleeping and insomnia.  *Id.*  On February 28, 2017, R.W. contacted his primary care physician Dr. Michael Cabasug because R.W. was having trouble with insomnia and was having violent thoughts regarding his instructors at CBC.  *ECF No. 37-12, pg. 1*; *ECF No. 37-22, pg. 10.*  R.W. was scheduled for an appointment on March 6, 2017.  *ECF No. 37-24, pg. 5.*  From February 28, 2017 to March 6, 2017, R.W. attended classes at CBC with no issues and did not mention these thoughts to anyone at CBC or elsewhere.  *ECF No. 37-12, pg. 1; ECF No. 37-8, pgs. 6; 14*; *ECF No. 37-25, pg. 1*; *ECF No. 37-26, pg. 3.*

R.W. met with Dr. Cabasug on March 6, 2017 and informed his physician of his thoughts about hurting his instructors.  *ECF No. 37-12, pg. 1*; *ECF No. 37-24, pg. 5.* While at Dr. Cabasug's office, R.W. met with a representative of Lourdes and thereafter voluntarily admitted himself to Lourdes Transition Center for inpatient mental health treatment.  *Id*; *ECF No. 37-27, pgs. 3-4.*

When CBC learned of R.W.'s speech with his medical providers, in commenced disciplinary proceedings against R.W. for violation of the student code of conduct. On April 20, 2017, Reagan issued decision that "found [R.W.] responsible for violating [CBC's] policy on Abusive Conduct (WAC 132S-100-205)." *ECF No. 37-16, pgs. 1-2.*

MOTION FOR SUMMARY JUDGMENT - 4

**WAC 132S-100-205 Abusive conduct.**
Physical and/or verbal abuse, threats, intimidation, harassment, online harassment, coercion, bullying, cyberbullying, retaliation, stalking, cyberstalking, and/or other conduct which threatens or endangers the health or safety of any person or which has the purpose or effect of creating a hostile or intimidating environment.

*ECF No. 37-16, pgs. 1-2*. In making this finding, Reagan explained the violation as follows:

> As per our conversation at the meeting, you explained that you had homicidal thoughts due to stress and lack of sleep with the possibility of medication being a factor. When you had homicidal thoughts you immediately contacted your primary care doctor because you were concerned. Your doctor recommended that you go to Crisis Response and you were voluntarily admitted to Lourdes. I understand that the result of your behavior was not to create a hostile or intimidating environment, but it had the same effect. Therefore you are found responsible for violating our policy on Abusive Conduct.

*Id.* The decision imposed sanctions against R.W. requiring R.W. to give permission to Reagan to speak with R.W.'s counselors, prevented R.W. from re-enrolling at the college until after October 2017, and maintaining his trespass in regard to the Richland campus until in re-enrolled at the college. The decision was upheld by CBC President Lee Thorton as the final decisionmaker. *ECF No. 37-20, pgs. 1-4*; Wash. Admin. Code § 132S-100-415(5)(c)(iii) (2016).

As a consequence of the disciplinary process, R.W. was failed in each of his classes for the Winter 2017 quarter. *ECF No. 139, pgs. 2-3*. Per the nursing program rules, as R.W. had a previous absence from the program, he would need to reapply for admission to the nursing program and restart the program from the beginning.

WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P:  509.735.4444
F:  509.735.7140

*ECF 47-12, pg. 2*; *ECF No. 139, pgs. 2-3*. When R.W. sought confirmation that this was the case, Reagan declined to answer R.W.'s question after Reagan consulted with CBC's vice presidents. *ECF No. 47-12, pgs. 1; 3*. Mary Hoerner and later President Rebekah Woods both confirmed that only the president of CBC would have the authority to override the nursing program provisions. *ECF No. 34, pg. 2*; *ECF No. 133, pg. 3*. President Woods explicitly stated that she had not chosen to override these provisions declined to commit to doing so. *ECF No. 133, pg. 3*.

## III.    ARGUMENT

### A.    The Imposition Of Sanctions As "Disciplinary Action" On R.W. Constitutes Adverse Action Based On His Speech In Violation Of The First Amendment.

The Court should conclude that Defendants' finding R.W. engaged in misconduct and the imposition of sanctions R.W. constitutes adverse action for the purposes of the First Amendment. Except in the cases of "well-defined and narrowly limited classes of speech," content-based regulation of speech by government actors is presumptively unconstitutional. *Chaplinsky v. New Hampshire*, 315 U.S. 568, 571–572 (1942); *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). This puts Defendants in a bind as there is no dispute that the basis for the finding of misconduct and imposition of sanctions on R.W. was based on the content of his speech. *Eisinger Decl. at Exhibit P, ECF No. 37-16, pgs. 1-2*. Perhaps recognizing that the categorization of R.W.'s speech as unprotected is a daunting task, Defendants have

WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P:  509.735.4444
F:  509.735.7140

shifted to a theory that a finding of misconduct and imposition of sanctions isn't adverse action. *ECF No. 285, pg. 5*.

This theory does not work in the context of the regulatory framework governing the student conduct process at CBC and it does not work in the context of First Amendment case law. Analysis of what constitutes adverse action in regard to protected First Amendment speech usually arises from retaliation claims, often based on public employment or student discipline. "The precise nature of the retaliation is not critical to the inquiry in First Amendment retaliation cases. The goal is to prevent, or redress, actions by a government employer that 'chill the exercise of protected' First Amendment rights." *Coszalter v. City of Salem*, 320 F.3d 968, 974–75 (9th Cir. 2003) (*citing Rutan v. Republican Party*, 497 U.S. 62, 73 (1990)). A school suspending a student from the basketball team is adverse action. *Pinard v. Clatskanie Sch. Dist. 6J*, 467 F.3d 755, 770 (9th Cir. 2006). Imposing a 12-hour notice rule on a state legislator before coming to the state capitol may be an adverse action. *Boquist v. Courtney*, 32 F.4th 764, 777 (9th Cir. 2022). Maintaining records of sanctions in a student's records is adverse action. *See LaVine v. Blaine Sch. Dist.*, 257 F.3d 981, 992 (9th Cir. 2001). Only the most minor of actions such as "counseling-only chronos" issued to prisoners for "minor misconduct recurs after verbal counseling or if documentation of minor misconduct is needed" and that carry no disciplinary consequences fall below the threshold of adverse action. *Jenkins v.*

WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P:  509.735.4444
F:  509.735.7140

*Caplan*, No. C 02-5603 RMW PR, 2010 WL 3742659, at *2 (N.D. Cal. Sept. 16, 2010) (unpublished).

In addition to the case law, CBC's own regulations make it undeniable that the student code of conduct process is a disciplinary process. The only jurisdiction of the Student Conduct Officer and the Student Code of Conduct is to engage in "disciplinary action." Wash. Admin. Code § 132S-100-200 (2016).  "Disciplinary action" is "[t]he sanctioning of any student pursuant to WAC 132S-100-430 for the violation of any designated rule or regulation of the college, including rules of student conduct, for which a student is subject to adverse action." Wash. Admin. Code § 132S-100-030 (2016). The student conduct process only provides for three outcomes: (1) termination of the proceedings; (2) imposition of "disciplinary sanctions as provided herein"; or (3) referral to the student conduct board. Wash. Admin. Code. § 132S-100-400(4) (2016). The face of April 20, 2017 letter makes it clear that the decision's finding of misconduct and imposition of sanctions falls under Wash. Admin. Code § 132S-100-400(4)(a)(ii).

The sanctions permissible upon a finding a student violated the student code of conduct are set forth in Wash. Admin. Code. § 132S-100-430 (2016):

> The following sanctions may be imposed upon any student found to have violated the student code of conduct:
> (1) Warning. […]
> (2) Reprimand. […]
> (3) Loss of privileges. Denial of specified privileges for a designated period of time.

WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P:  509.735.4444
F:  509.735.7140

(4) Restitution. […]

(5) Discretionary sanctions. Work assignments, essays, service to the college, or other related discretionary assignments.

(6) Disciplinary probation. Formal action placing conditions upon the student's continued attendance for violations of college rules or regulations or other failure to meet the college's expectations within the student code of conduct. Written notice of disciplinary probation will specify the period of probation and any condition(s) upon which his/her continued enrollment is contingent. Such conditions may include, but not be limited to, adherence to terms of a behavior contract or limiting the student's participation in extra-curricular activities or access to specific areas of the college's facilities. Disciplinary probation may be for a specified term or for an indefinite period which may extend to graduation or other termination of the student's enrollment in the college.

(7) Suspension. Separation of the student from the college for a definite period of time, after which the student is eligible to return. Students who are suspended may be denied access to all or any part of the campus or other facilities during the duration of the period of suspension. Additionally, conditions for readmission may be specified.

(8) Expulsion. Permanent separation of the student from the college. Students who are expelled may be denied access to all or any part of the campus or other facilities permanently.

(9) Revocation of admission and/or degree. […]

(10) Withholding degree. […]

(11) Professional evaluation. Referral for drug, alcohol, psychological or medical evaluation by an appropriately certified or licensed professional may be required. The student may choose the professional within the scope of practice and with the professional credentials as defined by the college. The student will sign all necessary releases to allow the college access to any such evaluation. The student's return to college may be conditioned upon compliance with recommendations set forth in such a professional evaluation. If the evaluation indicates that the student is not capable of functioning within the college community, the student will remain suspended until future evaluation recommends that the student is capable of reentering the college and complying with the student code of conduct.

(12) Delayed suspension. A probationary amount of time set by the SCO, SCB, SAB, or president in which the student must remain on good terms with the student code of conduct. If the student is found

WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P:  509.735.4444
F:  509.735.7140

responsible for violating the student code of conduct while still under the delayed suspension guidelines, then the student will be suspended, as set forth in subsection (7) of this section, for their next violation of the student code of conduct.

At no point have Defendants argued that the Reagan's finding that R.W. violated the student code of conduct or his imposition of sanctions on R.W. were *ultra vires* or beyond his jurisdiction as the student conduct officer. As R.W. has set forth before, the sanctions imposed on R.W. meets the definition of a suspension in Wash. Admin. Code. § 132S-100-430. The Ninth Circuit recognized that "officials have thus effectively expelled R.W. from the nursing program regardless of their chosen terminology." *R. W. v. Columbia Basin Coll.*, 77 F.4th 1214, 1226 (9th Cir. 2023). As a matter of law, R.W. was subjected to adverse action based on his speech. As a result, the Court should grant the motion for summary judgment establishing liability.

**B.     The Student Speech Doctrine Does Not Apply To Higher Education And *Oyama's* Framework Regarding Pedagogical Speech In Conjunction With Student Teacher Placement Is Inapplicable To R.W.'s Off-Campus To His Medical Providers.**

The Court should conclude that the substantial disruption test for student speech does not apply in higher education. The framework has not been adopted by the Ninth Circuit despite repeated invitations to do so. *Brown v. Li*, 308 F.3d 939 (9th Cir. 2002); *Oyama v. Univ. of Hawaii*, 813 F.3d 850 (9th Cir. 2015). The Supreme Court has explained that this doctrine arises from the school serving as *in*

MOTION FOR SUMMARY JUDGMENT - 10

*loco parentis* on behalf of minor students. *Mahanoy Area Sch. Dist. v. B. L. by & through Levy*, 141 S. Ct. 2038, 2045 (2021). The doctrine of *in loco parentis* does not apply when the person is an adult. *See Planned Parenthood of Cent. Missouri v. Danforth*, 428 U.S. 52, 75 (1976).

Notwithstanding these subsequent cautions from the Supreme Court, Defendants continue to argue that the decision in *Oyama* allows CBC to punish R.W. for his speech. *ECF No. 285, pgs. 16-18*. It does not. *Oyama* is about curricular speech undertaken in response to classroom activities. *Oyama*, 813 F.3d at 856. In one assignment, Oyama expressed his opinion that online child predation should be legal. *Id*. When his instructor asked Oyama about this, Oyama acknowledged that he would be required to report such activities under state law and that he would do so, but believed that it would be fine for a twelve-year-old student to have a consensual relationship with a teacher. *Id*. In a separate classroom discussion, Oyama stated that he did not believe there were benefits for mentally disabled students to be included in regular classrooms. *Id*. at 856-57. In response to a related assignment, Oyama wrote that 90% of the special education students he encountered were fakers, and doubted that such disabilities were medically-based neurological decisions. *Id*. at 857. In conjunction with these statements, Oyama was also rated as providing an unacceptable performance on his field experience evaluation forms. *Id*.

WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P:  509.735.4444
F:  509.735.7140

As a result of these matters, Oyama's application into the student teaching program was denied. *Id.*

Despite the clear curricular nature of these statements, the Ninth Circuit nevertheless decided that the Supreme Court's decision regarding pedagogical speech would not be extended into higher education. *Id.* at 864-65. Instead, the court upheld the denial as part of the certification decisions based on defined professional standards. *Id.* at 866-67.

In arguing that this is analogous to the sanctions imposed on R.W., Defendants argue that the punishment of R.W. was a credentialing decision regarding his suitability as a nursing student. *ECF No. 285, pg. 18*. This is a severe misreading of what professional "certification" describes. As explained in *Oyama*, professional certification means the school's evaluation of the substantive content of a student's academic work. *Oyama*, 813 F.3d at 866-67. Understandably, grading a student and ultimately determining whether the student has demonstrated sufficient aptitude requires evaluation of the content of student's speech, whether oral or written. *See id.* at 867 (*citing Axson–Flynn v. Johnson*, 356 F.3d 1277 (10th Cir. 2004)). The First Amendment largely does not prevent state actor teachers from discriminating against students who provide subjectively deficient answers in response to coursework, absent an impermissible motive. *Id.*

WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

As applied to the case before the Court, there is no serious argument that R.W.'s speech was curricular in nature. R.W. did not write about his aberrant thoughts in his response to a written assignment. R.W. did not answer an oral question in class by talking about his violent ideations. R.W. talked to his physician about his violent ideations at his physician's office in the context of seeking medical treatment. The court's decision in *Oyama* does not support Defendants' decision to find R.W. responsible for engaging in misconduct and imposing sanctions upon him. The Court should conclude that the student speech doctrine does not apply in higher education and conclude summary judgment on the issue of liability is appropriate.

## C.    R.W.'s Disclosure Of Violent Ideations To Appropriate Medical Providers For The Purpose Of Treatment Does Not Constitute A True Threat.

The Court should conclude that R.W.'s speech to his medical providers seeking treatment for violent ideations does not constitute a threat and cannot be considered an unprotected true threat under the First Amendment. A threat is "an expression of an intention to inflict evil, injury, or damage on another." *Planned Parenthood of Columbia/Willamette, Inc. v. Am. Coal. of Life Activists*, 290 F.3d 1058, 1075 (9th Cir. 2002) (*quoting United States v. Gilbert*, 884 F.2d 454, 457 (9th Cir.1989)). True threats are 'serious expression[s]' conveying that a speaker means to 'commit an act of unlawful violence.'" *Counterman v. Colorado*, 600 U.S. 66, 74 (2023) (*quoting Virginia v. Black*, 538 U.S. 343, 359 (2003). While the specific

WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

motive behind the speech may vary, a threat is for the purpose of making a person

fearful of physical harm for reasons such as intimidation or coercion. *Planned*

*Parenthood of Columbia/Willamette*, 290 F.3d at 1090 (*citing NAACP v. Claiborne*

*Hardware Co.*, 458 U.S. 886, 910 (1982)).

To demonstrate the definition of a "threat" as set forth in *Black* and *Planned*

*Parenthood* as well as the subjective scienter requirement under *Counterman*, the

Court should contrast the facts in this case with the facts of a decision cited

previously by Defendants in regard to the disability discrimination claims, *Mayo v.*

*PCC Structurals, Inc.*, 795 F.3d 941, 942 (9th Cir. 2015). In *Mayo*, Timothy Mayo

was an aircraft parts welder who believed his supervisor was bullying him and

making his work life miserable. *Id*. Mayo made comments to at least three employers

regarding the supervisor. He told one employee he felt like bringing a shotgun to

work and blowing off the head of the supervisor, but explained to the other employee

that she need not worry because Mayo would do this on a shift when she wasn't

working. *Id*. Mayo told another employee multiple times he planned to come to work

during the day shift to take out the managers. *Id*. Mayo told a third co-worker that

he wanted to bring a gun to work and start shooting people and that he would do so

at 1:30pm because that is when the supervisors have their walk-throughs. *Id*. When

law enforcement asked Mayo if he planned to go to work and start shooting people,

Mayo responded "not tonight." *Id*. at 943. Throughout the decision concluding that

WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

the employer did not violate Mayo's rights as a disabled individual, the court correctly identifies these statements as threats. *Id*. at 944-47.

Applying the definition of threat *Planned Parenthood of Columbia/Willamette, Inc.* to the facts in *Mayo*, the opinion demonstrates that Mayo's speech was an expression of intention to inflict injury to his supervisor. *Planned Parenthood*, 290 F.3d at 1075; *Black*, 538 U.S. at 359; *Mayo*, 795 F.3d at 942. The motivation for Mayo's speech appears to have been a desire to engage in retribution against the supervisor for bullying him and making his life miserable. *Mayo*, 795 F.3d at 940; 942.

Under the subjective component of true threats set forth in *Counterman*, Mayo's speech to his co-workers demonstrates a conscious disregard for the fact that the speech would put them in fear not only for the supervisor's life, but that they could get caught in the line of fire. *Counterman*, 600 U.S. at 79; *Mayo*, 795 F.3d at 942. According to the Defendants in this case, there is no substantive distinction between actions surrounding Mayo's speech and R.W.'s speech.

When Mayo suffered from violent ideations regarding his supervisor, he told multiple employees that he wanted to shoot his supervisor with a gun. Mayo did not appear to express that these thoughts were undesirable or indicate that he was seeking medical intervention to treat these manifestations of his mental illness.

WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

In contrast, R.W. realized that he was having aberrant thoughts in the context of insomnia during a period of time where he was experiencing frequent epileptic seizures. *ECF No. 37-24, pg. 5*; *ECF No. 37-12, pg. 1*. R.W. contacted his primary care physician to seek treatment for these symptoms. *ECF No. 37-12, pg. 1*. In the week between R.W. recognizing these symptoms and being able to see his physician, R.W. did not take any actions in furtherance of these aberrant thoughts and did not mention them to anyone at CBC or elsewhere. *ECF No. 37-12, pg. 1*; *ECF No. 37-8, pgs. 6; 14*; *ECF No. 37-25, pg. 1*; *ECF No. 37-26, pg. 3*. It is also worth noting that it is only counsel for Defendants who is attempting to argue that R.W.'s speech to his medical providers constituted a threat and that R.W. was sanctioned based on threats of violence. Defendants themselves admitted that the speech was not punished as a threat of violence. *ECF No. 54-2, pgs. 12-13*.[2] There is no evidence to support the proposition that R.W.'s speech to his medical providers was undertaken

---

[2] While Defendants have argued that R.W.'s speech was not a threat for the purposes of the student code of conduct while remaining a true threat for the purposes of First Amendment analysis, *ECF No. 294, pg. 8*, it is worth noting that "threats" is not a defined term within Wash. Admin. Code § 132S-100. It would be strange indeed for the colloquial definition of threat to be less expansive than the Constitutional test for true threats.

MOTION FOR SUMMARY JUDGMENT - 16

WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

in a manner where he was consciously disregarding the prospect that this speech would cause imminent fear of harm to his teachers. His speech was not reflecting an intention to inflict evil upon another, but a desire to seek medical treatment to alleviate the aberrant thoughts.

In protest of the Supreme Court in *Counterman* acknowledging the requirement of a subjective scienter for a true threat, Defendants ask this Court not to apply the case retroactively and instead restrain itself to the Ninth Circuit's previous expression of uncertainty whether a true threat requires a subjective scienter in the civil context.[3] *ECF No. 294, pg. 8*. The Ninth Circuit has expressed such uncertainty. *See e.g. Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 746 (9th Cir. 2021); *Boquist v. Courtney*, 32 F.4th 764, 781 n. 6. (9th Cir. 2022). However, the criminal/civil distinction is not supported by Supreme Court case law. As noted in the *Counterman* decision itself, the Supreme Court appears to reject such a

---

[3] Constitutional decisions and retroactivity only apply in the context of monetary damages claims and qualified immunity as the inquiry is whether the law was "clearly established at the time of the" alleged Constitutional infringement. *See Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Because the claim before the Court is for prospective injunctive relief, retroactivity of the *Counterman* decision is not a relevant consideration.

WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

distinction. *See Counterman*, 600 U.S. at 76. "But still, the First Amendment precludes punishment, <u>whether civil or criminal</u>, unless the speaker's words were 'intended' (not just likely) to produce imminent disorder." *Id*. (*citing Hess v. Indiana*, 414 U.S. 105, 109 (1973) (emphasis added)). Following this explanation of incitement, the decision provides that "<u>[t]he same reasoning counsels in favor of requiring a subjective element in a true-threats case</u>." *Counterman*, 600 at 77 (emphasis added). The Supreme Court does not recognize a civil/criminal distinction for true threats analysis and neither should this Court. Because R.W.'s speech does not constitute a true threat, the Court should conclude that Defendants violated R.W.'s rights under the First Amendment.

## IV.   CONCLUSION

Defendants' position in this case is a version of the politician's syllogism. Something must be done. This is something. Therefore, the something that we did must be permissible. While this reasoning may support government action in numerous other contexts, the First Amendment prevents the government from taking adverse action against a person based on their speech except in narrow circumstances. "The First Amendment itself reflects a judgment by the American people that the benefits of its restrictions on the Government outweigh the costs." *United States v. Stevens*, 559 U.S. 460, 470 (2010). Here, it is undisputed that Defendants undertook adverse actions against R.W. based on his speech. The

WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P:  509.735.4444
F:  509.735.7140

conclusion that R.W.'s speech to his medical providers in the context of seeking medical treatment is unprotected would be a stunning expansion of the state's ability to regulate and chill speech. It is without precedent. As a result, the Court should grant the motion for summary judgment and conclude that Defendants violated R.W.'s rights under the First Amendment as a matter of law.

DATED this 1st day of April, 2024.

s/Bret Uhrich
Bret Uhrich, WSBA #45595
Abigail Cybula, WSBA #59063
Attorneys for Plaintiffs
Walker Heye, PLLC
1333 Columbia Park Trail, Ste 220
Richland, WA 99352
Telephone: (509) 735-4444
Fax: (509) 735-7140
E-mail: buhrich@walkerheye.com
        acybula@walkerheye.com

WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P:  509.735.4444
F:  509.735.7140

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## CERTIFICATE OF SERVICE

I hereby certify that on this 1st day of January 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

Nicholas Ulrich: nicholas.ulrich@atg.wa.gov


*s/ Bret Uhrich*
Bret Uhrich

MOTION FOR SUMMARY JUDGMENT - 20