Bret Uhrich, WSBA #45595
Abigail Cybula, WSBA #59063
Walker Heye Meehan & Eisinger, PLLC
1333 Columbia Park Trail, Ste 220
Richland, WA  99352
Telephone: (509) 735-4444
Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| R.W., individually and on behalf of his marital community, | Cause No.  4:18-cv-05089-MKD |
| Plaintiff, | REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT |
| v. | |
| COLUMBIA BASIN COLLEGE, a public institution of higher education,; REBEKAH WOODS, in her official capacity; and RALPH REAGAN, in his individual and official capacities, | |
| Defendants. | |

As the Court may have observed, college campuses and universities are currently facing the difficulties that come with being a state actor and separating protected speech under the First Amendment from unprotected conduct. These difficulties are not new, nor unique. The content of speech within protests and similar

demonstrations is protected under the First Amendment. *Brandenburg v. Ohio*, 395 U.S. 444, 445 (1969); *Kessler v. City of Charlottesville, Virginia*, No. 3:17CV00056, 2017 WL 3474071, at *1 (W.D. Va. Aug. 11, 2017) (unpublished). Unlawful conduct is not protected under the First Amendment, even when undertaken in furtherance of the speaker's message. *See Zurcher v. Stanford Daily*, 436 U.S. 547, 550 (1978) (upholding search warrant directed to university newspaper for film and pictures relating to Stanford protest where protesters barricaded the university hospital building and assaulted police officers who entered the building). In this case, it is undisputed that R.W. only engaged in speech and not conduct. Yet, Defendants continually minimize the protections of the First Amendment in regard to speech.

This begins with the Supreme Court's seminal case on the First Amendment rights of students in higher education, *Healy v. James*. 408 U.S. 169 (1972). *Healy* arises from Central Connecticut State College's decision to not recognize a local chapter of the Students for Democratic Society (SDS) which formed at the college. *Id*. at 170-71. By the time of the student's petition, the national SDS leadership was overtaken by a group later to be known as the Weather Underground. David Horowitz, *Leftwing Fascism and the American Dream*, 22 Wm. Mitchell L. Rev. 467, 468 (1996); Burrough, Brian. *Days of Rage: America's Radical Underground, the FBI, and the Forgotten Age of Revolutionary Violence, pgs. 68-70*. New York: Penguin Random House, 2015.

On April 24, 1970, the District Court of Connecticut entered a memorandum decision based on stipulated facts finding the college in denying the group's recognition had deprived the students of their rights under the First, Fifth and Fourteenth Amendments. *Healy v. James*, 311 F. Supp. 1275, 1277 (D. Conn.), *supplemented*, 319 F. Supp. 113 (D. Conn. 1970), *aff'd*, 445 F.2d 1122 (2d Cir. 1971), *rev'd*, 408 U.S. 169. Approximately a month before this decision was rendered, a townhouse in Greenwich Village exploded where the Weather Underground was building explosives to detonate at an upcoming non-commissioned officers dance at Fort Dix, killing three people. Rudd, Mark. *Underground, My Life with the SDS and the Weatherman, pg. 196*. New York: Harper Collins, 2009; *see also Boudin v. Thomas*, 543 F. Supp. 686, 691 (S.D.N.Y. 1982) ("Boudin was under investigation for involvement in a 1970 Greenwich Village bomb explosion, her association with the Weather Underground, her ten-year fugitive status and the present charges against her…").

After the college granted the group an evidentiary hearing, the district court upheld the decision to deny the group recognition, which was affirmed by the Second Circuit. *Healy*, 319 F. Supp. 113; 445 F.2d 1122. When asked about SDS' reputation for campus disruption, the student group members declined to adhere to campus rules, such as refraining from disrupting classes on campus. 408 U.S. at 173. On June 26, 1972, the Supreme Court issued its opinion reversing the district court and

Second Circuit, concluding the college's denial of the group's recognition violated the student's rights under the First Amendment. *Id*. at 194. By the time the decision was issued, domestic terrorist bombings by groups such as the Weather Underground were a frequent occurrence. *See All. to End Repression v. City of Chicago*, 742 F.2d 1007, 1015 (7th Cir. 1984) (*citing* Motley, *US Strategy to Counter Domestic Political Terrorism 16* (1983)) ("Between 1970 and 1980, domestic terrorist organizations committed more than 400 bombings in the United States."). These extreme circumstances did not overcome the students' rights under the First Amendment.

> We note, in so holding, that the wide latitude accorded by the Constitution to the freedoms of expression and association is not without its costs in terms of the risk to the maintenance of civility and an ordered society. Indeed, this latitude often has resulted, on the campus and elsewhere, in the infringement of the rights of others. Though we deplore the tendency of some to abuse the very constitutional privileges they invoke, and although the infringement of rights of others certainly should not be tolerated, we reaffirm this Court's dedication to the principles of the Bill of Rights upon which our vigorous and free society is founded.

*Healy*, 408 U.S. at 194.

The Supreme Court has not retreated from the broad understanding of protections under the First Amendment for speech. The decision in *Healy* was discussed extensively in *N.A.A.C.P. v. Claiborne Hardware Co.*, which in turn was discussed in the Court's recent decision *Counterman v. Colorado*. 458 U.S. 886, 918 (1982); 600 U.S. 66, 76. In *Claiborne*, a local chapter of the NAACP voted to

boycott white merchants in Port Gibson, Mississippi, after county officials refused to address citizens' demand for racial equality and recognition. *Claiborne Hardware Co.*, 458 U.S. at 889. The boycott was enforced by citizens who stood outside the businesses to identify those who did not respect the boycott. *Id*. at 903. "The names of persons who violated the boycott were read at meetings of the Claiborne County NAACP and published in a mimeographed paper entitled the 'Black Times.'" *Id*. at 903-904. Charles Evers, the field secretary of the NAACP, told the crowd during a speech "[i]f we catch any of you going in any of them racist stores, we're gonna break your damn neck…," and "warned that the Sheriff could not sleep with boycott violators at night." *Id*. at 903. These allusions to violence were not illusory. Boycott breakers had bullets shot into their homes, bricks thrown through their car windows, had their property stolen, and were assaulted. *Id*. at 904-05. The merchants brought an action against Evers, the NAACP, and 146 individual defendants. *Id*. at 889-90. After an eight-month trial, the court found liability as all but 18 of the named defendants, the majority of which was upheld on appeal by the Mississippi Supreme Court. *Id*. at 893; 894-95.

The Supreme Court granted the petition for certiorari. *Id*. at 896. The merchants asked the Court to affirm the decision, arguing "Charles Evers may be held liable because he 'threatened violence on a number of occasions against boycott breakers.'" *Id*. at 898. The Court rejected this argument, noting that "[t]he

emotionally charged rhetoric of Charles Evers' speeches did not transcend the bounds of protected speech set forth in *Brandenburg*." *Id.* at 928.

While *Claiborne* is an incitement case, the application of incitement jurisprudence informs the analysis of true threats. This is evident not only based on logic, but also based on the discussion of *Claiborne* in *Counterman*. *Counterman*, 600 U.S. at 76. "[T]he First Amendment precludes punishment, <u>whether civil or criminal</u>, unless the speaker's words were 'intended' (not just likely) to produce imminent disorder." *Id.* (*citing Hess v. Indiana*, 414 U.S. 105, 109 (1973) (emphasis added). Under Defendants' restrictive theory of the First Amendment, Evers' speech would be unprotected by the First Amendment – direct threats of violence precipitated by actual violence. *Cf United States v. Bagdasarian*, 652 F.3d 1113, 1115 (9th Cir. 2011) ("Re: Obama fk the [n-word], he will have a 50 cal in the head soon" and (2) "shoot the [abbreviated n-word]" were not criminal threats under 18 U.S.C. § 879(a)(3)).

It would be one thing if the Supreme Court had recognized a special limitation for speech by college students. However, the Supreme Court has said the exact opposite:

> [T]he precedents of this Court leave no room for the view that, because of the acknowledged need for order, First Amendment protections should apply with less force on college campuses than in the community at large. Quite to the contrary, '(t)he vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools.' *Shelton v. Tucker*, 364 U.S. 479, 487 (1960).

WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

*Healy*, 408 U.S. at 180. As these cases demonstrate, we do not live in unique times nor is an acute need to rethink the protections of the First Amendment based on emerging circumstances. R.W. had concerning thoughts which he spoke about with his physician to seek treatment. Defendants punished R.W. for his speech. These are the undisputed facts of this case. To conclude that this speech is not protected by the First Amendment would be a shocking constriction of civil rights guaranteed under the Constitution. As a result, the Court should grant R.W.'s motion for summary judgment and deny Defendants' motion for summary judgment.

DATED this 6th day of May, 2024.

s/Bret Uhrich
Bret Uhrich, WSBA #45595
Abigail Cybula, WSBA #59063
Attorneys for Plaintiffs
Walker Heye, PLLC
1333 Columbia Park Trail, Ste 220
Richland, WA 99352
Telephone: (509) 735-4444
Fax: (509) 735-7140
E-mail: buhrich@walkerheye.com
acybula@walkerheye.com

REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 7

WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P: 509.735.4444
F: 509.735.7140

1

CERTIFICATE OF SERVICE

2

I hereby certify that on this 6th  day of May 2024, I electronically filed the

3

foregoing with the Clerk of the Court using the CM/ECF System which will send

4

notification of such filing to the following:

5

6

Nicholas Ulrich: nicholas.ulrich@atg.wa.gov

7

8

*s/ Bret Uhrich*

9

Bret Uhrich

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

REPLY IN SUPPORT OF MOTION FOR
SUMMARY JUDGMENT - 8

WALKER HEYE, PLLC
1333 Columbia Park Trail, Suite 220
Richland, WA 99352
P:  509.735.4444
F:  509.735.7140