HONORABLE MARY K. DIMKE

CARL P. WARRING, #27164
ANDREW D. BROWN, #58477
Evans, Craven & Lackie, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632
Attorneys for Defendants

# IN UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| R.W., individually and on behalf of his marital community,<br><br>                  Plaintiffs,<br>vs.<br><br>COLUMBIA BASIN COLLEGE, a public institution of higher education, RALPH REAGAN, in his official and individual capacities, LEE THORNTON, in his individual capacity, REBEKAH WOODS, in her official capacity<br><br>                  Defendants. | Cause No. 4:18-05089-MKD<br><br>FINDINGS OF FACT, CONCLUSIONS OF LAW, & ORDER<br><br>**[DEFENDANT'S PROPOSED]** |

    This matter comes before the Court on a bench trial conducted on February 3, 2025. Plaintiff R.W. appeared and was represented by his attorneys Bret Ulrich and Abby Jacobs of Walker Heye, PLLC. Defendant Rebekah Woods, in her official capacity as the President of Columbia Basin College, appeared and was represented by her attorneys Carl Warring and Andrew Brown

FINDINGS OF FACT, CONCLUSIONS OF
LAW, & ORDER - page 1
[DEFENDANT'S PROPOSED]



818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

of Evans, Craven, & Lackie, P.S. Having considered the testimony of the witnesses at trial, the exhibits admitted into evidence at trial, and the remainder of the file, the Court enters the following findings of fact, conclusions of law, and order.

### DECISION SUMMARY

The Court has been called upon to answer two questions. First, the Court must determine whether a First Amendment violation occurred when Columbia Basin College implemented an interim trespass and student conduct investigation in response to R.W.'s 2017 disclosure of homicidal ideation about three of his instructors in the College's nursing program. Second, if a violation did occur, the Court must determine what harms, if any, flow from continuing First Amendment violations and what equitable remedies are appropriate to redress those harms.

### A. Legal Framework

#### 1. First Amendment - Free Speech

The First Amendment was created "to assure unfettered interchange of ideas for the bringing about of political and social changes desired by the people." *Roth v. U.S.*, 354 U.S. 476, 484 (1957). Accordingly, "[a]s speech strays further from the values of persuasion, dialogue and free exchange of ideas the first amendment was designed to protect, and moves toward threats made with specific intent to perform illegal acts" the speech loses its constitutional import. *See e.g. Shackelford v. Shirley*, 948 F.2d 935, 938 (5th Cir. 1991). On several occasions, the Supreme Court has permitted restrictions on different categories of speech:

> [1] advocacy intended, and likely, to incite imminent lawless action, [2] obscenity, [3] defamation, [4] speech integral to criminal conduct, [5] so-called "fighting words," [6] child



pornography, [7] fraud, [8] true threats, and [8] speech presenting some grave and imminent threat the government has the power to prevent, although a restriction under the last category is most difficult to sustain[.]

*U.S. v. Alvarez*, 567 U.S. 709, 717-18 (2012) (internal citations omitted).

The First Amendment does not protect speech that constitutes a "true threat." *Virgina v. Black*, 538 U.S. 343, 359 (2003). A "true threat" includes,

. . . those statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats 'protect[s] individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.'

*Virginia v. Black*, 538 U.S. at 359-60 (internal citations omitted). The speaker need not direct a threat to their alleged target; rather, the target can learn of a threat through a third-party. *United States v. Stewart*, 420 F.3d 1007, 1016 (9th Cir. 2005). Moreover, in lawsuits involving claims of civil damages, the Ninth Circuit uses an objective standard to determine if speech constitutes a true threat. *See O'Brien v. Welty*, 818 F.3d 920, 932 (9th Cir. 2016) (judging the student's speech from the perspective of an objectively reasonable administrator); *see also Boquist v. Courtney*, 32 F.4th 764 (9th Cir. 2022) (employing an objective test to determine if speech constituted a "true threat") & *Thunder Studios, Inc. v. Kazal*, 13 F.4th 736, 746 (9th Cir. 2021) (noting the Ninth Circuit traditionally used an objective test for determining when speech is a "true threat" until a subjective test was adopted in the context of criminal cases).

FINDINGS OF FACT, CONCLUSIONS OF LAW, & ORDER - page 3
[DEFENDANT'S PROPOSED]



EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

### 2. Student Speech

In the academic setting, schools may regulate student speech when it falls within one of four recognized categories: (1) indecent, lewd, or vulgar speech occurring on school grounds, (2) speech promoting illegal drug use during a school activity, (3) speech bearing the imprimatur of the school, and (4) speech that materially disrupts classwork or involves substantial disorder or invasion of the rights of others. *Mahanoy Area Sch. Dist. v. B.L.*, 594 U.S. 180, 187-88, 141 S. Ct. 2038 (2021). Although the application of the Student Speech Doctrine to the college setting remains unsettled, *McCollough v. Portland State Univ.*, No. 3:23-cv-01582-AR, 2024 U.S. Dist. LEXIS 218558 *31-32, (D. Or. Oct. 25, 2024), courts have employed the "material disruption" test announced in *Tinker v. Des Moines Independent School District*, 393 U.S. 503, 506 (1969) to First Amendment activities on college campuses when the speech at issues involves harassment or potential violence. *See Healy v. James*, 408 U.S. 169, 92 S. Ct. 2338 (1972) ("In the context of the 'special characteristics of the school environment,' the power of the government to prohibit "lawless action" is not limited to acts of a criminal nature. Also prohibitable are actions which 'materially and substantially disrupt the work and discipline of the school.'") (citing *Tinker v. Des Moines Independent School District*, 393 U.S. 503, 506 (1969)); *see also Hunt v. Board of Regents,* 792 F. App'x 595, 602 (10th Cir. 2019) (recognizing the *Healy* Court's extension of *Tinker* to the university setting); *Doe v. Valencia College*, 903 F.3d 1220 (11th Cir. 2018) (applying the *Tinker* analysis to the regulation of a college student's off-campus speech that harassed a fellow student); *Keefe v. Adams*, 840 F.3d 523, 531 n. 6 (8th Cir. 2016) (applying the *Tinker* analysis to the regulation of a college student's off-campus speech that involved threats of violence); *Doe v. Rector*, 132 F. Supp. 3d

FINDINGS OF FACT, CONCLUSIONS OF LAW, & ORDER - page 4
[DEFENDANT'S PROPOSED]



818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

712, 730 (E.D. Virginia 2015) (recognizing the *Tinker* analysis applies in the context of a college student's off-campus speech that involved threats of suicide); and *Murakowski v. University of Delaware*, 575 F. Supp. 2d 571, 591 (D. Del. 2008) (applying the *Tinker* analysis to the regulation of a college student's speech that involved threats of violence).

A school may regulate threats of violence against the campus community, even if the threats were made off-campus, and even where the threats are not directly communicated by the student. *See McNeil v. Sherwood School Dist. 88J,* 918 F.3d 700 (9th Cir. 2019) (upholding discipline imposed following the revelation of a student's private journaling of homicidal ideation); *see also Wynar v. Douglas Cty. Sch. Dist.,* 728 F.3d 1062, 1069 (9th Cir. 2013) ("when faced with an identifiable threat of school violence, schools may take disciplinary action in response to off-campus speech . . ."); *see also LaVine v. Blaine School Dist.*, 257 F.3d 981 (9th Cir. 2001) (school district did not violate student's First Amendment right when it expelled him on an emergency basis after he showed his teacher a poem he had written which was filled with imagery of violent death and suicide and the shooting of fellow students). As described by the Ninth Circuit in *Dariano v. Morgan Hill Unified Sch. Dist.*, 767 F.3d 764 (9th Cir. 2014)*,*

> Under *Tinker*, schools may prohibit speech that "might reasonably [lead] school authorities to forecast substantial disruption of or material interference with school activities," or that constitutes an "actual or nascent [interference] with the schools' work or ... collision with the rights of other students to be secure and to be let alone." As we have explained, "**the First Amendment does not require school officials to wait until disruption actually occurs before they may act**. In fact, they have a duty to prevent the occurrence of disturbances."

*Dariano*, 767 F.3d at 776 (emphasis added) (internal citations omitted).

FINDINGS OF FACT, CONCLUSIONS OF LAW, & ORDER - page 5
[DEFENDANT'S PROPOSED]



EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

### 3. First Amendment Retaliation

A First Amendment retaliation claim requires a plaintiff to establish, (1) engagement in a constitutionally protected activity, (2) adverse action that would chill a person of ordinary firmness from continuing to engage in the protected activity, and (3) the plaintiff's protected activity was a substantial or motivating factor in the adverse action. Manual of Model Civil Jury Instructions § 9.11 (9th Cir.); *see also McCollough v. Portland State Univ.*, No. 3:23-cv-01582-AR, 2024 U.S. Dist. LEXIS 218558 (D. Or. Oct. 25, 2024) (internal citations omitted). Motive is a necessary element of a retaliation claim. *Koala v. Khosla*, 931 F.3d 887, 905 (9th Cir. 2019). In other words, a plaintiff must establish "that there was a nexus between the defendant's actions and an intent to chill speech." *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 867 (9th Cir. 2016); *Sharp v. Cty. of Orange*, 871 F.3d 901, 919 (9th Cir. 2017) (applying a "but-for" standard to the intent to chill and the adverse action). Further, it remains a complete defense to a First Amendment retaliation claim that a defendant would have taken the same adverse action even in the absence of any motive to retaliate against a plaintiff. Manual of Model Civil Jury Instructions § 9.11 (9th Cir.).

### 4. Prospective Injunctive Relief

The Eleventh Amendment provides immunity to state entities for claims brought under 42 U.S.C. § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 109 S. Ct. 2304 (1989). However, a limited exception exists under *Ex parte Young*, 209 U.S. 123, 28 S. Ct. 441 (1908) for claims that seek prospective injunctive relief against a state officials for continuing violations of federal law. *R.W. v. Columbia Basin Coll.*, 77 F.4th 1214, 1220 (9th Cir. 2023). Dissolving continuing sanctions, reinstatement, and expungement of failing grades are forms of prospective relief. *Id.* at 1225-1227.

FINDINGS OF FACT, CONCLUSIONS OF LAW, & ORDER - page 6
[DEFENDANT'S PROPOSED]



818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

Injunctive relief is an equitable remedy. *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 311, 102 S. Ct. 1798 (1982). "The historic injunctive process was designed to deter, not to punish." *Hecht Co. v. Bowles*, 321 U.S. 321, 329, 64 S. Ct. 587 (1944). "The qualities of mercy and practicality have made equity the instrument for nice adjustment and reconciliation between the public interest and private needs as well as between competing private claims." *Id.* "Once a constitutional violation is found, a federal court is required to tailor 'the scope of the remedy' to fit 'the nature and extent of the constitutional violation.'" *Dayton Bd. of Educ. v. Brinkman*, 433 U.S. 406, 420, 97 S. Ct. 2766 (1977). This means, in fashioning an injunctive remedy, "[t]he remedy must of course be limited to the inadequacy that produced the injury in fact that the plaintiff has established." *Lewis v. Casey*, 518 U.S. 343, 357, 116 S. Ct. 2174 (1996) (citation omitted). The grant or denial of injunctive relief is left to the sound discretion of the trial court. *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1021 (9th Cir. 1985).

**B. Evidence at Trial**

The evidence considered as part of the February 2025 bench trial includes the witness testimony and exhibits admitted during the August 2022 jury trial on R.W.'s disability discrimination claims. This includes the testimony of Michelle Aronow, Dr. Michael Cabasug, M.D., Araceli Perez, Lauri Schoffstall, Alex Soulia, Kim Tucker, Patricia Cambell, Levi Glatt, Leslie Irwin, Alma Martinez, Virginia Tomlinson, Benjamin Beus, Margaret Buchmiller, Michael Lee, Ralph Reagan, Lee Thornton, Mary Hoerner, Maurilio Garza, Psy.D., C.W., R.W., Robert Alan Welch, Rebekah Woods, Becky Phillips, and Erick West. This also includes exhibit nos. 1-14, 16, 18-19, 21-26, 28-39, 41, 43-48, 50, 53-55, 57, 61, 63-64, 66-69, 71-79, 204, 207, 211, 232, 244, 248, 252. The evidence considered

FINDINGS OF FACT, CONCLUSIONS OF LAW, & ORDER - page 7
[DEFENDANT'S PROPOSED]


EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

also includes the additional witness testimony and exhibits admitted during the February 2025 bench trial.

## FINDINGS OF FACT

The Court makes the following findings of fact from the evidence identified above:

1. During Winter Quarter 2017, R.W. was a student in Columbia Basin Colleges' nursing program. (Stipulation of Parties)

2. Instruction for Winter Quarter 2017 began on January 3, 2017, and ended on March 17, 2017. (Tucker Transcript at 395:9-396:4; Ex. 244; Ex. 1044)

3. Finals for Winter Quarter 2017 were administered between March 21, 2017, and March 23, 2017. (Tucker Transcript at 395:9-396:4; Ex. 244; Ex. 1044)

4. Final grades for Winter Quarter 2017 from instructors were due on March 27, 2017. (Ex. 244; Ex. 1044)

5. Winter Quarter 2017 was R.W.'s second attempt to complete the winter quarter curriculum of the second year of the College's nursing program. (Tucker Testimony at 439:7-440:13; Martinez Testimony at 504:5-9; Ex. 46; Ex. 55; Ex. 1042)

6. R.W.'s classes included Nursing 221 (Nursing V, 5 credits), Nursing 222 (Professional Issues, 1 credit), Nursing 223 (Nursing V Lab, 5 credits), and Nursing 235 (Nursing Trends Lab, 1 Credit). (Ex. 46; Ex. 1042)

7. The nursing program curriculum was sequential, requiring a student to successfully complete the curriculum from one quarter before the student advanced to classes offered in the following quarter. (Tucker Testimony at 394:19-25; Reagan Testimony at 751:24-752:2, 781:6-18)

FINDINGS OF FACT, CONCLUSIONS OF LAW, & ORDER - page 8
[DEFENDANT'S PROPOSED]

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

8. The nursing program student handbook provided that if a student failed to successfully complete the curriculum of any quarter after two attempts, the student would be required to repeat the entire nursing program from the beginning. (Hoerner Testimony at 931:4-933:7; Woods Testimony at 938:4-939:6)

9. In February 2017, Instructor Becky Phillips issued R.W. an academic progress alert because his Nursing 235 grade had fallen below a passing grade due to R.W.'s failure to stay current on assignments. (Phillips Testimony at 1294:15-21; Ex. 61; Ex. 1009)

10. In response to the academic progress alert, R.W. completed an Academic Student Support Plan – Self-Assessment. (R.W. Testimony at 1073:15-1074:3; Ex. 61; Ex. 1010)

11. R.W.'s Self-Assessment reflected he was having difficulty mastering course content, had trouble finding time to do his homework, and was suffering from test anxiety. (R.W. Testimony at 1073:15-1074:3; Ex. 61; Ex. 1010)

12. At some point after receiving the February 2017 academic progress alert, R.W. experienced visions of involuntary homicidal acts against his professors, which included seeing them burn in their offices. (R.W. Testimony at 1027:13-1029:25, 10918-12).

13. His homicidal visions terrified him to the point that he knew he needed help. (R.W. Testimony at 1027:13-1029:25, 10918-12)

14. R.W. made an appointment to see his primary care physician on March 6, 2017, because of his homicidal ideation. (R.W. Testimony at 1085:20-22; Ex. 232; Ex. 1012)

FINDINGS OF FACT, CONCLUSIONS OF LAW, & ORDER - page 9
[DEFENDANT'S PROPOSED]

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

15. In the days prior to R.W.'s March 6, 2017, doctor's appointment, the nursing program scheduled a meeting with R.W. to discuss his academic progress and whether he needed additional accommodation for his disabilities. (Tucker Testimony at 282:8-283:22, 405:5-11; Cooke Testimony at 1192:22-1193:1)

16. At that point in time R.W. had failing grades in Nursing 221 and Nursing 223. (Tucker Testimony at 405:5-407:22; R.W. Testimony at 1074:4-1075:11; Cooke Testimony at 1172:11-20, 1186:23-11:87:5; Ex. 3; Ex. 48; Ex. 204; Ex. 1004)

17. R.W. also had outstanding coursework that remained incomplete. (R.W. Testimony at 1092:11-18)

18. The meeting with R.W. was scheduled to occur on March 7, 2017, after his appointment with his primary care physician, Dr. Michael Cabasug. (Tucker Testimony at 282:8-283:22; Ex. 19; Ex. 1011)

19. During his March 6, 2017, appointment with Dr. Cabasug, R.W. disclosed that he "does have thoughts of hurting someone or possibly more than 1 fatally with a plan for about 1 week now. He alludes to professors at CBC." (Cabasug Testimony at 118:15-22; Ex. 67; Ex. 1012)

20. Dr. Cabasug had previously treated R.W. for mental health issues. (Cabasug Testimony at 107:21-8:24; Ex. 67; Ex. 1000) For example, in 2015, R.W. disclosed suicidal thoughts during an appointment with Dr. Cabasug. (Cabasug Testimony at 107:21-8:24; Ex. 67; Ex. 1000)

21. Dr. Cabasug called for a designated crisis responder to evaluate R.W.'s homicidal ideation. (Cabasug Testimony at 119:20-120:4; Ex. 67; Ex. 1012)

FINDINGS OF FACT, CONCLUSIONS OF LAW, & ORDER - page 10
[DEFENDANT'S PROPOSED]

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

22. Araceli Perez, a designated crisis responder, responded and evaluated R.W. to determine if he was suicidal, homicidal, or gravely disabled under Washington's Involuntary Treatment Act. (Perez Testimony at 133:6-140:23; Ex. 69; Ex. 1013; Ex. 1014; Ex. 1015)

23. R.W. disclosed his homicidal ideation to Ms. Perez during her evaluation of him. (Perez Testimony at 149:7-18; Ex. 69; Ex. 1015)

24. R.W. indicated he experienced homicidal ideation about three of his instructors in the nursing program, having visualized killing them by setting their offices on fire or attacking them with a saw. (Perez Testimony at 150:3-8, 174:13-23; Ex. 69; Ex. 1015)

25. R.W. reported to Perez that he had "been feeling overwhelmed depressed recently that prior to returning to school he was doing just fine." He further reported that "he had bad grades and feedback from [his instructors] that triggered his thoughts to harm them." (Perez Testimony at 149:7-21, 174:24-175:1; Ex. 69; Ex. 1015).

26. Perez determined R.W. represented a risk of harm to others based upon her evaluation of R.W. (Perez Testimony at 173:11-174:1)

27. Perez gave R.W. an ultimatum, voluntarily admit himself to a treatment facility, or be committed under the Involuntary Treatment Act. (Perez Testimony at 187:1-6; R.W. Testimony at 1072:14-20)

28. Given this ultimatum, R.W. elected to admit himself to Lourdes Counseling Center's Transitions program. (Perez Testimony at 187:1-6; R.W. Testimony at 1072:14-20)

29. Perez initiated "duty to warn" protocols following her evaluation of R.W. by calling law enforcement and Columbia Basin College directly. (Perez Testimony at 153:5-19, 158:10-161:10; Ex. 69)

FINDINGS OF FACT, CONCLUSIONS OF LAW, & ORDER - page 11
[DEFENDANT'S PROPOSED]



EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

30. On March 7, 2017, the Richland Police Department contacted Columbia Basin College to report R.W.'s homicidal ideation about three of its instructors. (Tucker Testimony at 272:12-15; Ex. 21; Ex. 1021; Ex. 1051)

31. After learning of R.W.'s homicidal ideation, Levi Glatt, Safety and Security Supervisor at the College, and Kim Tucker, Director of the Nursing Program, notified Ralph Reagan, the College's student conduct officer. (Ex. 21; Ex. 1021)

32. R.W.'s disclosure of homicidal ideation had a profound impact on at least two of his instructors. (Tucker Testimony at 373:17-375:3) Valerie Cooke was so disturbed she had family stay at her home, switched cars she was driving, and used security escorts when walking to her car for a period of time. (Cooke Testimony at 1159:15-1175:3)

33. On March 7, 2017, Reagan issued an interim trespass notice to R.W. excluding him from the College's Pasco and Richland Campuses pending a student conduct investigation. (Ex. 8; Ex. 1024)

34. On March 8, 2017, while R.W. was still admitted for treatment at Lourdes, R.W. emailed Reagan requesting to appeal the interim trespass. (R.W. Testimony at 1076 at 7-9; Ex. 10)

35. On March 9, 2017, Reagan notified R.W. that the College would convene a Student Appeals Board to review the interim trespass and asked R.W. to provide a statement for the Student Appeals Board to review. (Ex. 10)

36. That same day R.W. told staff at Lourdes Counseling Center "I can't finish the semester because I am too far behind." (R.W. Testimony at 1075:12-1076:1; Ex. 68; Ex. 1027)

37. R.W. also sought to leave Lourdes Counseling Center against medical advice the same day, but he relented after Araceli Perez performed a

FINDINGS OF FACT, CONCLUSIONS OF
LAW, & ORDER - page 12
[DEFENDANT'S PROPOSED]



818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

second evaluation of him and convinced him to stay an additional night. (Perez Testimony at Ex. 175:5-178:3)

38. On Friday, March 10, 2017, R.W. provided Reagan a statement for the Student Appeals Board to consider as part of R.W.'s appeal of the interim trespass. (R.W. Testimony at 1076:10-11; Ex. 10; Ex. 1028)

39. The Student Appeals Board met on Monday, March 13, 2017, considered R.W.'s appeal and upheld the interim trespass measure. (Campbell Testimony at 555:13-556:25; R.W. Testimony at 1076:12-20; Ex. 11; Ex. 1030)

40. Reagan had previously scheduled time for a March 16, 2017, initial student conduct meeting with R.W., but the meeting was rescheduled to March 22, 2017. (Reagan Testimony at 737:9-740:3, 766:13-25, 768:1-769:1; Ex. 9; Ex. 45; Ex. 1025; Ex. 1060)

41. In addition to attending the March 22, 2017, initial student conduct meeting, R.W. provided a letter appealing the decision of the Student Appeals Board that upheld the interim trespass measure. (Campbell Testimony at 811:1-813:2; Ex. 12; Ex. 1031)

42. On April 19, 2017, then President Lee Thornton modified the interim trespass order. He lifted the order as it related to the College's Pasco campus and required R.W. to coordinate any visits to the Richland campus through Reagan. (Thornton Testimony at 819:2-8; Ex. 13; Ex. 1036)

43. On April 20, 2017, Reagan issued his decision that R.W. was responsible for a student conduct code violation and Reagan created conditions for R.W.'s return to the nursing program. (Reagan Testimony at 746:10-754:23; Thornton Testimony at 841:20-842:25; Ex. 14; Ex. 1037)

FINDINGS OF FACT, CONCLUSIONS OF LAW, & ORDER - page 13
[DEFENDANT'S PROPOSED]

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

44. R.W. appealed Reagan's decision through the Student Appeals Board and ultimately to then President Thornton, who ultimately upheld Reagan's decision and conditions for return to the nursing program. (Thornton Testimony at 839:10-8:43:13; Ex. 16; Ex.18; Ex.1040; Ex. 1041)

45. R.W. was capable of complying with the conditions outlined by Reagan and ratified by Thornton, but R.W. did not do so. (R.W. Testimony at 1077:4-1081:1)

46. R.W. failed to contact Reagan in advance of the Winter Quarter 2018. (R.W. Testimony at 1078:3-1079:3)

47. Instead, R.W. waited until May 2018 to commence the present lawsuit. (Complaint For Damages)

48. When R.W. filed suit, he named Lee Thornton in his official capacity, although Thornton was no longer the President of the College at that time.

49. In July 2021, Reagan wrote to R.W. through his counsel clarifying the conditions outlined in Reagan's April 20, 2017, letter were defunct because R.W. had failed to engage in the plan for his return to the nursing program in Winter 2018. (Ex. 1048)

50. Moreover, R.W. has been on notice since 2021 that he was free to reapply to the College's nursing program without reference to the prior student conduct proceedings. (Woods Testimony at 937:21-941:10; Beus Testimony at 908:2-9; Ex. 86).

51. R.W. has not reapplied for admission to the nursing program at the College, or for admission to any other nursing program in the greater Tri-Cities area. (Garza Testimony at 1144:22-1145:14)

FINDINGS OF FACT, CONCLUSIONS OF LAW, & ORDER - page 14
[DEFENDANT'S PROPOSED]

EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

## CONCLUSIONS OF LAW

The Court makes the following conclusions of law based upon the findings of fact above:

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1367.

2. R.W.'s March 2017 disclosure of homicidal ideation related to three of his instructors at Columbia Basin College's nursing program constituted a "true threat" and therefore is not speech protected by the First Amendment.

3. Even if R.W.'s March 2017 disclosure of homicidal ideation had been speech protected by the First Amendment, Columbia Basin College's regulation of the speech was permissible under the Student Speech Doctrine. R.W.'s disclosure of homicidal ideation caused a material and substantial disruption to the operation of the College and infringed upon the rights of faculty to safety and security in their workplace.

4. Even further, R.W.'s First Amendment retaliation claim would otherwise fail because the evidence adduced at trial supports a lack of any intent by the College or its employees to chill R.W.'s speech. The failure of R.W. to carry his burden of persuasion on this element is fatal to his claim.

5. R.W. has also failed to carry his burden of persuasion to establish he would have successfully completed Winter Quarter 2017 following the lapse in his mental health that necessitated his four-day inpatient treatment.

6. Accordingly, R.W. has failed to prove that the harms for which he seeks injunctive relief flows from a continuing violation of federal law.

FINDINGS OF FACT, CONCLUSIONS OF LAW, & ORDER - page 15
[DEFENDANT'S PROPOSED]



818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

7. Finally, R.W.'s delay in seeking reinstatement to the nursing program is unreasonable. Despite the existence of a plan for his return to the nursing program in the Winter of 2018, R.W. did not participate in the plan or otherwise act to seek reinstatement until after Winter Quarter 2018 had already occurred. R.W.'s delay makes prospective injunctive relief inappropriate.

## ORDER

Based upon the foregoing findings of fact and conclusions of law, IT IS HEREBY ORDERED:

1. R.W.'s sole remaining claim for prospective injunctive relief is dismissed in its entirety with prejudice; and

2. The Clerk of the Court is directed to enter Final Judgment in favor of the Defendants in this matter.

DATED ___ day of February 2025.

_____
Honorable Mary K. Dimke

FINDINGS OF FACT, CONCLUSIONS OF LAW, & ORDER - page 16
[DEFENDANT'S PROPOSED]



EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632

# CERTIFICATE OF SERVICE

I hereby certify that on January 15th, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:

    Bret Uhrich
    Abigail Cybula
    Email:    buhrich@walkerheye.com
    Email:    acybula@walkerheye.com

        s/ *Carl P. Warring*
    CARL P. WARRING, WSBA #27164
    ANDREW D. BROWN, WSBA #58477
    Attorneys for Defendants
    Evans, Craven & Lackie, P.S.
    818 W. Riverside Ave., Suite 250
    Spokane, Washington 99201
    (509) 455-5200
    (509) 455-3632 Facsimile
    CWarring@ecl-law.com
    Abrown@ecl-law.com

FINDINGS OF FACT, CONCLUSIONS OF LAW, & ORDER - page 17
[DEFENDANT'S PROPOSED]



EVANS, CRAVEN & LACKIE, P.S.
818 W. Riverside, Suite 250
Spokane, WA 99201-0910
(509) 455-5200; fax (509) 455-3632