FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Jan 31, 2025

SEAN F. McAVOY, CLERK

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| R.W., individually and on behalf of his marital community, | No. 4:18-CV-05089-MKD |
| Plaintiff, | PRETRIAL ORDER |
| vs. | |
| COLUMBIA BASIN COLLEGE, a public institution of higher education; RALPH REAGAN, in his official and individual capacities; LEE THORNTON, in his individual capacity; and REBEKAH WOODS, in her official capacity, | |
| Defendants. | |

This is the joint pretrial order submitted by the parties in anticipation of a final pretrial conference and bench trial to be held on February 3, 2025. Plaintiff is represented by Bret Uhrich and Abby Jacobs, and Defendants are represented by Carl Warring and Andrew Brown, their respective attorneys of record. The following pretrial order has been formulated and settled as follows:

ORDER - 1

## I.     NATURE OF PROCEEDINGS AND STATEMENT OF JURISDICTION

**Nature of Proceedings.**  This is a civil dispute originally brought by R.W. against Columbia Basin College ("CBC"), the college's former president, Lee Thornton, and student conduct officer, Ralph Reagan.  President Rebekah Woods has been substituted in as the party-in-interest for Lee Thornton, in his official capacity.

Plaintiff R.W. alleges that he was subjected to adverse action based on his protected speech to medical providers in the form of being prevented from taking classes, by being issued failing grades on tests he could not take due to being trespassed from the school, and by being sanctioned for violation of the Student Code of Conduct.  Plaintiff seeks prospective injunctive relief for violation of his constitutional right to free speech pursuant to 42 U.S.C. § 1983.

Defendants Woods and Reagan deny any misconduct in issuing a trespass notice that excluded Plaintiff from campus after the College learned of Plaintiff's homicidal ideation that focused on three of the College's instructors and while a student conduct investigation occurred.  Defendants further deny that any action was taken in response to Plaintiff's disclosures to his personal physician.  Instead, Defendants assert that they initiated a trespass and student conduct proceeding in response to notice provided as part of a "duty to warn" by crisis responders and

ORDER - 2

law enforcement following R.W.'s disclosure of homicidal ideation during an evaluation by a crisis responder.

**Statement of Jurisdiction.**  The Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this civil action arises under the Constitution, laws, or treaties of the United States.

## II.    STIPULATIONS OF THE PARTIES

### A. Stipulated Issues of Fact Requiring No Proof

The following facts are agreed upon by the parties and require no proof:

1.    Rebekah Woods is the current Columbia Basin College ("CBC") President.  Rebekah Woods in her official capacity is a state actor subject to the First Amendment of the United States Constitution for purposes of R.W.'s claims seeing prospective injunctive relief.

2.    R.W. was a student enrolled in the nursing program at CBC in the winter quarter of 2017.

3.    On March 7, 2017, Ralph Reagan issued an interim trespass prohibiting R.W. from entering onto all CBC campuses.

4.    On March 8, 2017, R.W. contacted Ralph Reagan asking what steps he needed to take regarding the interim trespass.

5.    On March 8, 2017, Ralph Reagan began a Student Conduct investigation.

ORDER - 3

6.      On March 10, 2017, R.W. sent Reagan an e-mail providing a statement for the Student Appeals Board to consider as part of his appeal of the interim trespass notice.

7.      On March 14, 2017, the Student Appeal Board affirmed the interim trespass.

8.      On March 22, 2017, Mr. Reagan met with R.W. regarding the alleged violation.

9.      On March 22, 2017, R.W. sought further review of the interim trespass from CBC's president Lee Thornton.

10.     On April 19, 2017, based on Mr. Reagan's investigation and review of the records, Mr. Thornton modified the trespass to exclude the Pasco CBC campus but the trespass restriction regarding the Richland campus remained in place.

11.     The President of CBC is the final decision maker regarding violations of the Student Code of Conduct.

12.     On April 20, 2017, after completing his investigation, Ralph Reagan found R.W. responsible for violating CBC's policy on Abusive Conduct and imposed conditions upon R.W. termed sanctions.

13.     Abusive Conduct" is defined in the CBC Student Code of Conduct as: "Physical and/or verbal abuse, threats, intimidation, harassment, online harassment, coercion, bullying, cyberbullying, retaliation, stalking, cyberstalking,

and/or other conduct which threatens or endangers the health or safety of any person or which has the purpose or effect of creating a hostile or intimidating environment."

14. On May 4, 2017, R.W. appealed to the Student Appeal Board requesting review of the finding of misconduct.

15. On May 24, 2017, the Student Appeal Board affirmed the finding of misconduct.

16. On June 7, 2017, R.W. appealed to the President of CBC regarding the finding.

17. On June 12, 2017, then CBC President Lee Thornton affirmed the finding of misconduct and ratified the conditions imposed upon R.W.

18. As the President of CBC, Lee Thornton was the final decisionmaker regarding R.W.'s appeal and conditions imposed upon R.W.

19. President Rebekah Woods in her official capacity is the person that can direct Columbia Basin College to reinstate R.W. into the nursing program and direct the registrar to modify R.W.'s Winter Quarter of 2017 grades to reflect incomplete instead of failing grades.

**B. Stipulated Issues of Law Requiring No Proof**

1. Rebekah Woods is the President of CBC, a Washington state agency.

ORDER - 5

### III.    PLAINTIFF'S CONTENTIONS

Plaintiff's contentions as to disputed issues are as follows:

1.    **Violation of First Amendment Rights and Prospective Injunctive Relief under *Ex Parte Young*.**  Plaintiff R.W. contends that Defendants violated R.W.'s rights under the First Amendment by imposing adverse action based on his speech to providers seeking treatment for mental health.  R.W.'s speech was pure speech, and was not accompanied by any conduct.  R.W.'s speech was not a threat, let alone a true threat.  At no point did R.W. express a desire to cause harm to another person.  R.W. described that he had aberrant thoughts that concerned him and he only articulated these thoughts to disclose the symptom for medical assistance.  R.W.'s speech was not curricular or pedagogical in nature.  Based on his protected speech, R.W. was trespassed from the College and prevented from taking final exams in his classes.  Instead of identifying the classes and incomplete, the College treated these tests as possible for R.W. to take and issued him zeroes on each of the tests, resulting in him failing all of the Winter of 2017 classes.  The College found R.W. in violation of the Student Code of Conduct based on his protected speech and levied sanctions against him.  Based on these violations, R.W. seeks injunctive relief requiring Rebekah Woods to direct the registrar to change his Winter Quarter 2017 grades from 0.0 to incomplete, reinstatement of

R.W. into the Nursing Program, and deletion and removal of the finding of misconduct.

## IV.    DEFENDANTS' CONTENTIONS

1.    **First Amendment:** Defendants contend that R.W.'s disclosure of homicidal ideation to a crisis responder during an evaluation to determine whether he represented a risk of harm to himself or others is not speech protected by the First Amendment.  R.W.'s expressions of homicidal ideation about three of his instructors in the nursing program by identified means constituted a "true threat." Even if R.W.'s disclosure of homicidal ideation constituted protected speech, the College's regulation of that speech was permissible under the student speech doctrine.  And even if the student speech doctrine did not apply to R.W.'s disclosure of homicidal ideation, R.W. cannot establish the requisite elements of a First Amendment retaliation claim.

2.    **Prospective Injunctive Relief:** Defendants contend no prospective injunctive relief is warranted.  First, because no First Amendment violation occurred, no continuing violation of federal law exists to justify prospective injunctive relief.  Second, R.W. was capable of complying with the conditions for return to the nursing program and failed to do so.  The trespass and conditions for return are no longer in place and R.W. is free to seek readmission without reference to the prior student conduct proceedings.  Finally, R.W. cannot carry his

burden of establishing that but-for his trespass from campus, he would have successfully completed the Winter Quarter 2017 curriculum.

## V.    ISSUES OF FACT

### A. Plaintiff's Facts To Be Proved At Trial

1.    By the 2017 winter quarter, R.W. had accumulated 177 credit hours at CBC.

2.    R.W. was scheduled to graduate from the CBC nursing program in June 2017.

3.    During his enrollment, R.W. suffered from back pain, epilepsy, insomnia, anxiety and depression.

4.    In the Winter Quarter 2017, R.W. saw an increase in the frequency of his seizures due to stress.  R.W. also experienced trouble sleeping and insomnia.

5.    The College was accommodating these disabilities by allowing R.W. to have additional time on his assignments and turn them in late.

6.    On February 28, 2017, R.W. scheduled an appointment with his primary care physician, Dr. Michael Cabasug, because R.W. was having trouble with insomnia and because he had violent thoughts regarding his CBC instructors.

7.    From February 28, 2017, to March 6, 2017, R.W. attended classes at CBC with no issues and did not mention these thoughts to anyone at CBC or elsewhere.

ORDER - 8

8.      R.W. met with Dr. Cabasug at his office on March 6, 2017.  R.W. informed his physician of his insomnia and his thoughts about hurting his instructors.

9.      Dr. Cabasug's chart note describes R.W.'s reporting of the circumstances of the ideation as follows: "Does have a seizure disorder and is on Keppra.  Has been having more episodes in the last several weeks.  He attributes this to lack of sleep which is affected by his depression."  Dr. Cabasug recommended a change in R.W.'s prescription and spoke with R.W. regarding techniques for managing stress.

10.      Dr. Cabasug referred R.W. to Lourdes, the Designated Crisis Responder for Benton and Franklin Counties, for evaluation.  While at Dr. Cabasug's office, R.W. met with a representative of Lourdes and thereafter voluntarily admitted himself to Lourdes Transition Center for inpatient mental health treatment.

11.      Lourdes contacted the Richland and Pasco Police Departments regarding R.W.'s violent thoughts about his instructors at CBC.

12.      On March 7, 2017, the police contact was conveyed to CBC security supervisor Levi Glatt and in-turn to Ralph Reagan, CBC's assistant dean for student conduct.

ORDER - 9

13.     The communication viewed by Mr. Reagan prior to issuing an interim trespass against R.W. stated as follows: "Levi, At approximately 0800 hours 3/7/17, I was contacted by Ofc. K. Erickson of PPD with the following information. PPD was contacted earlier today by Crisis Response about CBC student [R.W.].  [R.W.] admitted to having homicidal ideations toward staff at CBC, talking about lighting offices on fire and attacking people with saws.  The instructors specifically mentioned are Kim [T]ucker Valerie Topham and Alma Martinez.  [R.W.] is currently at Carondelet getting help and may not be an immediate threat."

14.     On March 7, 2017, Ralph Reagan issued a letter to R.W. trespassing R.W. on the basis that R.W.'s communications to medical professionals constituted "Abusive Conduct" under the CBC Student Code of Conduct.

15.     Ralph Reagan was aware that R.W. was receiving services for a disability from the Student Resource Center before issuing the interim trespass letter to R.W.

16.     The day after the interim trespass, on March 8, 2017, nursing program director Kim Tucker filled out a "Nursing Student Discontinuation Form" stating that R.W. was discontinued from the program based on "incomplete winter quarter trespassed from campus."

ORDER - 10

17.    On March 8, 2017, Ms. Tucker drafted a letter (which ultimately was never sent) to R.W. dismissing R.W. from the nursing program immediately and permanently based on his breach of "professionalism standards as a nursing student," citing R.W.'s communications with his medical providers.

18.    Ralph Reagan expressed his agreement with Kim Tucker that R.W. should be dismissed from the program based on professionalism concerns.

19.    Following the meeting between R.W. and Ralph Reagan, on March 29, 2017, R.W.'s treating physician Dr. Cabasug drafted correspondence "to whom it may concern" affirming that R.W. had never demonstrated aggressive behavior or language since Dr. Cabasug began treating R.W. and that the incident was very out of character.

20.    Ralph Reagan reviewed the medical records thoroughly, creating a detailed table of contents of the records, noting private conversations between R.W. and his physician, including events unrelated to R.W.'s health such as seeking treatment for diarrhea.

21.    After reviewing the records, Ralph Reagan concluded that the health care providers had determined that R.W. was not a threat to others before he was released from voluntary treatment and that he was continuing with outpatient mental health treatment.

ORDER - 11

22.     Ralph Reagan attributed R.W.s' violent ideations disclosed to his medical providers to R.W.'s disabilities.

23.     Ralph Reagan found that R.W.'s conversation with his physician was abusive conduct which created "a hostile or intimidating environment" at CBC.

24.     When asked to identify the specific "conduct" that occurred, Mr. Reagan identified the thoughts in R.W.'s head as the violative "conduct."

25.     Based on the trespass, R.W. was unable to attend his classes and take his final examinations.

26.     Instead of issuing R.W. grades of incomplete, the College gave R.W. zeroes on all of his finals, resulting in him failing all of the courses in the Winter Quarter of 2017.

27.     As a result of the sanctions and trespass, R.W. was disenrolled from the Nursing Program.

**B. Defendants' Facts to be Proven at Trial**

1.     In March 2017, R.W. experienced homicidal ideation about three of his instructors at Columbia Basin College's nursing program.

2.     R.W. disclosed his homicidal ideation during a March 6, 2017, evaluation by a designated crisis responder who was attempting to determine if R.W. was a threat of harm to himself or others.

ORDER - 12

3.      Based upon the evaluation, the designated crisis responder determined that R.W. was a threat of harm to others and gave R.W. an ultimatum to voluntarily admit himself to a treatment facility or be involuntarily committed.

4.      At the time of his inpatient admission, R.W. was failing two of his four Winter Quarter 2017 classes.

5.      The designated crisis responder also initiated duty to warn protocols to ensure the nursing instructors who were the subjects of R.W.'s homicidal ideation were warned.

6.      Through the duty to warn process, Columbia Basin College became aware of R.W.'s homicidal ideation, his inpatient admission, and the distress and disruption this caused for members of the campus community.

7.      Student Conduct Officer Ralph Reagan issued an interim trespass notice precluding R.W. from returning to campus while the College conducted a student conduct investigation.

8.      R.W. appealed the interim trespass to the Student Appeals Board, but the intermediate level of review upheld the trespass decision.

9.      R.W. appealed the decision of the Student Appeals Board to then President Lee Thornton.

10.      R.W. was assigned incomplete grades for Winter Quarter 2017 while the trespass and student conduct investigation were pending.

ORDER - 13

11.    On April 19, 2017, Thornton modified the trespass decision in part.

12.    Thornton's decision on the interim trespass notice issued after the conclusion of Winter Quarter 2017 instruction and after the administration of Winter Quarter 2017 final examinations.

13.    Reagan investigated R.W.'s conduct and on April 20, 2017, issued a finding that R.W. violated the College's Student Conduct Code and established conditions for R.W.'s return to the nursing program.

14.    Reagan's determination that R.W.'s conduct violated the Student Conduct Code was reached after the conclusion of Winter Quarter 2017 instruction and after the administration of Winter Quarter 2017 final examinations.

15.    April 22, 2017, was the deadline for students to complete coursework from Winter Quarter 2017 to change incomplete grades.

16.    After April 22, 2017, R.W.'s incomplete grades were changed to 0.0 grades in accordance with the College's course catalogue.

17.    A student can appeal an assigned course grade.

18.    R.W. did not appeal the change of his course grades from incomplete to 0.0.

19.    R.W. appealed Reagan's decision to the Student Appeals Board, but the intermediate level of review upheld Reagan's decision.

ORDER - 14

20.    R.W. appealed the Student Appeals Board decision to then President Thornton, but Thornton upheld Reagan's decision.

21.    R.W. failed to follow the conditions set forth by Reagan and ratified by Thornton for R.W.'s return to the nursing program.

22.    The trespass and conditions for R.W. to return to the nursing program are no longer in place.

## VI.    ISSUES OF LAW

The following are the issues of law to be determined by the Court:

1.    Whether R.W. was engaged in pure speech under the First Amendment when he disclosed his violent ideations for the purposes of a mental health evaluation.

2.    Whether R.W.'s speech constituted a true threat for purposes of a First Amendment analysis in the context of civil litigation.

3.    Whether the Student Speech Doctrine as articulated in *Tinker v. Des Moines Independent School District*, *Hazelwood School District v. Kuhlmeier*, *Bethel School District No. 403 v. Fraser*, *Morse v. Frederick*, and/or *Mahanoy Area School District v. B.L.* applies in higher education.

4.    Whether the standard for student speech in higher education is controlled by *Healy v. James* and *Papish v. Board of Curators of University of Missouri*.

ORDER - 15

5.     Whether Defendants' conduct constitutes adverse action or retaliation under the First Amendment.

6.     Whether a continuing violation of R.W.'s First Amendment rights exists.

7.     What, if any, equitable relief is appropriate as prospective injunctive relief as a remedy for any continuing violations of R.W.'s First Amendment rights.

## VII.   EXHIBITS

The following exhibits may be received in evidence, if otherwise admissible, without further authentication, it being admitted that each is what it purports to be:

### A.     Plaintiff's Exhibits – Stipulated by Parties

| No. | Description of Exhibit |
|-----|------------------------|
| 1 | Nursing student discontinuation form dated March 7, 2017 |
| 2 | Dismissal letter and related email correspondence between Kim Tucker, Virginia Tomlinson, and Ralph Reagan dated March 7-8, 2017 |
| 3 | Academic progress alerts issued by Valerie Cooke dated March 7, 2017 |
| 4 | Valerie Cooke correspondence dated May 4, 2018 |
| 5 | Email correspondence regarding R.W.'s enrollment status between Kim Tucker and Paula Ochoa dated March 7-8, 2017 |
| 6 | Email correspondence regarding deactivation of R.W.'s Kadlec badge between Kim Tucker and Levi Glatt dated March 7-8, 2017 |
| 7 | CBC nursing faculty meeting minutes for March 13, 2017 |
| 8 | Letter from Ralph Reagan imposing interim trespass restriction dated March 7, 2017 |
| 9 | Initial student conduct letter from Ralph Reagan dated March 8, 2017 |
| 10 | Email correspondence between R.W. and Ralph Reagan dated March 8-10, 2017 |

ORDER - 16

| 11 | Student appeals board letter from Patricia Campbell regarding interim trespass restriction dated March 14, 2017 |
| 13 | Letter from Lee Thornton modifying interim trespass restriction dated April 19, 2017 |
| 14 | Student conduct letter from Ralph Reagan dated April 20, 2017 |
| 15 | Letter from R.W. appealing student conduct decision to student appeals board dated May 4, 2017 |
| 16 | Student appeals board letter from Michael Lee dated May 24, 2017 |
| 17 | Letter from R.W. appealing student appeals board decision dated June 7, 2017 |
| 18 | Letter and final decision of CBC President Lee Thornton dated June 12, 2017 |
| 19 | Email correspondence between nursing and administrative staff regarding anticipated March 7, 2017, meeting to address concerns regarding R.W.'s seizure disorder |
| | |
| 21 | Richland Police Department dated March 7, 2017 |
| 22 | CBC campus security report dated March 7, 2017 |
| 23 | Email from Mike Hahn to Levi Glatt regarding initial police report dated March 7, 2017 |
| 24 | Email correspondence between Ralph Reagan, Peggy Buchmiller, and Ben Beus regarding interim trespass restriction dated March 7, 2017 |
| 25 | Email correspondence between Ralph Reagan and Patricia Campbell regarding R.W.'s appeal from interim trespass restriction dated March 14, 2017 |
| 26 | Email correspondence between Ralph Reagan, faculty and administrative staff regarding student behavioral intervention team (SBIT) dated March 8-14, 2017 |
| 27 | Email correspondence from Ralph Reagan regarding student conduct investigation status dated March 17-21, 2017 |
| 28 | Email correspondence between Ralph Reagan and Mike Hahn regarding anticipated student conduct meeting with R.W. on March 22, 2017 |
| 29 | Ralph Reagan investigation notes from March 22, 2017, student conduct meeting |
| 30 | CBC financial aid suspension notice dated March 28, 2017 |
| 31 | Email correspondence from Ben Beus and Ralph Reagan regarding R.W.'s financial aid status dated April 3, 2017 |

ORDER - 17

| 32 | Email correspondence regarding production of R.W.'s medical records and medical authorizations dated April 10-12, 2017 |
|----|----|
| 33 | Email correspondence between Patricia Campbell and Anita Kongslie regarding anticipated teleconference with Lourdes Counseling Center staff Michelle Arronow and Alex Soulia dated April 12, 2017 |
| 34 | Ralph Reagan and Patricia Campbell's notes regarding telephone conference with Michelle Arronow and Alex Soulia dated April 13, 2017 |
| 35 | Email correspondence dated April 14, 2017, from Ralph Reagan to Patricia Campbell regarding student conduct investigation status and findings |
| 36 | Email correspondence dated April 19, 2017, between Patricia Campbell and Ralph Reagan regarding proposed letter from Lee Thornton modifying interim trespass restriction |
| 37 | Email correspondence dated April 20, 2017, from Ralph Reagan regarding lifting of R.W.'s trespass from Pasco campus |
| 38 | Email from Ralph Reagan dated May 3, 2017, regarding production of CBC nursing student handbook |
| 39 | Student appeals board file including R.W.'s appeal letter, Ralph Reagan's April 20, 2017, student conduct decision letter, investigative notes and response notes |
| 40 | Email correspondence from Ralph Reagan dated May 18, 2017, regarding student appeals board meeting and anticipated decision |
| 41 | Email correspondence between Patricia Campbell and Ralph Reagan regarding student appeals board decision dated May 22, 2017 |
| 42 | Email correspondence regarding R.W.'s appeal to Lee Thornton dated June 8, 2017 |
| 43 | Email correspondence between R.W., Kim Tucker and Ralph Reagan regarding R.W.'s reenrollment in nursing program dated July 12-31, 2017 |
| 44 | R.W. academic timeline prepared by Kim Tucker |
| 45 | R.W. student conduct timeline prepared by Ralph Reagan |
| 46 | R.W.'s CBC transcript |
| 47 | Registrar notepad |
| 48 | Nursing grades from Spring 2015 through Winter 2017 |
| 52 | Ancillary evaluation checklists |
| 53 | Clinical evaluations from Fall 2014 through Fall 2015 |
| 54 | February 2016 nursing student discontinuation form |

ORDER - 18

| 55 | Email correspondence between R.W., Kim Tucker, and Valerie Cooke regarding R.W.'s return to nursing school in Winter 2017 quarter |
| 56 | R.W.'s reentry testing dated December 2, 2016 |
| 57 | Letter from Dr. Michael Cabasug, M.D. dated January 12, 2017, regarding R.W.'s return to school |
| 58 | Canvas email correspondence between R.W. and Alma Martinez from 2016-2017 |
| 59 | Canvas email correspondence between R.W. and Becky Phillips from 2017 |
| 60 | Corrected coversheet and resume for R.W. from Becky Phillips |
| 61 | Academic progress alert and student support plan from Becky Phillips dated February 13-14, 2017 |
| 62 | Email correspondence dated January 23-24, 2017 between R.W. and student resource office regarding R.W.'s disability accommodation |
| 63 | R.W.'s individual accommodation plan and file for Winter 2017 |
| 64 | Student resource center accommodation log prepared by Peggy Buchmiller and Patricia Campbell |
| 65 | R.W.'s student resource file from 2012 to 2016 |
| 66 | R.W.'s interrogatories and requests for production of documents to CBC, interrogatory nos. 7-11, with answers |
| 68 | R.W.'s Lourdes Counseling Center records |
| 69 | R.W.'s Crisis Response records |
| 70 | R.W.'s epilepsy records from Dr. Timothy Powell |
| 71 | CBC Student Code of Conduct |
| 72 | CBC financial aid policy |
| 73 | CBC nursing program student handbook |

## B.    Defendant's Exhibits – Stipulated by Parties

| No. | Description of Exhibit |
| --- | --- |
| 1000 | Cabasug Progress Note 2-25-2015 |
| 1001 | Cabasug Progress Note 3-25-2015 |
| 1002 | Cabasug Progress Note 5-15-2015 |
| 1003 | Cabasug Progress Note 6-25-2015 |
| 1004 | Midterm Grade Report |
| 1005 | Reserved |
| 1006 | Reserved |
| 1007 | Reserved |

ORDER - 19

| 1008 | Reserved |
|------|----------|
| 1009 | Academic Progress Alert 2-13-2017 |
| 1010 | Academic Support Plan |
| 1011 | Email String Tucker Topham |
| 1012 | Cabasug Progress Note 3-6-2017 |
| 1013 | Lourdes Phone Contact 3-6-2017 |
| 1014 | Lourdes Assessment Profile 3-6-2017 |
| 1015 | Lourdes Crisis Services Intake |
| 1016 | Lourdes Mental Status Notes |
| 1017 | Lourdes Referral To Transitions |
| 1018 | Lourdes Provider Note 3-7-2017 |
| 1019 | Lourdes Progress Notes |
| 1020 | Academic Progress Alert 3-7-17 |
| 1021 | Campus Security Report |
| 1022 | Campus Security Report |
| 1023 | Security Threat Document |
| 1024 | Reagan Letter Trespass Order |
| 1025 | Regan Letter Student Conduct Violation |
| 1026 | Lourdes Health Evaluation |
| 1027 | Lourdes Discharge Notes |
| 1028 | R.W. Email Student Appeals Board |
| 1029 | Reserved |
| 1030 | Pat Campbell Decision Letter |
| 1031 | R.W. Appeal Trespass Restriction |
| 1032 | Cabasug Medical Records (Identification Only) |
| 1033 | Lourdes Medical Records (Identification Only) |
| 1034 | CBC Case Notes Student Conduct Case |
| 1035 | Letter From Dr. Cabasug |
| 1036 | Thornton Letter Second Appeal |
| 1037 | Reagan Conduct Decision Letter |
| 1038 | Reserved |
| 1039 | Appeal of Student Conduct |
| 1040 | Lee Letter Student Conduct Appeal |
| 1041 | Thornton Letter Presidents Decision |
| 1042 | Student Transcript |
| 1043 | Academic Timeline |
| 1044 | Academic Calendar |
| 1045 | Reserved |
| 1046 | Complaint for Damages (Identification Only) |

ORDER - 20

| 1047 | Discovery Responses (Identification Only) |
|------|---------------------------------------------|
| 1048 | Reagan to R.W. Letter 2021-7-8 |
| 1049 | Tucker Calendar Meeting Note  2017-3-7 |
| 1050 | Withdrawn |
| 1051 | RichlandPDReport_2017-3-7 |
| 1052 | TuckerOchoaEmail_2017-3-8 |
| 1053 | Reserved |
| 1054 | W[.]ReaganEmail_2017-3-10 |
| 1055 | FinancialAidLetter  2017-3-28 |
| 1056 | FinancialAidEmails  2017-4 |
| 1057 | ReaganCampbellEmail_2017-4-14 |
| 1058 | ReaganEisingerEmail  2017-4-19 |
| 1059 | ReaganCookeEmail  2017-7-13 |
| 1060 | FileNotes |
| 1061 | CookeLetter_2018-5-4 |

## C.    Objections to Exhibits

The following Plaintiff exhibits are objected to by Defendants:

| Ex. # | Description of Exhibit |
|-------|--------------------------|
| 12 | Letter from R.W. appealing student appeals board decision regarding interim trespass restriction dated March 22, 2017 |
| 20 | Pasco Police Department report dated March 6, 2017 |
| 49 | Fall 2015 clinical journal |
| 50 | Winter 2016 clinical journal |
| 51 | Winter 2017 clinical journal |
| 67 | R.W.'s Trios medical records with table of contents authored by Ralph Reagan, correspondence from R.W.'s counsel and March 29, 2017 letter from Dr. Cabasug regarding R.W.'s treatment status |
| 85 | June 18, 2024, Request for Public Records |
| 86 | July 18, 2024, Response to Public Records Request |

ORDER - 21

# VIII.  WITNESSES

**A.     Plaintiff's Witnesses**

The following witnesses may be called by Plaintiff (if expert, give field of expertise):

1.     R.W.

2.     Rebekah Woods

3.     Kelsey Myers

4.     Ben Beus

5.     Lee Thornton

6.     Kim Tucker

7.     Ralph Reagan

8.     Lindsey Carpenter

**B.     Defendants' Witnesses**

The following witnesses may be called by Defendants (if expert, give field of expertise):

Same as Plaintiff's list except for Lindsey Carpenter.

Other than for rebuttal purposes, no witnesses may be called unless listed above.

ORDER - 22

## IX.    RELIEF SOUGHT

**Plaintiff's Requested Relief.** R.W. seeks prospective injunctive relief in the form of reinstatement into the College Nursing Program, modification of his Winter Quarter 2017 grades from failing to incomplete, removal of the finding that he violated the Student Code of Conduct and removal of such record from his academic records, and an injunction against further retaliation.

**Defendants' Requested Relief.** Defendant Rebekah Wood seek a full dismissal of all of Plaintiff's claims.

## X.    TRIAL

The parties estimate **3 days** trial time.  The parties stipulate and agree to the following:

**Trial Logistics.** Pursuant to Fed. R. Civ. P. 16(c)(2)(P), the following trial logistics are agreed upon by the parties:

1.    The parties agree to provide the Court and opposing counsel with 24 hours' advance notice of (1) the date and time and (2) order in which they expect to call particular witnesses.

2.    The parties agree to communicate and to facilitate securing the presence of the identified witnesses at the time each witness is requested to appear for in court their trial testimony.  The purpose of this agreement is to eliminate or

ORDER - 23

reduce any unnecessary waiting for each of the witnesses. This agreement includes but is not limited to all identified witnesses.

3.    The Parties agree Lee Thornton will appear and testify remotely.

## XI.    ACTION BY THE COURT

The Court will rule on the following matters at the final pretrial conference on February 3, 2025, at 8:30 a.m.

1.    Defendants' Motions in Limine, ECF No. 327.

2.    Defendants' Objections to Plaintiff's Witnesses and Exhibits, ECF No. 330.

3.    Defendants' Objections to Plaintiff's Deposition Designations, ECF No. 331.

**IT IS ORDERED** that the foregoing constitutes the pretrial order in the case and that upon the filing hereof all pleadings pass out of the case and are superseded by this Order. This Order may be amended by consent of the parties and approval by the Court or by the Court to prevent manifest injustice. The District Court Executive is directed to file this order and provide copies to counsel.

DATED January 31, 2025.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER - 24